**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

| | | |
|---|---|---|
| **IN RE:** | * | |
| | * | |
| **BETTEROADS ASPHALT, LLC** | * | **CASE NO. 17-04156 ESL** |
| | * | |
| | * | **CHAPTER 11** |
| **ALLEGED DEBTOR** | * | |

**********************************************

**MOTION OF THE ALLEGED DEBTOR BETTEROADS ASPHALT LLC,
TO DISMISS THE INVOLUNTARY BANKRUPTCY PETITION**

**TO THE HONORABLE COURT:**

On August 6, 2015, the Petitioning Creditors ("Petitioners") commenced this action by filing an Involuntary Petition for bankruptcy against the alleged Debtor, BETTERROADS ASPHALT, LLC (hereafter "BETTEROADS" or "the Company"). The alleged Debtor, by and through counsel, moves (i) that the Involuntary Petition for Bankruptcy under Chapter 11 filed herein be dismissed and (ii) to recover fees, costs and damages under Section 303(i) of the Bankruptcy Code.  In support of this motion to dismiss, BETTEROADS states as follow:

## PRELIMINARY STATEMENT

1.     This involuntary bankruptcy is the epitome of a bad faith filing. It is the latest tactic of Banco Popular de Puerto Rico, on its own and as agent for three other financial institutions, who joined with two active business competitors of BETTEROADS, to obtain the Company's business and assets and, to this date having failed on this this result, seek to bankrupt the Company as an alternative way to pursue this goal.

2.     As will be demonstrated below, the Petition is inadequate since there is a bona fide dispute as to the principal Petitioners' claims.  The Petitioners have not shown – as they must – that their claims are not subject to a "bona fide dispute as to liability or amount" as also required by section

303(b)(1) of the Bankruptcy Code.  Critically, the main Petitioners **know** their claims are in dispute,

having been served before the Involuntary Petition Date with an answer, defenses and

counterclaims contesting the validity of their claims.

3.      BETTEROADS will also show that this proceeding was filed for an improper purpose, and

as a result the Petition is invalid.  Further, bankruptcy is inappropriate at this time given that the

greatest value to all other parties, aside the Petitioners' own interest, lays in the Company's

continued existence, as bankruptcy will result in the sale of the business asset at a distressed price

thereby minimizing rather than maximizing value for creditors.  In addition, bankruptcy will

provide an unwarranted windfall by derailing active ongoing litigation against the principal

promoters of this involuntary petition.

4.      The main issue prompting this unwarranted petition can be resumed as a dispute between

two factions that belongs in, and currently is being contested in, a non-bankruptcy forum, which is

the Puerto Rico First Instance Court – Bayamón Part.  The Petitioners attempt to foist the battle

onto this Court's docket is a bad faith litigation tactic.  The Court can and should decline to

exercise jurisdiction over what is, at bottom, a two-party dispute that is being actively litigated in

another court.

5.      The Petitioners' actions smack of bad faith and that bad faith should be met with serious

consequences.  As set forth below, those consequences should include not only dismissal of the

Involuntary Case but also an award in BETTEROADS' favor under section 303(i) of the

Bankruptcy Code. Irrespective of whether the Petitioners' actions are viewed by the Court as

constituting bad faith, however, the reality remains that this case is an inefficient and improper

vehicle for resolving the pending disputes between BETTEROADS and the Petitioning Creditors.

Under similar circumstances, numerous courts have exercised their discretion under Section 305(a)

to dismiss purposeless involuntary bankruptcy cases, and this Court similarly should dismiss the

Betteroads Asphalt, LLC
Case no. 17-04156 ESL
Motion of Alleged Debtor Betteroads Asphalt, LLC,
To Dismiss the Involuntary Bankruptcy Petition

Involuntary Petition or decline to exercise jurisdiction.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. § 1408 and 1409.

7.      The statutory predicates for the relief sought herein are sections 303(b), 303(i) and 305(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") and Federal Rule of Bankruptcy Procedure 1011.

8.      Federal Rule of Bankruptcy Procedure 1011 governs the procedure for responding to an involuntary petition. That rule provides that all defenses and objections to an involuntary petition must be presented in the manner prescribed by Rule 12 of the Federal Rules of Civil Procedures. Fed. R. Bankr. P. 1011(b). Rule 12 of the Federal Rules of Civil Procedure allows certain defenses to be asserted in the form of a pre-answer motion. Fed. R. Civ. P. 12(b).

## RELIEF REQUESTED AND SUPPORT THEREFORE

9.      BETTEROADS seeks an order: (a) finding that the Petitioners are not eligible petitioning creditors because their claims are subject to a bona fide dispute, and dismissing the Involuntary Petition on that ground; (b) alternatively, dismissing the Involuntary Petition or abstaining from exercising jurisdiction in the best interests of BETTEROADS' creditors; (c) finding that cause exists, based on the Petitioners bad faith in filing the Involuntary Petition, to warrant dismissal; and (d) entering an award of compensatory and punitive damages for costs and recovery of attorneys' fees against the Petitioners because the Involuntary Petition was filed in bad faith.

## **BACKGROUND**

**Betteroads Asphalt, LLC - The Company:**

10.     Mr. Arturo Díaz, Jr., the founder of the Company, opened his first asphalt plant in the year

1947, and since 1954, this business has been known as Betteroads Asphalt Corporation.  Since its

early years, the Company lead the market with superior construction techniques and equipment

including continuous flow asphalt plant that allowed the construction of the PR2 expressway as

well as the first dredging equipment with the ability to dredge the Condado Lagoon and the use of

hydraulic fill to pave sections of the Baldorioty de Castro Avenue.

11.     By 1983, the Company purchased a tank farm and terminal located in Guayanilla.  Upon

this important acquisition, Betteroads began importing its own liquid asphalt becoming then the

largest importer in Puerto Rico.

12.     In 1990, the Company initiated with use of recycled oil from vehicles to heat asphalt plants

as well as to recycle asphalt.  For this novel venture, the Mr. Diaz organized a separate business

entity.  In 1997, Betterecycling Corporation (hereinafter "BETTERECYCLING" alleged Debtor in

case 17-04156) was formed and continued to research and innovate in the reuse of recycled

materials in road construction materials.   Within the major milestones accomplished by both

companies there are:

   a.  In 2004, Betteroads Asphalt corporation passed the 20,000 mile mark in asphalt
       construction;

   b.  In 2006, Betteroads began the construction of PR 66;

   c.  By 2009, BETTERECYCLING had recycled more than 4 million tons of pavements.

   d.  By 2012, Betteroads and BETTERECYCLING both together had over 500 direct
       employees and over 2,000 indirect employees with $212 million in gross sales and an

Betteroads Asphalt LLC
Case no. 17-04156 ESL
Motion of Alleged Debtor Betteroads Asphalt, LLC,
To Dismiss the Involuntary Bankruptcy Petition

EBITDA of $26 million.

13.     The track record of the Companies evidence, not only experience and competence in the construction field but also a sustain compromise and contribution to Puerto Rico's economic development.

## **ARGUMENT**

## I.     THE PETITION SHOULD BE DISMISSED BECAUSE THERE IS NO BANKRUPTCY PURPOSE TO BE ACCOMPLISHED HERE.

14.     Involuntary bankruptcy filings are extremely rare. This fact reflects the current understanding that the principal purpose of the Bankruptcy Code is to grant a fresh start to the honest, but unfortunate debtor. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007). The primary focus of the current bankruptcy law is to give the debtor, rather than the creditors, relief.

15.     "The filing of an involuntary petition by a creditor must be carefully scrutinized by the Court because such an action is extreme in nature and carries with it serious consequences to the alleged debtor, examples of which include loss of credit standing, interference with general business affairs and public embarrassment." *In re Landmark Distribs., Inc.*, 189 B.R. 290, 306 (Bankr. D.N.J. 1995) (*quoting In re McDonald Trucking Co.*, 76 B.R. 513, 516 (Bankr. W.D. Pa. 1987)).

16.     The Bankruptcy Code was created by Congress to act "as a shield for debtors, [rather than] a sword for creditors" (*In re R.N. Salem Corp.*, 29 B.R. 424, 429 (S.D. Ohio 1983)), and even the good-faith filing of an involuntary petition creates onerous circumstances for an alleged debtor. *Schmid v. Yorke* (*In re Reid*), 773 F.2d 945, 946 (7th Cir. 1985) (the filing of an involuntary petition is "an extreme remedy with serious consequences to the alleged debtor").

17.     Where, as here, an involuntary petition filed does not and cannot meet the statutory

Betteroads Asphalt, LLC
Case no. 17-04156 ESL
Motion of Alleged Debtor Betteroads Asphalt, LLC,
To Dismiss the Involuntary Bankruptcy Petition

requirements for commencing an involuntary case under section 303 of the Bankruptcy Code, the

petition should be dismissed. The Involuntary Petition was not filed to promote the interest of

BETTEROADS's creditors generally; to the contrary, the Involuntary Petition is defective and was

filed as a bad faith litigation tactic, and for this principal reason, its dismissal is required.

18.     There is no legitimate reason for initiating this case in the first place. Up to the date of an

ill-founded attachment by Banco Popular de Puerto Rico of the Company's operating cash and

trade receivables, BETTEROADS was conducting its affairs in a manner consistent within the

established ordinary course of business with its lenders and suppliers. The filing of an involuntary

bankruptcy case only makes sense in certain limited situations not present in the case at bar.

19.     There can be no fear here that BETTEROADS is rapidly depleting any resources available

to pay creditors. There can be no concern here about any dilapidation of money since all bank

accounts and outstanding receivables due to the BETTEROADS and BETTERECYCLING were

seized by Banco Popular de Puerto Rico more than one year ago. Moreover, those assets that

require preservation or legal protection are duly maintain by the Companies on alternate business

means caused principally by Banco Popular ill-founded actions.

20.     The filing of an involuntary petition does absolutely nothing to preserve the assets of the

Company. On the contrary, this petition is based on greed, specifically on Banco Popular's

reiterated endeavors to derail the Company in order to acquire control of its operations to then

transfer its assets in a distressed scenario to either of the two players in the asphalt industry in

Puerto Rico who are also Petitioners and which by the way are also Banco Popular de Puerto Rico

clients.

21.     Absent exigent compelling circumstances, it is clear that creditors should use some other

approach to debt collection. The principal Petitioners, all sophisticated and accredited financial

institutions and business entities, knew when they filed the Petition that they were bypassing the normal court process and knew full well that a bankruptcy filing against this Company would have immediate and severe ramifications for the Company and its stockholders.

## II.    THE PETITION SHOULD BE DISMISSED UNDER SECTION 303(b).

22.    Petitioners have failed to meet the basic requirements for a valid involuntary bankruptcy. Therefore, the Petition should be dismissed.

## A.    PETITIONERS HAVE NOT SHOWN THAT THEY ARE QUALIFIED CREDITORS.

23.    "To qualify as a petitioning creditor, a creditor must set forth in his petition a provable claim, liquidated as to amount and not contingent as to liability. The existence and nature of these claims should be set forth with such particularity that the court can find from the petition the essential jurisdictional facts, and if this requirement is not met the petition should be dismissed." *In re State Realty Co. of Boston*, 131 F.Supp. 554, 555 (D. Mass. 1955) (citation omitted).[3] *In re Charmer Inv. Co.*, 476 F.2d 560, 564-65 (6th Cir. 1973).

24.    In general, Petitioners do not meet this standard. They submitted only a skeletal petition with no supporting documentation whatsoever and limited information about the claims they rely upon other than their alleged amount. Given the enormity of the action of forcing a company into bankruptcy, more should be required of the Petitioners.

25.    "The petitioning creditors also have the burden of proving ...that the debtor is *generally* not paying its bills on time." *In re A&J Quality Diamonds, Inc*., 377 B.R. 460, 463 (Bankr. S.D.N.Y. 2007) (finding creditors' failure to show debts constituted a majority or substantial minority of total debts in number or amount basis for dismissal of the case). Once this burden is met, only then does the burden shift to the debtor to show that there is a dispute as to a material fact, such as the existence of the liability or its amount. Here, Petitioners have not even attempted to meet their

burden of providing prima facie evidence that the debtor is generally not paying its bills on time.

## B.   PETITIONERS HAVE NOT ESTABLISHED THAT THERE IS NO BONA FIDE DISPUTE AS TO THEIR CLAIMS.

26.     Pursuant to Section 303(b)(1) of the Bankruptcy Code, "a petitioning creditor does not have standing if its debt is subject to a bona fide dispute." *See In re Vitaminspice*, 472 B.R. 282, 290 (Bankr. E.D. Pa. 2012). "Ultimately, whether a petitioning creditor's claim is the subject of a bona fide dispute is determined by whether 'there is a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts.'" *Id.* (quoting *B.D.W. Assocs., Inc. v. Busy Beaver Bldg. Centers, Inc*., 865 F.2d 65, 65 (3d Cir. 1989)).

27.     The law is clear that if there is a bona fide dispute as to liability or amount of the claim asserted by a petitioning creditor, the creditor is not eligible to file the involuntary petition. *In re Skyworks Ventures, Inc.*, 431 B.R. 573, 577 (Bankr. D.N.J. 2010); *In re Silverman*, 230 B.R. 46, 54 (Bankr.D.N.J. 1998).

28.     As part of the 2005 BAPCPA amendments, Congress modified section 303(b)(1) to add the language "as to liability or amount" after "subject to a bona fide dispute." H.R. Rep. No. 109-31, at 149 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 2017.  As a result of that amendment, "*any dispute regarding the amount that arises from the same transaction and is directly related to the underlying claim should render the claim subject to a bona fide dispute.*" *In re Regional Anesthesia Assocs. PC*, 360 B.R. 466, 470 (Bankr. W.D. Pa. 2007) (emphasis added) (*quoting In re Euro-Am. Lodging Corp.*, 357 B.R. 700, 712 n.8 (Bankr. S.D.N.Y. 2007); *see also In re Rosenberg*, 414 B.R. 826, 848 (Bankr. S.D. Fla. 2009) (dismissing involuntary petition where dispute existed as to amount of petitioner's claim due under its guaranty).

29.     In the context of the statutory language of section 303(b)(1), a bankruptcy court must determine whether there is an objective basis for either a factual or legal dispute as to the validity of

the debt. *In re AMC Investors*, *LLC*, 406 B.R. 478, 483-84 (Bankr. D. Del. 2009). The court's objective, however, only is to ascertain the existence of a dispute, not to actually resolve the dispute. *Id*. at 484; *see also, In re DSC, Ltd*., 486 F.3d 940, 945 (6th Cir. 2007) ("Importantly, the court need not resolve any genuine issues of fact or law; it only must determine that such issues exist."); *In re Regional Anesthesia Assocs*., 360 B.R. 466, 477 (Bankr. W.D. Pa. 2007) ("The outcome of a dispute need not be resolved, only its presence or absence").

30.     The petitioning creditors "bear the burden of providing prima facie evidence that their claims are not subject to a bona fide dispute." *Id*.

31.     The policy behind the "no bona fide dispute" requirement is evident. If creditors with clearly disputed claims were empowered to initiate an involuntary filing, creditors could improperly use the involuntary process (or threat of it) to extort from a debtor either payment or a favorable resolution of a disputed claim. *In re Mountain Dairies, Inc*., 372 B.R. 623, 634 (Bankr. S.D.N.Y. 2007).

32.     Any creditor wishing to invoke the bankruptcy court's jurisdiction in an involuntary case must demonstrate at the earliest practicable point that its petition satisfies the requirement that its claim is not contingent as to liability or subject of bona fide dispute as to liability or amount. Without that statutory protection for debtors, creditors, on the basis of relatively untested claims, could force debtors to defend an involuntary proceeding in advance of a determination as to whether the debtor is even properly before it. *In re BDC 56 LLC*, 330 F.3d at 118-19.

33.     Here, Petitioners have not even attempted to meet their burden of providing prima facie evidence that their claims are not subject to a bona fide dispute.  On the contrary, most of the Petitioners' claims are in fact subject to a Bona Fide Dispute.  We explain.

**Banco Popular de Puerto Rico with Three Additional Banks:**

34.     As can be ascertained in the limited pleadings filed with the Court, the principal Petitioners

Betteroads Asphalt, LLC
Case no. 17-04156 ESL
Motion of Alleged Debtor Betteroads Asphalt, LLC,
To Dismiss the Involuntary Bankruptcy Petition

are Banco Popular de Puerto Rico, Firstbank, Banco Santander and the Economic Development Bank. In turn, these claims stem from a credit agreement executed on March 8, 2012, by and between BETTEROADS and BETTERECYCLING and in which Banco Popular de Puerto Rico as lender and as administrative agent of Firstbank, Banco Santander and Economic Development Bank.

35.     On September 22, 2016, Banco Popular de Puerto Rico, sued BETTEROADS and BETTERECYCLING, claiming among other things, alleged breaches of the loan agreements and foreclosure of real and personal property collaterals. Thereafter, BETTEROADS and BETTERECYCLING filed the Answer and Counterclaims in the Puerto Rico First Instance Court, Bayamon Superior Par. A copy of the answer to complaint and counterclaim is attached as **Exhibit 1** to this motion.

36.     Importantly, in the Answer and Counterclaim, BETTEROADS and BETTERECYCLING raised sixty-two separate defenses to the allegations. The counterclaim filed against these financial institutions entail several causes of actions against that range from unwarranted acts and tortious interference to breach of the duty of good faith all with a potential award of damages that could exceed hundredths of millions of dollars.

37.     Up to the date that Banco Popular de Puerto Rico requested the stay of proceedings following the filing of this bankruptcy petition, the State Court Action was pending and being actively litigated. The most recent developments include an Order from the Puerto Rico Court of Appeals reversing and remanding an ex-parte Order for Attachment of Assets and company stocks. In addition, the Puerto Rico First Instance Court just entered Order dismissing certain codefendants in the complaint on failure to serve summons within the time frame set forth in Rules of Civil Procedures.

38.     Not only has no judgment been entered in the financial institutions' favor but defenses and

Betteroads Asphalt, LLC
Case no. 17-04156 ESL
Motion of Alleged Debtor Betteroads Asphalt, LLC,
To Dismiss the Involuntary Bankruptcy Petition

counterclaims have been asserted that place in question whether the funds will ever have adjudicated claims against BETTEROADS.

39.     Those facts clearly establish that a bona fide dispute exists as to liability on the Notes and the amounts allegedly due. Thus, Banco Popular de Puerto Rico, FirstBank Puerto Rico, Banco Santander and Economic Development Bank, are not eligible to file an involuntary petition against BETTEROADS.

**FirstBank Puerto Rico Equipment Loans:**

40.     Shortly after, on October 4, 2016, and most likely as the result of the prior complaint in which this creditor participated, FirstBank Puerto Rico filed a collection claim against BETTEROADS claiming the payment of a Term Loan granted on June 27, 2014 for the original amount of $1,506,245.93 and a Line of Credit for the original amount of $86,995.00. These credit facilities are fully secured with machinery and equipment owned by BETTEROADS.

41.     At the beginning of that State Court case, the proceedings were stayed upon agreement of the parties to allow for settlement negotiations. Several bonafide proposals were remitted by Debtor during this year under the guise that these were being considered by the bank. Notwithstanding, FirstBank's real intentions while negotiating with BETTEROADS were uncovered. Firstbank's efforts in this case were all geared to 1) contribute to Banco Popular de Puerto Rico's illfounded efforts to close BETTEROADS business by seeking the turnover of all machinery and equipment and to 2) obtain the dismissal with prejudice of the counterclaim filed in the Banco Popular de Puerto Rico claim to further ease the end goal of closing the business.

42.     On March 29, 2017, FirstBank filed a Motion Requesting Preventive Enforcement of Assets in Assurance of Judgment. On April 4, 2017, BETTEROADS filed its Opposition to the Motion and on April 5, 2017, filed its Answer to the Complaint and a Counter Claim claiming that FirstBank actively participated in the scheme that caused economic damages to the Company.

Betteroads Asphalt, LLC
Case no. 17-04156 ESL
Motion of Alleged Debtor Betteroads Asphalt, LLC,
To Dismiss the Involuntary Bankruptcy Petition

43.     As with the claims by the four financial institutions, no judgment has been entered in this separate claim by FirstBank Puerto Rico. Defenses and counterclaims have been asserted that place in question whether there will be claims adjudicated against BETTEROADS.

**Puma Energy Caribe, LLC.**

44.     On July 15, 2015, Puma Energy Caribe, LLC, sued BETTEROADS and BETTERECYCLING, in the Puerto Rico First Instance Court, San Juan Superior Part claiming among other things, collection of moneys and alleged breach of certain contract for the purchase of Liquid Asphalt AC-20, a principal component in the asphalt and paving component.

45.     On August 26, 2015, BETTEROADS and BETTERECYCLING filed the Answer to Complaint and Counterclaim raising as main issue with Puma Energy Caribe, LLC the damages and costs caused by the sub-standard material it sold.  Given the considerable damages and costs caused to the Companies the counterclaim filed against this supplier entails a potential award of damages for the benefit of BETTEROADS and BETTERECYCLING that could exceed several millions of dollars. A Special Master has been appointed to manage complex allegations on asphalt related production materials and additional evidence by way of expert tests and reports are still being gathered.

46.     We also need to bear in mind that as has been alleged in the Banco Popular de Puerto Rico, FirstBank Puerto Rico, Banco Santander and Economic Development Bank State Court case, Puma Energy Caribe, LLC, was an active and contributing participant in the unwarranted attempted transaction caused by Banco Popular de Puerto Rico inasmuch this was the entity interested in acquiring the Guayanilla terminal.

47.     Again, the State Court action is pending and was actively being litigated.  Puma Energy Caribe, LLC knows that no judgment in their favor has been entered in this claim and that defenses and counterclaims have been asserted that place in question whether claims will ever been

Betteroads Asphalt, LLC
Case no. 17-04156 ESL
Motion of Alleged Debtor Betteroads Asphalt, LLC,
To Dismiss the Involuntary Bankruptcy Petition

adjudicated against BETTEROADS.

48.     In summary, Congress intended to disqualify a creditor whenever there was any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal. *In re BDC 56 LLC.,* 330 F.3d 111, 117-18 (2nd Cir. 2003). Here, there are legitimate bases for the Company not paying these debts because Petitioners claims are subject to an ongoing active dispute. There is simply no justification for the filing by these contested creditors of this action.

### III.     THE PETITION WAS FILED FOR AN IMPROPER PURPOSE

49.     Allowing the Petition filed herein to proceed would lead to absurd results.  Why should purported secured creditors who in 2016 filed for collection of moneys and foreclosure proceeding before the Puerto Rico First Instance Court now join to force an involuntary petition against the company? The only conclusion is that on unwarranted claims and actions things at State Court are not developing as intended and now the next step is to strongarm the Company through another ill-founded venture that should be construed as a convenient forum shopping.

50.     Instead of continuing their initiated attempt to collect their claims and face the corresponding crossclaims they now bear, they could simply pay a filing fee and go straight to bankruptcy court to collect a debt. **"[T]he bankruptcy court is not a collection agency."** *In re Mountain Dairies, Inc*., 372 B.R. 623, 635 (Bankr. S.D.N.Y. 2007). *See also In re Century Tile and Marble, Inc*., 152 B.R. 688, 689-90 (Bankr. S.D. Fla. 1993) (creditors' attorney sanctioned and involuntary petition dismissed pursuant to section 303 for "utilizing bankruptcy court as a collection agency instead of going to state court where collection claims are properly filed").

### IV.     THE PETITION WAS FILED IN BAD FAITH.

51.     The Petition filed herein was filed in bad faith.  In determining whether a Chapter 11 bankruptcy has been filed in good faith, courts focus primarily on two questions: (1) whether the petition serves a valid bankruptcy purpose, *e.g.*, by preserving a going concern or maximizing the

value of the debtor's estate; and (2) whether the petition is filed merely to obtain a tactical litigation

advantage. *See In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119-20 (3d Cir. 2004).

52.     With respect to the first question, courts focus on whether the bankruptcy preserves "some

value that otherwise would be lost outside of bankruptcy." *Id.* at 120. With respect to the second

question, "[a]s a general rule where … the timing of a Chapter 11 petition is such that there can be

no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may

be dismissed as not being filed in good faith." *In re SGL Carbon Corp.*, 200 F.3d 154, 162, 165 (3d

Cir. 1999).

53.     A Chapter 11 case for BETTEROADS does not preserve value that otherwise would be lost

outside of bankruptcy.  Instead, it simply burdens this Court with a matter that already is being

extensively litigated in another forum.  The Puerto Rico State Court Action has been pending for

over nine months.  There simply is no reason to burden this Court with matters that already are

being litigated in a different forum where no legitimate bankruptcy purpose would be served.

54.     In short, the Petitioners are using the bankruptcy process as a weapon to exert pressure on

BETTEROADS, without any other legitimate purpose.  That constitutes bad faith. *See In re St.*

*Marie Dev. Corp.*, 334 B.R. 663, 671 (Bankr. D. Mont. 2005) (bad faith exists when petitioning

creditors file involuntary to protect their own interest and thereby gain disproportionate advantage);

*In re Tichy Elec. Co.*, 332 B.R. 364, 377 (Bankr. N.D. Iowa 2005) (petitioning union trust funds

filed in bad faith because they filed solely to collect debts owed to them: they used bankruptcy

process both to obtain disproportionate advantage over all other creditors and as a weapon to satisfy

their claims); *In re Skyworks Ventures*, 431 B.R. at 579 (holding petitioner "did not have the

interests of other creditors at heart. The petition was not filed in the traditional spirit of collective

creditor action; rather, it was an attempt to force [alleged debtor] to settle the disputed claim of

[petitioner]"); *In re Silverman*, 230 B.R. at 53 ("Filing an involuntary petition with the intent to

gain a strategic advantage, rather than to protect one's interest relative to other creditors or to prevent dissipation of assets, constitute an improper purpose").

55.    Moreover, Petitioners Banco Popular de Puerto Rico, Firstbank, Banco Santander, the Economic Development Bank and Puma Energy Caribe, LLC, were keenly aware their claims were subject to a bona fide dispute and yet filed the Involuntary Petition without any regard for the eligibility requirements of section 303 of the Bankruptcy Code. That alone constitutes bad faith. *See In re Meltzer*, 516 B.R. 504, 518 (Bankr. N.D. Ill. 2014) (*citing In re John Richards Homes Bldg. Co.*, 439 F.3d 248, 254 (6th Cir. 2006); *In re Silverman*, 230 B.R. 46, 52 (Bankr. D.N.J. 1998); *In re Fox Island Square P'ship*, 106 B.R. 962, 968 (Bankr. N.D. Ill. 1989) ("Creditors act in bad faith when they file an involuntary petition knowing their claims are in bona fide dispute").

56.    Regarding Sargeant Trading, LTD and Sargeant Marine, Inc., who appear as two individual Petitioners in this case, they in fact hold <u>one</u> single joint obligation owed by BETTEROADS.  Aside the existing differences in the amounts being claimed, the review of the Decision and Final Award of Arbitration rendered in the United States District Court for the Southern District of New York registered by the United States District Court for the District of Puerto Rico in case 15-00477, clearly states that these parties are the holders of a single obligation of BETTEROADS.

57.    Courts have held that joint holders of an obligation are counted as one creditor and uniformly have applied that reasoning when addressing the numerosity requirement for petitioning creditors. *See In re Atwood*, 124 B.R. 402, 409 (S.D. Ga. 1991) (affirming unpublished bankruptcy court decision holding joint holders of a judgment constitute a single creditor for purposes of section 303(b) of the Bankruptcy Code).  *In re T.P. Herndon & Co.*, 87 B.R. 204, 206 (Bankr. M.D. Fla. 1998) (finding that because a promissory note was made payable to single entity, petitioning creditors held single right to payment constituting only one claim for purposes of section 303(b).

58.    As is clearly set forth in the relevant case law and consistent with bankruptcy policy,

Betteroads Asphalt LLC
Case no. 17-04156 ESL
Motion of Alleged Debtor Betteroads Asphalt, LLC,
To Dismiss the Involuntary Bankruptcy Petition

Sargeant Trading, LTD and Sargeant Marine, Inc., constitute only **one** petitioning creditor for purposes of section 303(b). In filing the Involuntary Petition, the Petitioners ignore that BETTEROADS is obligated for one claim (not two) separate debts – which is the arbitration award for demurrages.

59.     Even in cases in which repayment settlement agreements had been reached and being paid, still the unwarranted promoters of this petition obtained on unknown means that one of the two trade creditors joined this petition. In example, Puerto Rico Facsimil Paper Connection, Corp., a trade creditor who had a debt of $11,874.80 as of January 11, 2017, and who entered into a repayment agreement and received two payments of $1,000 the last on May 11, 2017 is now a Petitioner even against its own interest.

60.     BETTEROADS and BETTERECYCLING will show that for months the main promoters of these involuntary petitions have pursed this unwarranted filing as probably the only way to acquire control of the business following the Companies refusal of voluntary surrendering its operations and assets to Banco Popular de Puerto Rico who then can gain control to these assets sold to direct competitors which were brought in the year 2012 by this same financial institution as the best alternative for resolving all parties problems.

61.     The timing of the Petition is such that there can be no doubt that its sole purpose was to pressure the Company out of business in order to allow the other interested players in the business to take over the Company's assets at the cost of other creditors and that of the stockholders.

62.     "In considering dismissal under § 305, it is appropriate to consider the motivation of the parties in seeking jurisdiction of the bankruptcy court." *In re Spade*, 258 B.R. 221, 231 (Bankr. D. Colo. 2001).

63.     When a creditor files an involuntary petition, the creditor must ensure not only that he is an eligible creditor, but that the process was done in good faith. While the bankruptcy code does not

define "bad faith," courts have found bad faith in cases where a creditor hopes to shut down the debtor's business, hopes to force the debtor into some type of negotiation, wants to take over control of the corporation itself, or the creditor wants to gain settlement leverage over the debtor. *E.g., In re Forever Green Athletic Fields, Inc.*, 500 B.R. 413, 426-30 (Bankr. E.D. Pa. 2013).

## V.    ABSTENTION IS WARRANTED IN THIS CASE UNDER SECTION 305(a)(1).

64.    If the Court does not dismiss the Involuntary Petition because the Petitioners cannot meet the requirements of section 303(b), it nonetheless can and should dismiss the Involuntary Petition under section 305(a) as the Chapter 11 case is not in the best interests of BETTEROADS and its creditors. Section 305(a) of the Bankruptcy Code provides that "[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if (1) the interests of creditors and the debtor would be better served by such dismissal or suspension..." 11 U.S.C. § 305(a).

65.    The movant bears the burden of demonstrating that the interests of creditors and the debtor would benefit from dismissal. *AMC Investors*, 406 13.R. at 488. Section 305(a)(1) of the Bankruptcy Code applies to involuntary petitions.  *In re Colonial Ford, Inc*., 24 B.R. 1014, 1020 (Bankr. Utah 1982).

66.    BETTEROADS respectfully requests that the Court exercise its authority to dismiss this case based on the doctrine of abstention. Even where the petitioning creditors may be able to prove all of the elements for the granting of an involuntary petition, and even when there is no issue as to whether the petitioning creditors have acted in good faith, a Bankruptcy Court may still dismiss an involuntary petition under the doctrine of abstention. The decision whether to abstain is within the sole discretion of the Bankruptcy Court, which may take into account "any factors it considers to be relevant to the determination of whether a dismissal of the case or a suspension of all proceedings would better serve the interests of the creditors and the debtor." *In re Spade*, 258 B.R. at 231; 11

Betteroads Asphalt LLC
Case no. 17-04156 ESL
Motion of Alleged Debtor Betteroads Asphalt, LLC,
To Dismiss the Involuntary Bankruptcy Petition

U.S.C. §305(a)(1). In this case, the interests of both BETTEROADS and the creditors would be better served by a dismissal of this action.

67.     The debtor has the burden of showing that abstention is proper under section 305(a). A consideration of the seven factors which courts generally consider in deciding whether or not to abstain in a case weigh in favor of abstention in the case at bar. While all factors are considered, not all are given equal weight in every case. *In re Monitor Single Lift I, Ltd*, 381 B.R. 455, 464-65 (Bankr. S.D.N.Y. 2008).

### a)  The economy and efficiency of administration.

68.     Bringing this case into the bankruptcy court would only add an additional layer of expense to the resolution of the principal contested issue which is the litigation with the financial institutions and it would be inefficient and excessively costly to process this debt through this Court. None of the costs that will be incurred here are necessary, since there is no legitimate bankruptcy purpose to be served by this filing. Therefore, economy and efficiency favor dismissal.

### b)  The availability of another forum, or the actual pendency of an insolvency proceeding in one.

69.     As to the Petitioners, another forum is available to protect the interest of both parties and one such proceeding is already pending before the Puerto Rico First Instance Court.  Federal proceedings are not necessary inasmuch as the primary claims are based on state law and the claims here can be adequately determined in the state court.

### c)  Whether federal proceedings are necessary to reach a just and equitable resolution.

70.     Federal bankruptcy proceedings are not just unnecessary, but also improper because the involuntary bankruptcy case serves no legitimate bankruptcy purpose as further discussed above.

### d)  The availability of alternative means for an equitable distribution of assets and value.

71.     If there is no bankruptcy proceeding, the Company will be able to continue its ongoing

Betteroads Asphalt LLC
Case no. 17-04156 ESL
Motion of Alleged Debtor Betteroads Asphalt, LLC,
To Dismiss the Involuntary Bankruptcy Petition

litigation with the Petitioning financial institutions and move forward with its business plan, benefitting all other creditors and eventually the stockholders.

> **e)  Whether the debtor and creditors are able to work out a less expensive out- of-court arrangement that better serves all interests in the case.**

72.     This action was not filed in best interests of creditors or stockholders, but rather in the interest of a narrow few who seek to facilitate the forced sale of the business assets so they or their allies can snap it up at a distressed price. The Company has had good relationships with the majority of its creditors, and is able to work with them if allowed without issue.

> **f)  Whether a non-federal insolvency proceeding has progressed so far that it would be costly and time consuming to start afresh with the federal bankruptcy process**.

73.     Currently there is no non-federal insolvency proceeding, as the Company has maintained good working relationships with the majority of its creditors.

> **g)  The purpose for which bankruptcy was sought by the petitioners.**

74.     In considering dismissal under §305, it is appropriate to consider the motivation of the parties seeking the jurisdiction of the bankruptcy court. *In re Spade*, 258 B.R. at 231. Although the motivation of the parties may not directly affect the consideration of whether the creditors and the debtor would be better served by the dismissal of this case, the motives of the parties can significantly influence the Court's evaluation of other factors and contribute to the Court's decision to dismiss under §305.  As demonstrated above, Petitioners' motivation is purely a tactic to obtain leverage to the harm of other creditors and stockholders.

> **h)  Other Consideration.**

75.     One other factor warrants abstention. As noted above, there is an action in the Puerto Rico First Instance Court which involves the issue of whether BETTEROADS will be entitled to at least two award of damages, the first from Banco Popular de Puerto Rico and the other financial institutions and the other from Puma Energy Caribe, LLC.  Until there is a final judgment in these

two actions, there will remain an issue as to whether Petitioners are bona fide creditors.  It would be in prejudice of all other creditors if these two claims in favor of BETTEROADS dissipate by means of unwarranted litigation practices in the event the Court allows this involuntary action to go forward.

76.     The crucial question for creditors other than the four financial institutions and Puma, is whether the financial institutions and Puma are not owed any moneys and that they are the ones charged to pay the Company for all claimed costs, damages and expenses incurred on their unwarranted actions.  As such, this Court should abstain to allow the state court action to run its course.

## VI.   THE COMPANY SHOULD BE AWADED ITS FEES, COST AND DAMAGES UNDER SECTION 303(i).

77.     There is a presumption that costs and attorney's fees will be awarded to a putative debtor where an involuntary petition is dismissed. *In re Express Car Truk & Rental, Inc.*, 440 B.R. 422, 431-32 (Bankr. E.D. Pa. 2010). A petitioner bears the burden of proof on justifying a denial of costs and fees.  Section 303(i) provides:

" If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment (1) against the petitioners and in favor of the debtor for (A) costs; or (B) a reasonable attorney's fee; or (2) against any petitioner that filed the petition in bad faith, for (A) damages proximately caused by such filing; or (B) punitive damages.  11 U.S.C. §303(i).

78.     Given the foregoing, it is respectfully requested that the Court enter judgment against Petitioners and in favor of BETTEROADS for costs, reasonable attorney's fees and punitive damages.

## VII.   THE COMPANY RESPECTFULLY REQUESTS AN EVIDENTIARY HEARING.

79.    The Court should hold an evidentiary hearing, after allowing for discovery, to permit the BETTEROADS to make a full record on these issues to further support its claims, and to allow the Court to make findings so as to determine whether dismissal and/or abstention and/or an award of costs, fees and damages are warranted.

### NOTICE

NOTICE Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerk's office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.

### CONCLUSION

WHEREFORE, the Company respectfully requests that the Court grant the Motion to Dismiss the Involuntary Petition and grant such other and further relief consistent with those detailed in this Motion.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY:** That on same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to **MONSITA LECAROZ ARRIBAS** ustpregion21.hr.ecf@usdoj.gov; **ISRAEL O ALICEA LUCIANO, ESQ.,** (Attorney for St. James Security) at israel_alicea@yahoo.com; **PAUL JAMES**

Betteroads Asphalt LLC
Case no. 17-04156 ESL
Motion of Alleged Debtor Betteroads Asphalt, LLC,
To Dismiss the Involuntary Bankruptcy Petition

**HAMMER, ESQ.,** (Attorney for Puma Energy Caribe LLC) at phammer@estrellallc.com; **LUIS C MARINI BIAGI, ESQ.,** (Attorney for BPPR; BSPR; Firstbank & Economic Development Bank) at luis.marini@oneillborges.com; **MARTHA L ACEVEDO PENUELA, ESQ.,** (Attorney for BPPR; BSPR; Firstbank & Economic Development Bank) at martha.acevedo@oneillborges.com; **LUIS M NOLLA VIL, ESQ**., (Attorney for Bituven Puerto Rico LLC) at lnolla@nvalawpr.com; **JORGE I PEIRATS, ESQ.,** (Attorney for Acrecent Financial Corporation) at jpeirats@pmalaw.com; **MICHELLE MARIE VEGA RIVERA, ESQ.,** (Attorney for Total Petroleum Puerto Rico Corp) at mvega@vega-rivera.com; **EDGAR ALBERTO VEGA RIVERA, ESQ.,** (Attorney for Popular Auto) at edvega@bppr.com; **JUAN MANUEL SUAREZ COBO, ESQ.,** (Attorney for Todtly Group, Inc.,) at pennyrose@legalpartnerspr.com; **CAMILLE N. SOMOZA, ESQ.,** (Attorney for Sargeant Marine, Inc. & Sargeant Trading Limited) at csomoza@ferraiuoli.com; **GUSTAVO A CHICO BARRIS, ESQ.,** (Attorney for Sargeant Marine, Inc. & Sargeant Trading Limited) at gchico@ferraiuoli.com; **SONIA COLON COLON, ESQ.,** (Attorney for Sargeant Marine, Inc. & Sargeant Trading Limited) at scolon@ferraiuoli.com; **JORDI GUSO, ESQ.,** (Attorney for Sargeant Marine, Inc. & Sargeant Trading Limited) at jguso@bergersingerman.com; **JAIRO MELLADO VILLARREAL, ESQ.,** (Attorney for NG Solutions LLC) at jmellado@mellado.com; **TESSIE LEAL GARABIS, ESQ.,** (Attorney for NG Solutions LLC) at tleal@mellado.com; **FAUSTO DAVID GODREAU ZAYAS, ESQ.,** (Attorney for Firstbank Puerto Rico) at dg@g-glawpr.com; and to the participants appearing in said record.

Betteroads Asphalt, LLC
Case no. 17-04156 ESL
Motion of Alleged Debtor Betteroads Asphalt, LLC,
To Dismiss the Involuntary Bankruptcy Petition

**RESPECTFULLY SUBMITTED.**

In Guaynabo, Puerto Rico, this 27th day of June of 2017.

*Lugo Mender Group, LLC*

Attorney for Betteroads Asphalt, LLC
100 Carr. 165 Suite 501
Guaynabo, P.R. 00968-8052
Tel.: (787) 707-0404
Fax: (787) 707-0412

*/S/ Wigberto Lugo Mender*

Wigberto Lugo Mender
USDC-PR 212304
wlugo@lugomender.com

*/S/ Alexis A. Betancourt Vincenty*

Alexis A. Betancourt Vincenty
USDC-PR 301304
a_betancourt@lugomender.com