IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE BETTEROADS ASPHALT, LLC | CASE NO. 17-04156 (ESL) |
| | CASE NO. 17-04157 (ESL) |
| IN RE BETTERECYCLING CORPORATION | CHAPTER 11 |
| Alleged Debtors | |

OPINION AND ORDER

The above alleged debtors are before the court upon several motions aimed at disposing of the involuntary petitions. Alleged debtors pray for the dismissal of both involuntary petitions and the petitioning creditors pray for the entry of an order of relief under chapter 11.

The pending motions are: (1) *Motion of the Alleged Debtor Betteroads Asphalt LLC to Dismiss the Involuntary Bankruptcy Petition* (Lead Case No. 17-04156, Docket No. 46) and the *Motion of the Alleged Debtor Betterecycling Corporation to Dismiss the Involuntary Bankruptcy Petition* (Lead Case No. 17-04157, Docket No. 27) alleging that these petitions should be dismissed due to the following: (i) most of the Petitioning Creditors' claims are not eligible because their claims are subject to a bona fide dispute and are not in conformity with 11 U.S.C. §303(b)(1); (ii) the Petitioning Creditors filed these petitions as a bad faith litigation tactic and thus the same warrant dismissal; (iii) the court should dismiss these cases based on the doctrine of abstention pursuant to 11 U.S.C. §305(a)(1); and (iv) the alleged Debtors should be awarded the fees, costs and damages pursuant to 11 U.S.C. §303(i). (2) the *Opposition to the Motion to Dismiss* filed in both cases by Firstbank Puerto Rico ("Firstbank"), Banco Santander de Puerto Rico ("Banco Santander"), the Economic Development Bank for Puerto Rico ("EDB"), and Banco Popular de Puerto Rico ("Banco Popular" or the "Administrative Agent" and collectively with Firstbank, Banco Santander, EDB and Banco Popular, the "Lenders") (Lead Case No. 17-

-1-

04156, Docket No. 74, Lead Case No. 17-04157, Docket No. 52). Lenders argue the following: (i) the involuntary petitions satisfy 11 U.S.C. §303(b) because each involuntary petition was commenced by at least three (3) qualified petitioning creditors whose claims are not subject to a bona fide dispute and whose unsecured and uncontingent claims aggregate at least $15,775. Eight (8) petitioning creditors filed the involuntary petition for Betteroads Asphalt, LLC ("Betteroads") and seven (7) petitioning creditors filed the involuntary petition against Betterecycling Corporation ("Betterecycling"); (ii) the Lenders deny all of the bad faith allegations. The Lenders also argue that bad faith is not a cognizable defense to contest an involuntary petition. A number of courts following the plain meaning of 11 U.S.C. §303 have decided that bad faith is not an independent basis to contest a properly filed involuntary petition; (iii) the Debtors are not paying their debts as they become due; (iv) the Debtors' request for abstention should be denied because the abstention doctrine should not be used as a remedy in substitution of a motion to dismiss under other applicable sections of the Bankruptcy Code; (v) the Debtors fail to establish or argue that the interests of the creditors would be better served by abstention rather than by allowing these properly-filed involuntary bankruptcy cases to continue; (vi) the Debtors have been transferring their assets (as described in the Motion to Appoint a Trustee) and creditor remedies to avoid these transfers are available only in bankruptcy; (vii) the state court litigation would not resolve or avoid the substantial avoidable transfers that the Debtors have undertaken prior to the bankruptcy filing nor provide an orderly process for all creditors to assert their claims; and (viii) the Debtors have not met their burden of establishing that abstention under 11 U.S.C. §305(a) is in the best interest of both the Debtors and all the creditors. (3) The Debtors' *Reply to Motion to Dismiss and Request for Immediate Dismissal Against Certain Petitioners* (Lead Case No. 17-04156, Docket No. 88, Lead Case No. 17-04157, Docket No. 68). (4) Lenders' *Sur-Reply to Debtors' Reply to the Lenders' Opposition to Motion to Dismiss* ensued thereafter (Lead Case No. 17-04156, Docket No. 100, Lead Case No. 17-04157, Docket No.79). (5) Sargeant Marine, Inc. ("Sargeant Marine") and Sargeant Trading LTD's ("Sargeant Trading") *Amended Motion for Summary Judgment on Involuntary Petition and Memorandum of Law in Support Thereof* (Lead Case No. 17-04156,

Docket No. 108). (6) *Initial Opposition to Premature Amended Motion for Summary Judgement by Sargreant* (Lead Case 17-04156, Docket No. 131). (7) Sargent Marine and Sargeant Trading's *Reply to Initial Opposition to Premature Amended Motion for Summary Judgment by Sargent* (Lead Case No. 17-04156, Docket No. 153). (8) Lenders' *Motion for Summary Judgment and Memorandum of Law in Support Thereof* (Lead Case No. 17-04156, Docket No. 120, Lead Case No. 17-04157, Docket No. 87). (9) Debtors' *Initial Opposition to Premature Amended Motion for Summary Judgment by Lenders* (Lead Case No. 17-04156, Docket No. 167; Lead Case No. 17-04157, Docket No. 123). (10) Alleged Debtors' *Motion in Compliance with Order: Alleged Debtor's Supplemental Brief on Pending Legal Issues* (Lead Case No. 17-04156, Docket No. 169, Lead Case No. 17-04157, Docket No. 125). (11) Lenders' *Memorandum and Brief in Compliance with Order* (Lead Case No. 17-04156, Docket No. 170, Lead Case No. 17-04157, Docket No. 126). (12) The Debtors' *Reply to Lenders' Memorandum at (Docket No. 170 on Case No. 17-04156) (Docket No. 126 on Case No. 1[7]-04157)* (Lead Case No. 17-04156, Docket No. 181, Lead Case No. 17-04157, Docket No. 136). (13) *Lenders' Reply to "Motion in Compliance with Order" (Docket No. 169 and Docket No. 125)* followed (Lead Case No. 17-04156, Docket No. 182, Lead Case 17-04157, Docket No. 137).

For the reasons stated below, the Debtors' *Motions to Dismiss* are denied in part. Sargeant Marine and Sargeant Trading, LTD's motion for summary judgment is granted in part and denied in part. The Lenders' motions for summary judgment are granted in part and denied in part.

<u>Jurisdiction</u>

The court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

<u>Procedural Background</u>

On June 9, 2017, St. James Security Services, Inc., Sargeant Marine, Inc., Sargeant Trading, Ltd, Facsimil Paper Connection Corp. and the Lenders filed an involuntary bankruptcy petition against Betteroads Asphalt, LLC. The petitioning creditors and the Lenders in line item

11 of the petition allege that, "[t]he debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount." Line item 13 of the petition discloses that the total of petitioners' claims is in the amount of $98,271,671.29. St. James Security Services, Inc.'s unsecured claim is based on a Judgment dated December 8, 2016 in St. James Security Services, Inc. v. Betteroads Asphalt LLC & Betterecycling Corporation- civil case no.KCD 2016-0453 (604). The claim is in the amount of $184,242.84. Sargeant Marine's unsecured claim is based on a final Judgment dated September 3, 2015 in Sargeant Trading Ltd. & Sargeant Marine, Inc. vs. Betteroads Asphalt Corp., --1:15 cv 04879-Civil 4879 (JPO) in which Sargeant Marine's unsecured claim is in the amount of $165,074.84. Sargeant Trading's unsecured claim is based on the same Judgment in the amount of $104,335.38. Facsimil Paper Connection Corp.'s unsecured claim is based upon a Judgment dated January 11, 2017, Facsimil Paper Connection Corp. vs. Betteroads Asphalt Corp./Betteroads Asphalt LLC, civil case no. KCM 2016-3675 (905). The claim is in the amount of $9,874.80. Banco Popular has the following claims, all of which list as undetermined the amount of the claim above the value of any lien: (i) Loan Agreement (line of credit, Note 4001) in the amount of $11,840,690.92; (ii) Loan Agreement (Term Loan I, Note 9008) in the amount of $6,790,317.53; and (iii) Loan Agreement (Term Loan II, Note 9009) in the amount of $16,647,238.05. Banco Santander has the following claims all of which it lists as undetermined the amount of claim above the value of any lien: (i) Loan Agreement (Term Loan I, Note 9008) in the amount of $2,068,170.71; Loan Agreement (Term Loan II, Note 9009) in the amount of $4,841,943.64; (iii) Loan Agreement (Term Loan III, Note 9010) in the amount of $9,259,182.29; and (iv) Loan Agreement (Line of Credit, Note 4001) in the amount of $3,606,395.44. FirstBank has the following claims all of which it lists as undetermined the amount of claim above the value of any lien: (i) Loan Agreement (Line of Credit, Note 4001) in the amount of $6,458,768.31; (ii) Loan Agreement (Term Loan I, Note 9008) in the amount of $3,703,929.78; and (iii) Loan Agreement (Term Loan II, Note 9009) in the amount of $9,078,644.32. EDB has the following claims all of which it lists as undetermined the amount of claim above the value of any lien: (i) Loan Agreement (line of credit, Note 4001)

-4-

in the amount of $1,152,939.72; (ii) Loan Agreement (Term Loan I, Note 9008) in the amount of $661,179.90; and (iv) Loan Agreement (Term Loan IV, Note 9011) in the amount of $4,137,250.82. Other loans between Banco Popular and Betteroads are the following: (i) Loan Agreement (Loan No. xxx-xxxx-xxxxxxx-2001) in the amount of $8,271,387.12; (ii) Loan Agreement (Loan No. xxx-xxxx-xxxxxxx-9004) in the amount of $4,256,358.95; and (iii) Loan Agreement (Loan No. xxx-xxxx-xxxxxxx-9005) in the amount of $3,753,088.80. Other loans between FirstBank and Betteroads are the following: (i) Loan Agreement (Loan No. xxxxxx-00005) in the amount of $1,280,239.46; and (ii) Loan Agreement (Loan No. xxxxxx-90003) in the amount of $397.67.

Also on June 9, 2017, St. James Security Services, Inc., Champion Petroleum, Inc., Control Force, Corp. and the Lenders filed an involuntary bankruptcy petition against Betterecycling Corporation. The petitioning creditors and the Lenders in line item 11 of the petition alleged that, "[t]he debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount." Line item 13 of the petition discloses that the total of petitioners' claims is in the amount of $96,649,583.80. The involuntary petitions disclose that Betteroads and Betterecycling are affiliates. St. James Security Services, Inc.'s unsecured claim is based on a Judgment dated December 8, 2016 in St. James Security Services, Inc. v. Betteroads Asphalt LLC & Betterecycling Corporation- civil case no.KCD 2016-0453 (604). The claim is in the amount of $60,020.48. Control Force Corp.'s unsecured claim is based upon a Judgment dated March 7, 2017, Control Force, Corp.. vs. Betterecycling Corp., civil case no. KCD 2016-2093 (503). The claim is in the amount of $56,872.14. Champion Petroleum Inc.'s unsecured claim is based upon a Judgment dated March 20, 2017, Champion Petroleum, Inc. vs. Betterecycling Corp., civil case no. KCM 2017-0361 (902). The claim is in the amount of $5,204.88. Banco Popular has the following claims all of which it lists as undetermined the amount of claim above the value of any lien: (i) Loan Agreement (line of credit, Note 4001) in the amount of $11,840,690.92; (ii) Loan Agreement (Term Loan I, Note 9008) in the amount of $6,790,317.53 and (iii) Loan Agreement (Term Loan II, Note 9009) in the amount of

$16,647,238.05. Banco Santander has the following claims all of which it lists as undetermined the amount of claim above the value of any lien: (i) Loan Agreement (Term Loan I, Note 9008) in the amount of $2,068,170.71; Loan Agreement (Term Loan II, Note 9009) in the amount of $4,841,943.64; (iii) Loan Agreement (Term Loan III, Note 9010) in the amount of $9,259,182.29; and (iv) Loan Agreement (Line of Credit, Note 4001) in the amount of $3,606,395.44. FirstBank has the following claims all of which it lists as undetermined the amount of claim above the value of any lien: (i) Loan Agreement (Line of Credit, Note 4001) in the amount of $6,458,768.31; (ii) Loan Agreement (Term Loan I, Note 9008) in the amount of $3,703,929.78; and (iii) Loan Agreement (Term Loan II, Note 9009) in the amount of $9,078,644.32. EDB has the following claims all of which it lists as undetermined the amount of claim above the value of any lien: (i) Loan Agreement (line of credit, Note 4001) in the amount of $1,152,939.72; (ii) Loan Agreement (Term Loan I, Note 9008) in the amount of $661,179.90; and (iv) Loan Agreement (Term Loan IV, Note 9011) in the amount of $4,137,250.82. Other loans between Banco Popular and Betteroads are the following: (i) Loan Agreement (Loan No. xxx-xxxx-xxxxxxx-2001) in the amount of $8,271,387.12; (ii) Loan Agreement (Loan No. xxx-xxxx-xxxxxxx-9004) in the amount of $4,256,358.95; and (iii) Loan Agreement (Loan No. xxx-xxxx-xxxxxxx-9005) in the amount of $3,753,088.80.

On June 27, 2017, Betteroads filed its *Motion of the Alleged Debtor Betteroads Asphalt LLC to Dismiss the Involuntary Bankruptcy Petition*. Also on that same date, Betterecycling filed its *Motion of the Alleged Debtor Betterecycling Corporation to Dismiss the Involuntary Bankruptcy Petition*. The alleged Debtors argue that these petitions should be dismissed pursuant to Fed. R. Civ. P. 12(b) due to the following: (i) most of the Petitioning Creditors' claims are not eligible because their claims are subject to a bona fide dispute and thus are not in conformity with 11 U.S.C. §303(b)(1); (ii) the Petitioning Creditors filed these petitions as a bad faith litigation tactic and thus the same warrant dismissal; (iii) the court should dismiss these cases based on the doctrine of abstention pursuant to 11 U.S.C. §305(a)(1); and (iv) the alleged Debtors should be

awarded the fees, costs and damages pursuant to 11 U.S.C. §303(i) (Lead Case No. 17-04156, Docket No. 46, Lead Case No. 17-04157, Docket No, 27).

On June 27, 2017, creditor Banco Popular filed a *Motion Submitting Joinder to Involuntary Petition* by which it requested the court to join as an additional eligible and qualifying petitioning creditor of Betteroads. Banco Popular alleges that pursuant to 11 U.S.C.§303(c), a creditor holding an unsecured claim that is not contingent may join an involuntary petition. BPPR states that as of the date of the filing of the petition, it is a holder of an unsecured, non-contingent claim against the Debtor in the total amount of $80,057.15 on account of credit card debts (Lead Case No. 17-04156, Docket No. 50).

On August 3, 2017, the Lenders filed their *Opposition to the Motion to Dismiss* in both cases by which they argue the following: (i) under the standard of Fed. R. Civ. P. 12(b), the Petitioning Creditors have established a *prima facie* case for relief pursuant to 11 U.S.C. §303; (ii) the involuntary petitions satisfy 11 U.S.C. §303(b) because each involuntary petition was commenced by at least three (3) qualified petitioning creditors whose claims are not subject to a bona fide dispute and whose unsecured and uncontingent claims aggregate at least $15,775. Eight (8) petitioning creditors filed the involuntary petition for Betteroads Asphalt, LLC ("Betteroads") and seven (7) petitioning creditors filed the involuntary petition against Betterecycling Corporation ("Betterecycling"); (iii) the Lenders deny all of the bad faith allegations. The Lenders argue that bad faith is not a cognizable defense to contest an involuntary petition. A number of courts following the plain meaning of 11 U.S.C. §303 have decided that bad faith is not an independent basis to contest a properly filed involuntary petition; (iv) the Debtors are not paying their debts as they become due given that: (a) the Debtors admit that since July 2016, when the Lenders started to exercise remedies under the syndicated credit facilities, the Debtors are not 'conducting their affairs in a manner consistent within the established course of business with its lenders and supplies;' (b) the record shows that since the filing of the Involuntary Petitions, additional unpaid claims (in addition to those of the Petitioning Creditors) have been filed against the Debtors. Eight (8) additional claims have been filed against Betteroads and five (5) additional

claims have been filed against Betterecycling; (c) the proof of claims filed by the IRS disclose that both of the Debtors have outstanding federal tax liabilities since the year 2015; (d) the additional proof of claims disclose that the Debtors are not paying their utility creditors such as PREPA and the Puerto Rico Telephone Company; (e) during the past year, dozens of the Debtors' creditors and suppliers have filed collection of monies lawsuits against the Debtors for past due amounts; (v) the Debtors' request for abstention should be denied because the abstention doctrine should not be used as a remedy in substitution of a motion to dismiss under other applicable sections of the Bankruptcy Code; (vi) the Debtors fail to establish or argue that the interests of the creditors would be better served by abstention rather than by allowing these properly-filed involuntary bankruptcy cases to continue; (vii) the Debtors have been transferring their assets (as described in the Motion to Appoint a Trustee) and creditor remedies to avoid these transfers are available only in bankruptcy; (viii) the involuntary petitions do not involve a "two-party dispute" that the pending state court litigation could fully resolve; (ix) the state court litigation would not resolve or avoid the substantial avoidable transfers that the Debtors have undertaken prior to the bankruptcy filing nor provide an orderly process for all creditors to assert their claims; (x) the Debtors have not met their burden of establishing that abstention under 11 U.S.C. §305(a) is in the best interests of both the Debtors and all the creditors; and (xi) the involuntary petitions are the proper remedy to address the Debtors' pre-filing transfers of property, maximize recoveries for creditors, and orderly resolve the various and substantial claims against the Debtors (Lead Case No. 17-04156, Docket No. 74, Lead Case No. 17-04157, Docket No. 52).

On September 1, 2017, the Debtors' filed their *Reply to Motion to Dismiss and Request for Immediate Dismissal Against Certain Petitioners.* Certain petitioning creditors have failed to reply to the motion to dismiss and thus, the same should be granted as unopposed and eliminated as a petitioner. In the involuntary petition for Betteroads, the petitioning creditors that have not replied are the following: (i) St. James Security Services, Inc.; (ii) Sargeant Marine, Inc.; (iii) Sargeant Trading, LTD; (iv) Facsimil Paper Connection Corp.; (v) any independent claim of Banco Popular beside the Lender's group; and (vi) any independent claim of Firstbank beside the

Lender's group. In the involuntary petition for Betterecycling, the petitioning creditors that have replied consist of: (i) Champion Petroleum Corp.; (ii) St. James Security Inc.; (iii) Control Force Corporation; (iv) any independent claim of Banco Popular beside the Lender's group; and (v) any independent claim of Firstbank beside the Lender's group (Lead Case No. 17-04156, Docket No. 88, Lead Case No. 17-04157, Docket No. 68).

On September 12, 2017, Firstbank filed a *Motion Joining Opposition to Motion to Dismiss* by which it stated its position as a creditor in a separate and distinct commercial loan from the syndicated commercial loan agreements and joined the Syndicated Lenders in their opposition to the motion to dismiss (Lead Case No. 17-04156, Docket No. 97).

On September 18, 2017, the Lenders filed their *Sur-Reply to Debtors' Reply to the Lenders' Opposition to Motion to Dismiss* contending that: (i) the failure of a petitioning creditor to formally oppose the motion to dismiss is not a basis for dismissal; (ii) "[i]n deciding a Rule 12(b)(6) motion to dismiss, it has been consistently held that when pleadings are themselves sufficient to withstand dismissal, failure to respond to a 12(b)(6) motion cannot constitute a 'default' justifying dismissal of the complaint;" See McCall v. Pataki, 232 F. 3d 321 (2d Cir. 2000); see also; Maggette v. Dalsheim, 709 F. 2d 800, 802 (2nd Cir. 1983); and (iii) for both of the involuntary petitions, the Lenders filed the opposition and contested all the allegations made by the Debtors in their motion to dismiss (Lead Case No. 17-04156, Docket No. 100, Lead Case No. 17-04157, Docket No.79).

On October 27, 2017, Sargeant Marine and Sargeant Trading filed their *Sur-Reply to Debtor's Reply to Opposition to Motion to Dismiss and Request for Immediate Dismissal Against Certain Petitioners and Notice of Joinder in the Opposition to Motion to Dismiss and Request for Immediate Dismissal Against Certain Petitioners* in which they assert the following: (i) the fact that Sargeant did not file a separate motion to dismiss is not grounds to dismiss the case, given that the motion to dismiss is meritless. "Plaintiffs are not required to submit evidence to defeat a Rule 12(b)(6) motion, but need only sufficiently allege in their complaint a plausible claim" Foley v. Wells Fargo Bank, N.A., 772 F. 3d 63, 71 (1st Cir., 2014); (ii) Sargeant joins the Lenders'

opposition to the motion to dismiss that evidences that the involuntary petition establishes *a prima facie* case for relief pursuant to 11 U.S.C. §303; (iii) even considering Sargeant's claim as a single claim, which is incorrect, the *prima facie* case for relied under section 303 is not rebutted; and (iv) Sargeant clarifies that the non-appealable, *bona fide* Judgment includes two separate obligations of the Debtor as to two distinct entities (Lead Case No. 17-04156, Docket No. 106).

Also on said date, Sargeant Marine and Sargeant Trading filed in the Betteroads involuntary lead case, their *Statement of Uncontested Material Facts* and their *Amended Motion for Summary Judgment on Involuntary Petition and Memorandum of Law in Support Thereof* (Lead Case No. 17-04156, Docket Nos. 105 & 108). Sargeant Marine and Sargeant Trading contend the following in their amended motion for summary judgment: (i) there are currently four (4) creditors that hold bona fide claims that are not contingent as to liability and are not subject to bona fide dispute as they are evidenced by final and non-appealable judgments; (ii) Sargeant Marine and Sargeant Trading are two separate and distinct entities that each hold a claim against the Debtor; (iii) however, even if Sargeant Marine and Sargeant Trading's claim were considered to be one claim, it is undisputed that Sargeant holds a final and non-appealable Judgment; and (iii) it is uncontested that there are at least three (3) creditors with bona fide claims as they hold final and non-appealable judgments; thus the Petitioning Creditors have established a *prima facie* case under 11 U.S.C.§303(b) and the motion to dismiss fails to comply with the Fed. R. Civ. P. 12(b) standard and therefore must be denied.

On November 14, 2017, Sargeant Marine and Sargeant Trading filed a *Motion for Entry of Order as Unopposed* regarding its *Amended Motion for Summary Judgment* (Docket Nos. 105 & 108) and to deny Betteroads' motion to dismiss (Lead Case No. 17-04156, Docket No. 125). On November 15, 2017, Betteroads filed its *Opposing Statement of Material Facts* and its *Initial Opposition to Premature Amended Motion for Summary Judgement by Sargeant* (Lead Case 17-04156, Docket Nos. 130 & 131). Betteroads argues the following in its opposition to the premature amended motion for summary judgment: (i) Sargent wants to move forward with summary judgment before the alleged Debtor has the opportunity to access the documents,

evidence and testimony to expose their intent. The alleged Debtor is in the process of gathering relevant documental evidence to put the court in the position to dismiss this petition due to the bad faith of the creditors; (ii) Sargeant seeks a competitive advantage in the local asphalt market. "The alleged Debtor's demise will certainly grant this competitive advantage as the alleged debtor and Sargeant hold two out of three tank farm terminals/ports in Puerto Rico;" (iii) "[t]he petitioners in this case, did not join the petition to immerse the alleged debtor in this process with the other creditors best interest at heart. Simply, they were motivated either by competitive market advantages and a check to be written by the syndicate lenders;" (iv) "…it appears that the syndicate lender[s] were forced to make a promise of payment to those unsecured creditors which agreed to join as petitioners. By information and belie[f], this payment or distribution would be in addition to that which they would be entitled to within the statutory bankruptcy distribution structure of their corresponding potential class;" (v) "[a]s such, it appears that the other petitioners may be under the paycheck of the "Syndicate Lenders" seeking a distribution contrary to the orderly scheme of the bankruptcy code and in preference to any potential unsecured creditor in the same classification; and (vi) "[f]rom the alleged [D]ebtor's perspective, the petitioners' interests became so intertwined that they have become and should be considered as a single entity for purposes of the proceedings" (Docket No. 131). Thereafter, on December 8, 2017, *Sargeant Marine and Sargeant Trading filed their Opposition to "New Set of Proposed Uncontested Facts* (Lead Case No. 17-04156, Docket No. 152) and their *Reply to Initial Opposition to Premature Amended Motion for Summary Judgment by Sargeant* (Lead Case No. 17-04156, Docket No. 153).

On November 13, 2017, the Lenders filed a *Motion for Summary Judgment and Memorandum of Law in Support Thereof* and a *Statement of Uncontested Material Facts* (Lead Case No. 17-04156, Docket Nos. 120, 121, Lead Case No. 17-04157, Docket Nos. 87, 88). The Lenders in their *Motion for Summary Judgme*nt contend the following: (i) the involuntary petitions satisfy the requirements under 11 U.S.C. §303(b), given that each involuntary petition is supported by at least three (3) petitioning creditors with claims that are not contingent or the

-11-

object of a bona fide dispute as to liability or amount and the aggregate of their unsecured, non-contingent, undisputed claims aggregate more than the statutory threshold of $15,775; (ii) each of the Petitioning Creditors for both of the involuntary petitions holds a final and unappealable judgment that has not been contested by the Debtors; (iii) the alleged Debtors are not paying their debts as they become due in conformity with 11 U.S.C. §303(h)(1). Moreover, the Debtors have failed to deny that they are generally not paying their debts as they become due; (iv) the record shows that since the filing of the Involuntary Petitions, additional unpaid claims as of the Petition Date have been filed against the alleged Debtors; (v) these additional proof of claims filed by unpaid creditors, which claims are deemed allowed, evidence that Betteroads and Betterecycling owe at least $4,264,380.85 to creditors, without considering the claims of the Petitioning Creditors which exceed $90 million. Moreover, the proof of claims filed by the Internal Revenue Service evince that both of the Debtors' outstanding federal tax liabilities which amount to approximately $980,875.21 date back as far as the year 2015. There are also proof of claims filed by the Puerto Rico Electric Power Authority ("PREPA"), the Puerto Rico Telephone Company and real estate taxes filed owed to CRIM; (vi) Debtors have accumulated a substantial amount of litigation related to claims from suppliers and other entities; and (vii) the Aging Report ending on June 30, 2017 and produced by Betteroads discloses that at least 90.4% of Betteroads accounts payables are over 90 days old that amount to $10,073,646.65. The Aging Report ending on June 30, 2017 and produced by Betterecycling discloses that 98.66% of Betterecycling accounts payables are over 90 days old that amount to $16,957,259.71.

On November 17, 2017, a status conference was held in which the parties gave an overview regarding the motion for appointment of trustee and also discussed the motion to dismiss the involuntary petition and the motions for summary judgment filed by Sargeant Marine/ Sargeant Trading and the petitioning creditors. The court stated that assuming the creditors in the syndicate lender facility are considered to be creditors subject to a bona fide dispute, there are at least three (3) other creditors. Counsel for the Debtors contested the validity of the three (3) creditor requirement based on a questionable agreement. Counsel for petitioning creditors stated

that the creditors hold final judgments against the Debtors and that the agreement is presented as part of the bad faith defense, and that the agreement was not accepted, and was based on a carve-out proposition. Counsel for Banco Popular stated that it also has debts and claims which are not part of the syndicate lender facility. Counsel for Firstbank clarified that Firstbank has two claims, including a secured claim that is not part of the syndicate lender agreement. Counsel for the Involuntary Debtors challenged that Debtors are not paying debts as they become due. Counsel for the petitioning creditors replied by stating that the Debtors have not opposed in writing. Moreover, the Debtors have seventeen (17) debt collection actions, and 90% of their accounts payable are over 90 days old. The court stated that petitioning creditors have made a *prima facie* showing that debtors were not generally paying debts as they became due and that it behooves the debtors to oppose this matter.

The court also stated the following: "There is no statutory requirement that petitioning creditors commence an involuntary petition in good faith. The critical issue is whether bad faith is a valid ground to dismiss an involuntary petition. Bad faith is a fact intensive issue which generally relies on equitable principles. In view of the above, the court posed two questions: 1- why should the court apply equity under section 105(a) after the Supreme Court's decision in Law v. Siegel, 134 S. Ct. 1188 (2014), and this court's decision in In re Edgar A. Reyes Colón, 558 B.R. 563 (Bankr. D. P.R. 2016)[1] …. 2- Is there a difference between filing a voluntary petition and filing an involuntary petition in relation to the 'good faith' requirement?" (Lead Case No. 17-04156, Docket No. 135, Lead Case No. 17-04157, Docket No. 98).

Subsequently, on December 27, 2017, the alleged Debtors filed their *Initial Opposition to Premature Amended Motion for Summary Judgment by Lenders* by which they argued that: (i) the Debtors have stated to the court that the "… facts surrounding the filing of the petition[s] are relevant to put the Court and parties in interest as to the motives of the filing, as well as to the effects of the same inasmuch there are relevant to the adjudication and dismissal of the case either

---

[1] Reversed and remanded on August 9, 2017, 2017 WL 6365433, on other grounds, and pending appeal before the U.S. Court of Appeals before the First Circuit.

-13-

due to bad faith pursuant to section §303 or section §305;" (ii) "[a]ny and all claims asserted by the Lenders as Syndicate Lenders, as well as BPPR and Firstbank individually in case no. 17-04156 & case no. 17-04157, are subject to a bona fide dispute and subject to state court adjudication of the alleged debtors' counterclaim[s]. Further, it should be observed that simultaneous filing of these [s]tate [c]ourt actions reveals that all these entities behave as one. Discovery in this matter should be allowed and not unwarrantedly be thwarted under the allegations of the protective order as the Lenders apparently intend;" (iii) "[t]o attempt to achieve the involuntary petition [i]n case no. 17-04156, between March and May 2017, Firstbank, Banco Popular, Banco Santander and the Economic Development Bank for Puerto Rico, executed an agreement with the other petitioners to wit, St. James Security Services, Inc., Sargeant Marine, Sargeant Trading and Facsimile Corporation in which these additional and supposedly uncontested petitioners offered payment in preference of those creditors with the same unsecured classification in exchange for their assistance in achieving the liquidation of the corporations assets;" (iv) "[t]o attempt to achieve the involuntary petition [i]n case no. 17-04157, between March and May 2017, Firstbank, Banco Popular, Banco Santander and the Economic Development Bank for Puerto Rico, executed an agreement with the other petitioners to wit, St. James Security Services, Inc., Champion Petroleum, Inc. and Control Force, Corp, in which these additional and supposedly uncontested petitioners offered payment in preference of those creditors with the same unsecured classification in exchange for their assistance in achieving the liquidation of the corporations assets;" (v) "[t]hese petitioners (1) have obligated themselves to litigate [in] unison; (2) none is permitted to deviate from their common interest and strategy; (3) they have settle[d] to participate from the same distribution upon the sale and liquidation of the alleged debtor's assets; (4) all in preference of those creditors with the same unsecured classification;" (vi) "[a]round August of 2016, claiming among other things, alleged breaches of the loan agreements and foreclosure of real and personal property collaterals the syndicate lenders performed an unwarranted extrajudicial foreclosure of over $45 million in accounts receivables, purportedly to satisfy their contested claim of $75 million;" (vii) "[a]lso, the movants unlawfully

seized and garnished over $2 million from the companies' operational accounts which contained funds destined for the payment of taxes, employees' salaries, employees' benefits and the repayment of suppliers' raw materials;" (viii) "[e]ven when the alleged Debtors assert that certain debts were not being paid as they became due, as some are evidenced by proof of claims subject to review and/or objections, the alleged debtors contend that these primarily respond to lenders unwarranted intervention;" (ix) petitioning creditors filed these bankruptcy petitions based on improper purposes and thus, bad faith. "In the case at bar, the syndicate lenders seek to circumvent the jurisdiction of the State Court, by forum shopping in the Bankruptcy Court. First, their failure to obtain execution remedies that would grant them control of the stock of the corporation coupled with the prohibition to sell the contested credit facilities to a competitor or investors, have driven them to buy their way in the bankruptcy forum through the promise of preferential dividends to the volunteered petitioners, in order to snatch the company from its officers. In regards to other petitioners, they do not seek an equitable relief, they have only entered this proceeding upon a promise of payment, contrary to the bankruptcy equitable distribution scheme." "The petitioners in this case, did not join in the petition to immerse the alleged debtor in this process with the other creditors' best interest at heart. Simply, they were motivated either by competitive market advantages and a check to be written by the syndicate lenders" (Lead case No. 17-04156, Docket No. 167, Lead Case No. 17-04157, Docket No. 123). Also on said date, the alleged Debtors filed *their Initial Opposition to Statement of Material Facts* (Lead Case No. 17-04156, Docket No. 168, Lead Case No. 17-04157, Docket No. 124).

On December 28, 2017, the Debtors filed their *Motion in Compliance with Order: Alleged Debtor's Supplemental Brief on Pending Legal Issues* in which they argue that: (i) the court's authority to grant dismissal of these involuntary petitions based upon the grounds of bad faith, improper motive and/or improper bankruptcy purpose is not only pursuant to its equitable powers under 11 U.S.C. §105 but also based on the statutory provisions of 11 U.S.C. §303; (ii) In re Forever Green Athletic Fields, Inc., 804 F. 3d 328 (3rd Cir. 2015) is in harmony with the most conservative reading of Law v. Siegel, 134 S. Ct. 1188 (2014) and In re Edgar Reyes Colon, 558

B.R. 563 (Bankr. P.R. 2016). "It is unquestionable that its ruling is based on a sound interpretation of the code provisions which support a court's statutory authority to dismiss a case for bad faith;" (iii) "[s]ection 303(b) does not require that an involuntary petition be filed in good faith, any more than section 301 requires that a voluntary petition be filed in good faith. Nevertheless, in the former situation (as well as in the latter), the courts have developed a requirement of good faith" See Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶303.16 (16th ed. 2017); (iv) "… good faith requirements provided by the code and even case law, is part of a long lasting judicial policy and congressional intent, applicable to any party which invokes the jurisdiction of the Bankruptcy Court, not just the debtors;" (v) "…a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with 'clean hands'" In re Little Creek Dev. Co., 779 F. 2d 1068, 1072 (5th Cir. 1986); (vi) "[t]he rulings of Law v. Siegel, and Marrama, upholding that debtor's bad faith conduct constitutes a 'cause' for dismissal, further strengthens the legal contention that Section §303 should statutorily be read allowing and providing for the dismissal of involuntary petition upon the founding of bad faith from creditors;" (vii) and "the alleged debtors contend that all the necessary elements are present to conclude that the court should abstain from exercising its jurisdiction and issue an order of dismissal inasmuch it is in the best interest[s] of [the] debtors and its creditors" (Lead Case No. 17-04156, Docket No. 169, Lead Case No. 17-04157, Docket No. 125).

On December 28, 2017, the Lenders filed their *Memorandum and Brief in Compliance with Order* in which they contend the following: (i) the alleged Debtors' allegations to somehow consolidate all creditors into one, has no basis in law or in fact and, thus should be rejected; (ii) there is no legal basis within the Bankruptcy Code to request a dismissal of an involuntary petition premised on bad faith allegations; (iii) 11 U.S.C.§303 does not provide for the inclusion of additional requirements to grant an involuntary petition as it would have if it had included a non-exhaustive list of additional requirements anteceded by the word "including;" (iv) the term "bad

faith" is not included in sections 303(b) and (h) as a defense to be raised by the debtor upon the petitioning creditors' filing of an involuntary petition. "Bad faith" is not an independent basis for dismissing an involuntary petition; (v) it is only pursuant to 11 U.S.C. §303(i)(2) that the Code mentions the term "bad faith" and only on the basis of the awarding of damages if the court dismisses an involuntary petition; (vi) "[t]he language of section 303 is unambiguous to the extent that although 'bad faith,' 'good faith,' and the term 'cause' as a non-exhaustive basis for dismissal, have been included in other sections of the Code, they were explicitly not included here." "That is strictly construing, as the Lenders are requesting this Court to do, the terms of the statute, section 303 only states that a 'prerequisite for a claim of bad faith is that the court must have dismissed the petition'" In re Knoth, 168 B.R. 311, 315 (Bankr. D.S.C. 1994);" (vii) "[t]here is no legal basis for this Court not to read the statute literally, since the exclusion by Congress of the term 'bad faith,' 'good faith,' or 'cause' from section 303 was done, as evidenced by the explicit inclusion of these terms in other areas of the Code, purposely;" (viii) "... this court should determine that, pursuant to the case law regarding statutory interpretation of the Code, as applied by Law and In re [Reyes] Colón, the explicit exclusion of a good faith requirement in the filing of an involuntary petition was not the result of inadvertence since '[u]nder normal statutory construction, we would not assume that the failure to include some item in a statute is an oversight that the court may correct.'" United States v. Neal, 249 F. 3d 1251, 1255 (10th Cir. 2001); (ix) "…in the case of involuntary petitions, besides the mention of bad faith in section 303(i)(2), '[g]ood or bad faith is not an explicit requirement for granting involuntary relief under §303. And the plain language of §303(i) –where bad faith is mentioned—contemplates bad faith only as a requirement for the recovery of actual or punitive damages after the involuntary petition is dismissed. Thus, where, as here, a petitioning creditor meets the prerequisite requirements under §303 a finding of bad faith [is] appropriate. In re Kennedy, 504 B.R. 815, 823-824 (Bankr. S.D. Miss. 2014);" (x) contrary to the provisions of Chapter 7, 11, 12 and 13, section 303 does not allow for the dismissal for bad faith or for "cause." "The latter is the notable difference between the good faith requirement in a voluntary petition versus the existence of no such requirement in

the statute within the context of an involuntary petition. The presence of the words 'cause,' 'includes,' 'including,' and 'bad faith' or 'good faith' permeate multiple areas of the Code. Accordingly, this Court should not incorporate to the Code additional provisions that were purposely excluded by Congress since equitable powers under section 105 do 'not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law or constitute a roving commission to do equity.'" United States v. Sutton, 786 F. 2d 1305, 1308 (5th Cir. 1986) (Lead Case No. 17-04156, Docket No. 170, Lead Case No. 17-04157, Docket No. 126).

On January 2, 2018, Firstbank filed a *Motion Joining the Lenders' Memorandum and Brief in Compliance with Order* (Lead Case No. 17-04156, Docket No. 172, Lead Case No. 17-04157, Docket No. 128). On January 8, 2018, Sargeant Marine and Sargeant Trading filed a *Notice of Joinder in the Lenders' Memorandum and Brief in Compliance with Order* (Lead Case No. 17-04156, Docket No. 174).

On January 17, 2018, the alleged Debtors filed their *Reply to Lenders' Memorandum* contending that: (i) the syndicate lenders comprised of Banco Popular, Fistbank, Banco Santander and the BDE are subject to bona fide dispute and should be considered as one entity pursuant to their syndicate agreement which they have failed to produce pursuant to Fed. R. Bankr. P. 2019(c)(4); (ii) "[a]ny and all of the claims asserted by the Lenders as Syndicate Lenders, as well as BPPR and Firstbank individually on case no. 17-04156 & case no. 17-04157, are subject to a bona fide dispute and subject to a state court adjudication of the alleged debtors' counterclaim[s];" (iii) the Lenders have "…. executed 'confidential' agreements with the other petitioners in which these additional and supposedly uncontested petitioners were offered payment in preference of those creditors with the same unsecured classification in exchange for their assistance in achieving the liquidation of the corporations' assets;" (iv) "[a]s such, against other parties in interest, they as well have become so entangled with syndicate lenders, that they shouldn't be considered different and/or independent entities for purposes of Section 303(b). In re Iowa Coal Min. Co., Inc., 242 B.R. 661 (1999), (resolving that relationships between certain parties were so

-18-

intertwined that it would be unfair for the court to attempt to disentangle them to meet §303(b) requirements);" (v) Lenders' reliance on In re SPM Manufacturing Corp., 984 F. 2d 1305 (1st Cir. 1993) "…is misplaced and their secret agreements and preferential distributions over other parties in interest are not without consequence;" (vi) "[t]heir agreement on how to distribute liquidation proceeds among them from a common pot is not only made in bad faith when viewed as a preference over other creditors, but that being a binding agreement demonstrates that substance over form, they have consolidated their interest;" (vii) [t]he rulings of Law v. Siegel, and Marrama, upholding that debtor's bad faith conduct constitutes 'cause' for dismissal on §1112, further strengthens the legal contention that section 303 should be statutorily be read as allowing and providing for the dismissal of involuntary petition upon the founding of bad faith from creditors, as they have preserved through interpretation of the Code what Congress failed to expressly provide for on the Bankruptcy Abuse Prevention and Consumer Protection Act;" (viii) "…the reading of the Code by the Third Circuit's ruling in In re Forever Green Athletic Fields, Inc., is the most coherent with Congressional intent. It should be uncontested that within the confines of section 303, bad faith is a conduct that is condemned by Congress inasmuch it grants the Court the express authority to grant even punitive damages for incurring in such conduct;" (ix) "… if in fact a debtor is not paying its debts, a court is not automatically and/or mandatorily required to issue an order of relief;" (x) "….the syndicate Lenders once again have self-crafted the alleged compliance with section 303(h)(1) inasmuch pending claims or balances were primarily provoke[d] by them;" (xi) "[t]he Lenders come with 'unclean hands' upon this court and parties waving the flag of alleged debtors' purported incompliance with certain creditors, when it was them which authorized or deauthorized payments and which seized monies destined for payment of taxes, employees' salaries, employees' benefits and, the repayment of suppliers' raw materials;" (xii) "…the pendency of state law liquidation proceedings or the existence of unsettled issues of state law is relevant to an abstention decision under section 305(a)(1);" and (xiii) "Lenders have no risk, outside the bankruptcy forum, and have to their avail a court with jurisdiction to grant any remedy to which they are entitled. However, alleged debtors, parties in

interest and other creditor[s] are undoubtedly to be affected if an order for relief was granted at this point as the lenders, together with its competitors, will seek t[he] transfer and liquidation of their assets in what they purport is an encumbered estate" (Lead Case No. 17-04156, Docket No. 181, Lead Case No. 17-04157, Docket No. 136).

On January 17, 2018, the Lenders filed their *Reply to "Motion in Compliance with Order"* contending that: (i) it is uncontested that the Petitioning Creditors satisfy the requirements to commence an involuntary petition under 11 U.S.C. §§ 303(b) and 303(h)(1). The Lenders' brief and the Debtors' failure to rebut or address the issue in their brief establish that the involuntary petitions satisfy 11 U.S.C. §303(b); (ii) it is uncontested that the Debtors are generally not paying their debts as they become due. The Debtors have failed to contest or even address this point in their brief; (iii) after Law v. Siegel and In re Edgar Colón, the court's analysis should focus only in the requirements of 11 U.S.C. §§303(b) and 303(h)(1) which are uncontested and enter the corresponding orders for relief; (iv) the court should not create a separate and independent defense of bad faith to dismiss an involuntary petition; (v) the Bankruptcy Code only mentions the term "bad faith" as a basis to award damages once and if the court dismisses an involuntary petition pursuant to 11 U.S.C. §303(i)(2); (vi) it is uncontested that the courts that have inserted an independent defense of bad faith to a properly filed involuntary petition have done so on equitable grounds; (vii) following In re Edgar Reyes Colón, this court should not use equity to create exceptions or requirements that are not explicitly included in section 303(b) of the Code and thus, should not allow a defense of bad faith to involuntary petitions; (viii) none of the cases cited by the Debtors in their brief contest the fact that section 303, contrary to the pertinent sections of all other chapters in the Code regarding dismissal, does not include non-exhaustive language such as "cause," or "including," that the pertinent sections of Chapter 9, 11, 12, and 13 do have. This expansive reading attached to the word "cause" and "include" or "including" is present in Chapter 11 and all other chapters of the Code pertaining to voluntary petitions. Section 303 does not allow for a dismissal for bad faith or for "cause;" (ix) in the case of involuntary petitions, besides the mention of bad faith in section 303(i)(2), "[g]ood or bad faith is not an explicit requirement for

-20-

granting involuntary relief under §303. And the plain language of §303(i)—where bad faith is mentioned contemplates bad faith only as a requirement for the recovery of actual or punitive damages after the involuntary petition is dismissed; (x) the Debtors' request to abstain has no basis because it is based on the unfounded allegation that once the Lenders "…dismantle the alleged debtor's defenses/counterclaims in the State Court complaint or through the appointment of a trustee the result will be that we will be dealing with fully over encumbered estates in which the Syndicate Lenders will control and resolve in their exclusive favor all assets of this company." The Debtors' allegations are incorrect because they have numerous creditors, and some of which are owed material amounts of money. Moreover, multiple creditors have filed collection actions against the Debtors; and (xi) the Debtors have been unable to state why the abstention is in the best interests of creditors. "Granting an abstention motion pursuant to §305(a)(1) requires more than a simple balancing harm to the debtor and creditors; rather the interests of both the debtor and its creditors must be served by granting the requested relief" In re Costa Bonita Beach Resort, Inc., 479 B.R. 14, 46 (Bankr. D.P.R. 2012) (Lead Case 17-04156, Docket No. 182, Lead Case No. 17-04157, Docket No. 137).

On March 9, 2018, Betteroads filed a *Motion Submitting Exhibits of Docket No. 168 with Certified English Translations* (Lead Case 17-04156, Docket No. 212). Also on said date, Betterecycling filed a *Motion Submitting Exhibits of Docket No. 124 with Certified English Translations* (Lead Case No. 17-04157, Docket No. 169).

On March 13, 2018, petitioning creditor Control Force Corp., filed a *Motion to Inform Joinder to Lenders' Motions.* The petitioning creditor Control Force, Corp., joined the following motions: (i) Emergency Motion to Appoint a Trustee (Docket No. 8); Motion for Protective Order (Docket No. 51); (iii) Opposition to Motion to Dismiss (Docket No. 52); (iv) Sur-Reply to Debtor's Reply to Motion to Dismiss (Docket No. 79); (v) Motion for Summary Judgment and Memorandum of Law (Docket No. 87); (vi) Statement of Uncontested Material Facts (Docket No. 88); (vii) Lenders' Memorandum and Brief (Docket No. 126); and (viii) Response to Motion to Comply with Order (Docket No. 167) (Lead Case No. 17-04157, Docket No. 173). Also on

March 13, 2018, petitioning creditor Champion Petroleum, Inc., filed a *Motion to Inform Joinder to Lenders' Motions.* The petitioning creditor Champion Petroleum, Inc., joined the following motions: (i) Emergency Motion to Appoint a Trustee (Docket No. 8); Motion for Protective Order (Docket No. 51); (iii) Opposition to Motion to Dismiss (Docket No. 52); (iv) Sur-Reply to Debtor's Reply to Motion to Dismiss (Docket No. 79); (v) Motion for Summary Judgment and Memorandum of Law (Docket No. 87); (vi) Statement of Uncontested Material Facts (Docket No. 88); (vii) Lenders' Memorandum and Brief (Docket No. 126); and (viii) Response to Motion to Comply with Order (Docket No. 167) (Lead Case No. 17-04157, Docket No. 174).

On March 22, 2018, petitioning creditor Facsimil Paper Connection, Inc., filed a *Motion to Inform Joinder to Lenders' Motions*. The petitioning creditor Facsimil Paper Connection, Inc. joined the following motions: (i) Emergency Motion to Appoint a Trustee (Docket No. 14); Motion for Protective Order (Docket No. 73); (iii) Opposition to Motion to Dismiss (Docket No. 74); (iv) Sur-Reply to Debtor's Reply to Motion to Dismiss (Docket No. 100); (v) Motion for Summary Judgment and Memorandum of Law (Docket No. 120); (vi) Statement of Uncontested Material Facts (Docket No. 121); (vii) Lenders' Memorandum and Brief (Docket No. 170); and (viii) Response to Motion to Comply with Order (Docket No. 209) (Lead Case No. 17-04156, Docket No. 220). Also on March 22, 2018, petitioning creditor, St. James Security Services, LLC[2] filed *a Motion to Inform Joinder to Lenders' Motions.* The petitioning creditor, St. James Security Services, LLC joined the following motions: (i) Emergency Motion to Appoint a Trustee (Docket No. 14); (ii) Motion for Protective Order (Docket No. 73); (iii) Opposition to Motion to Dismiss (Docket No. 74); (iv) Sur-Reply to Debtor's Reply to Motion to Dismiss (Docket No. 100); (v) Motion for Summary Judgment and Memorandum of Law (Docket No. 120); (vi) Statement of Uncontested Material Facts (Docket No. 121); (vii) Lenders' Memorandum and Brief (Docket No. 170); and (viii) Response to Motion to Comply with Order (Docket No. 209) (Lead Case No. 17-04156, Docket No. 221).

[2] The court notes that the initial Petitioning Creditor is St. James Security Services, Inc. Thereafter, the petitioning creditor is referred to as St. James Security Services, LLC.

Subsequently, on April 4, 2018, the Lenders and the Petitioning Creditors filed a *Joint Motion to Inform and Submitting Documents* after considering the allegations made by the U.S. Trustee in its *Objection to Alleged Debtors' Request to File Documents under Seal*, "… in order to avoid any further delay in the Court's adjudication of the involuntary petitions, the Lenders and the Petitioning Creditors wish to disclose Confidential Documents… The present disclosure is made voluntarily" (Lead Case No. 17-04156, Docket No. 230, Lead Case No. 17-04157, Docket No.186). On September 17, 2018, the Lenders filed in both cases a *Motion Seeking Expedited Summary Judgment and Status Conference* (Lead Case No. 17-04156, Docket No. 241, Lead Case No. 17-04157, Docket No.191), and on October 15, 2018, the alleged Debtors filed their *Position as to Docket Nos. 241 & 245*: Case No. 17-04156, Docket No. 250, Lead Case No. 17-04157, Docket No. 196).

Material Uncontested Facts

Betteroads in its *Initial Opposition to Statement of Material Facts* (Lead Case No. 17-04156, Docket No. 168, pg. 9) which had been proposed by the Lenders in its *Statement of Uncontested Material Facts*, only admitted to statement number 23 which is that on June 27, 2017, Betteroads filed a "Motion of the Alleged Debtor Betteroads Asphalt, LLC to dismiss the Involuntary Bankruptcy Petition (Lead Case No. 17-04156, Docket No. 121, pg. 4). Betterecycling in its *Initial Opposition to Statement of Material Facts* (Lead Case No. 17-04157, Docket No. 124, pg. 15) which had been proposed by the Lenders in its *Statement of Uncontested Material Facts*, only admitted to statement number 43 which is that on June 27, 2017, Betterecycling filed a "Motion of the Alleged Debtor Betterecycling Corporation to dismiss the Involuntary Bankruptcy Petition (Lead Case No. 17-04157, Docket No. 88, pg. 7). In addition, Betteroads in its *Opposing Statement of Material Facts* (Lead Case No. 17-04156, Docket No. 130) which had been proposed by Sargeant Marine and Sargeant Trading in their *Statement of Uncontested Material Facts* did not admit to any of the uncontested material facts proposed by Sargeant Marine and Sargeant Trading (Lead Case No. 17-04156, Docket No. 105). Betteroads as part of its opposition included a new set of proposed uncontested facts and Sargeant Marine

and Sargeant Trading filed their *Opposition to "New Set of Proposed Uncontested Facts"* (Lead Case No. 17-04156, Docket No. 152) in which it admitted various statements. Sargeant Marine and Sargeant Trading admitted and clarified the following new proposed uncontested facts:

1.  On March 29, 2017, the Court denied a motion for preventive garnishment filed by the Syndicate Lenders. Sargeant clarifies that this alleged fact is inconsequential and immaterial as to the issues presented in the *Motion for Summary Judgment*.

2.  On August 24, 2014, Sargeant received payment for $192,000. Sargeant clarifies that this payment was made before the appointed arbitration panel entered a Decision and Final Award against the Debtor and before the U.S. District Court for the Southern District of New York entered the final Judgment and thus, the amounts stated in such Award and Judgment include credit for the amount of such payment.

3.  On October 16, 2014, Sargeant received payment for $100,000. Sargeant clarifies that this payment was made before the appointed arbitration panel entered a Decision and Final Award against the Debtor and before the U.S. District Court for the Southern District of New York entered the final Judgment and thus, the amounts stated in such Award and Judgment include credit for the amount of such payment.

4.  On October 28, 2016, Sargeant collected the amount of $140,017.80. Sargeant admitted in its Statement of Uncontested Facts, collection $142,026.72, which includes this amount.

5.  The alleged Debtor has had disputes with Sargeant aside of the purported claim as evidence per case No. 15-03681 (Docket Nos. 184, 191, 192, 197, 202 & 209). Sargeant states that this fact is inconsequential and immaterial as to the issues presented in the *Motion for Summary Judgment*.

The Debtors denied as drafted the majority of the uncontested material facts submitted by the Lenders and petitioning creditors Sargeant Marine and Sargeant Trading based upon the following common denominators: (i) the Debtors admit that the Petitioning Creditors at some point had their claims adjudicated by a state court. However, they "… deny any inference that

these petitioners should be considered independent petitioners, inasmuch they have consolidated their interests prior [to] the filing of this involuntary proceeding in exchange for payment in preference of those creditors with the same unsecured classification;" (ii) Sargeant Marine and Sargeant Trading act as one and thus, should constitute one claimant. Moreover, all references to the mentioned award is made collectively without any distinction as to either entity. "Finally, as per the alleged Confidential Agreement with the Syndicate Lenders, Sargeant Marine, Inc. and Sargeant Trading LTD, present their claim as one, jointly settle with Syndicate Lender on distribution … without distinction of one another;" and (iii) regarding the proof of claims that have been filed in both cases and as to the Aging Reports for the Debtors as of June 30, 2017 in which 90.4% of Betteroads' debts are over 90 days old and in the case of Betterecycling 98.66% of its debs are over 90 days old, the Debtors deny the same as drafted and state the following: "[i]t is a fact that lender's intervened, controlled, authorized or deauthorized payments to creditors of the alleged debtors. Further, lender unwarrantedly extrajudicially foreclosure of over $45 million in accounts receivables and all cash equivalents of the alleged debtor provoking a default on certain debts. It is Lender['s] unwarranted and illegal actions which are subject to the State Court's adjudication which restitution may provide for the payments of the creditors' claims, which they themselves hindered."

The material facts that are in controversy and which the court will delve into are directly related with the requirements of the numerosity of creditors and whether the Debtors are not paying their debts as they become due the pursuant under 11 U.S.C. §303(b) and (h)(1). Thus, these material facts in controversy are related to some of the legal controversies in this case.

*Legal Issues*

There is before the court a motion to dismiss filed by each alleged Debtor in each lead bankruptcy case. There is also before the court a motion for summary judgment filed by the Lenders and the opposition filed by each alleged Debtor. In addition, there is a motion for summary judgment filed by petitioning creditors Sargeant Marine and Sargeant Trading in the Betteroads involuntary bankruptcy proceeding. The legal issues in the Debtors' motion to dismiss

in the Betteroads and Betterecycling involuntary bankruptcy petition and the motions for summary judgment are all related and intertwined because they all gravitate around the same central issues which are namely: whether these involuntary bankruptcies satisfy the requirements of 11 U.S.C. §§303(b)(1) and 303(h). The other key legal issue is whether "bad faith" is a "cause" for dismissal in involuntary bankruptcy proceedings pursuant to 11 U.S.C. §303. Moreover, the other legal issue that the alleged Debtors bring forth in their motion to dismiss is whether the court should abstain from delving into these involuntary bankruptcy proceedings pursuant to 11 U.S.C. §305(a)(1). For the sake of expediency and judicial economy, the court has combined both involuntary bankruptcy proceedings into one opinion and order given that the legal issues before the court are very similar. The court's analysis is in stages because whether it goes to the next stage is dependent upon the outcome of the prior stage. The court will start by delving into whether the Lenders and Petitioning Creditors satisfy the requirements of 11 U.S.C. §§303(b) and 303(h)(1) for the alleged Debtors. If these requirements are satisfied, then the court will consider whether "bad faith" is a "cause" for dismissal in involuntary bankruptcy proceedings. Lastly, the court will consider the alleged Debtors' request for discretionary abstention pursuant to 11 U.S.C. §305(a)(1) is appropriate in these involuntary bankruptcy proceedings.

Legal Analysis & Discussion

*Fed. R. Civ. P. 12(b)(6)*

A debtor may contest an involuntary petition by presenting defenses through a motion in the manner prescribed by Fed. R. Civ. P. 12 or by presenting defenses in an answer. Hon. Joan N. Feeney, Hon. Michael G. Williamson & Michael J. Stepan, Esq., Bankruptcy Law Manual, §14.23 (5th ed.2018). In both of the involuntary bankruptcy petitions, the Debtors disclosed that the motion to dismiss was under Fed. R. Civ. P. 12(b), but did not specify under which particular defense its motion to dismiss was based upon. However, the debtors' motion to dismiss or answer presented the affirmative defenses regarding the lack of legal grounds by the petitioning creditors

for failure to comply with 11 U.S.C. §§303(b) and 303(h)(1) therefore, resulting in the ineligibility of the debtor to be an involuntary debtor.

"The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to assess the legal feasibility of a complaint, not to weigh the evidence which the plaintiff offers or intends to offer." Velez-Arcay v. Banco Santander de P.R. (In re Velez-Arcay), 499 B.R. 225, 230 (Bankr. D.P.R. 2013), citing Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2nd Cir.1984); Citibank, N.A. v. K-H Corp., 745 F. Supp. 899, 902 (S.D.N.Y. 1990). Therefore, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, accepted as true, "state[s] a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. The Twombly standard was further developed in Ashcroft v. Iqbal, 556 U.S. 622 (2009), advising lower courts that "determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. "In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. In sum, allegations in a complaint cannot be speculative and must cross "the line between the conclusory and the factual". Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011). "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011).

In Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012), the U.S. Court of Appeals for the First Circuit (the "First Circuit") established a two-step standard

-27-

for motions to dismiss under Fed. R. Civ. P. 12(b)(6). Step one: isolate legal conclusions. Step two: take the complaint's well-pleaded (non-conclusory) allegations as true, drawing all reasonable inferences in favor of the plaintiff and determine if they plausibly narrate a claim for relief. Also see Pérez v. Rivera (In re Pérez), 2013 WL 1405747 at *3, 2013 Bankr. LEXIS 1561 at **9-10 (Bankr. D.P.R. 2013); Zavatsky v. O'Brien, 902 F. Supp. 2d 135, 140 (D. Mass. 2012); Guadalupe-Báez v. Pesquera, 2016 U.S. App. Lexis 7173, *7 (1st Cir. 2016).

After considering the above legal analysis and for the reasons discussed below, the Debtors' (Betteroads and Betterecycling) motion to dismiss are hereby denied in part at this juncture, pending an adjudication of whether the petitioning creditors filed the involuntary petitions in bad faith.

*Standard for Motion for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure, is applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; *see also*, In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." Wright, Miller & Kane, Federal Practice and Procedure, 3d, Vol 10A, § 2712 at 198. "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. at 202-203. Summary judgment is not a substitute for a trial of disputed

facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain.  Id. at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute, thereby requiring deference to the finder of fact.  Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation.  Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976).  When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party.  Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment.  Adickes v. Kress & Co., 398 U.S. 144, 157 (1970).  See also López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991).  It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial.  Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial.  López, 938 F.2d at 1516.  In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case.  Celotex, 477 U.S. at 325.  See

also, Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). See also, Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

For the reasons explained below, the Lenders' *Motion for Summary Judgment* is granted in part and denied in part and Sargeant Marine and Sargeant Trading's *Motion for Summary Judgment* is also granted in part and denied in part.

*Involuntary Bankruptcy Petitions*

Involuntary bankruptcies may only be filed under chapters 7 and 11 of the Bankruptcy Code and certain persons are expressly excluded from being subject to an involuntary bankruptcy pursuant to 11 U.S.C. §303(a). Generally, involuntary bankruptcies are filed by creditors in cases of business mismanagement and in cases in which the potential debtor is transferring assets in anticipation of creditor lawsuits and/or proceedings because the involuntary filing can serve as a vehicle to prevent diminution of assets by an involuntary debtor and provide unsecured creditors with a more equitable treatment. See Richard Levin & Henry J. Sommer, 2 Collier on Bankruptcy

¶303.01 (16th ed. 2018); Hon. Joan N. Feeney, Hon. Michael G. Williamson & Michael J. Stepan, Esq., Bankruptcy Law Manual, §14.1 (5th ed.2018). The decision to file an involuntary petition is a serious one, which might result in drastic consequences for both the debtor and the petitioning creditors. If an order for relief is entered, the debtor's ability to use or transfer the properties is compromised and the debtor faces the consequences from the denial of credit. If the involuntary petition fails, the petitioning creditors may be subject to sanctions and damages. See Hon. Joan N. Feeney, Hon. Michael G. Williamson & Michael J. Stepan, Esq., Bankruptcy Law Manual, §§14.1 & 14.2 (5th ed.2018). Petitioning creditors must diligently investigate and therefore, fully understand the debtor's assets, liabilities and financial condition before filing an involuntary petition since there are multiple factors which must be evaluated. Id. at §14.2.

Once the involuntary bankruptcy petition is filed a bankruptcy estate is created under 11 U.S.C. §541(a) and the provisions of the automatic stay come into effect. If the petitioning creditors believe that the debtor is depleting estate assets, they may request the appointment of an interim trustee under 11 U.S.C. §303(g), before the order of relief is entered pursuant to 11 U.S.C. §303(h).

*Requirements under 11 U.S.C. §303(b)*

11 U.S.C. §303 governs involuntary bankruptcy petitions under cases under Chapter 7 or 11 and provides in pertinent part that:

> "(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title –
>
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $15,775 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $15,775 of such claims." 11 U.S.C. §303(b)(1), (2).

Therefore, there are three (3) requirements that must be satisfied to commence an involuntary bankruptcy petition against a debtor that has twelve or more creditors; namely: (i) there must be three (3) or more petitioning creditors; (ii) each petitioning creditor must hold a claim against the debtor that is not contingent as to liability or the subject of a bona fide dispute; and (iii) the claims must aggregate at least $15,775 more than the value of liens on the debtor's property. The time for determining issues regarding the numerosity requirement is the date of the filing of the involuntary petition.

A petitioning creditor must be the holder of a claim. The term "claim" pursuant to 11 U.S.C. §101(5) is defined as:

"(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured." 11 U.S.C. §101(5)(A), (B).

*Bona fide dispute as to liability or amount*

The petitioning creditors cannot hold a claim that is subject to a bona fide dispute as to liability or amount. The Bankruptcy Code does not define the term "bona fide dispute," and its meaning has resulted in considerable litigation and disagreement. See Richard Levin & Henry J. Sommer, 2 Collier on Bankruptcy ¶303.01 (16th ed. 2018). The petitioning creditor has the burden to establish a *prima facie* case that there is no bona fide dispute as to both liability and amount. Once the petitioning creditor satisfies its burden, the burden shifts to the debtor to demonstrate that a bona fide dispute exists as to liability or amount Id. at ¶303.11[3]. "The term 'bona fide dispute as to liability or amount' also appears in section 303(h), and although many courts treat

-32-

the terms interchangeably, they refer to different situations. In the context of section 303(b), bona fide disputes disqualify specific entities from filing an involuntary petition. Section 303(h) provides that an order for relief may be entered upon an involuntary petition if the debtor is generally not paying its debts as they become due. The standard of section 303(h), however, contains an important qualification: The determination of 'generally not paying' excludes debts that are subject to a bona fide dispute as to liability or amount. It is possible that the petitioning creditor (whose claim is subject to a bona fide dispute under section 303(b)) may be a creditor whose claim is excluded from the calculation of the 'generally not paying' standard under section 303(h), for example because of the existence of a counterclaim. Counterclaims may not make the petitioner's claim disputed for purposes of disqualifying the creditor as a petitioner, but it may render the claim disputed for section 303(h) purposes because the debtor argues that it does not owe the creditor anything." Id. at ¶303.11. To determine whether a claim is subject to a bona fide dispute as to liability or amount, most courts use the objective standard. Under the objective approach, if there are substantial factual or legal questions raised by the debtor, the debtor can preclude the creditor from being an eligible petitioning creditor. However, application of the objective standard by the courts has been considerably difficult. Id. at §303.11[11]. "In short, a bona fide dispute exists if there is an objective basis for either a factual or legal dispute as to the validity of the debt or the amount owed. In determining the existence of a bona fide dispute, it is not the role of the court to resolve disputed issues of fact or law, but only to determine if such issue exists. However, this does not mean the court is prohibited from addressing the legal merits and may be required to conduct a limited analysis of factual or legal issues." See Hon. Joan N. Feeney, Hon. Michael G. Williamson & Michael J. Stepan, Esq., Bankruptcy Law Manual, §14.10 (5th ed.2018).

The burden is on the Petitioning Creditors to establish a *prima facie* case that there is no bona fide dispute as to both liability or amount. If this burden is satisfied, then the burden shifts to the alleged Debtors to demonstrate that a *bona fide dispute* exists as to liability or amount. The Lenders' position is that even if the court found that the Lenders' claims under the syndicated credit facility are subject to a bona fide dispute, such disputed facts are immaterial and irrelevant, given that the Petitioning Creditors have presented a prima facie case supported by at least three (3) petitioning creditors with claims that are not contingent or the subject of a bona fide dispute as to liability or amount. At this juncture, and as expressed below, it is not necessary for the court to delve into whether there is a *bona fide* dispute as to liability or amount between the Lenders and each of the alleged Debtors because there are at least three (3) petitioning creditors with claims which have a final, firm and unappealable state court judgment.

*Joint Claims*

The issue of joint claims may be a determining factor because it may affect the number of petitioning creditors. "Joint holders of one obligation, such as those debts owed to joint payees under a promissory note, are counted as one creditor and are not counted as separate creditors for the purposes of the number of petitioning creditors if payment on the obligation could only be enforced jointly. However, if each creditor holds a claim and can enforce the obligation, each is counted for the purposes of counting the number of petitioning creditors. The affiliation of the petitioning creditors does not preclude them from being counted as separate creditors if each one is a separate entity with a distinct claim and they were not formed for the purpose of subverting the three petitioner requirement." See Hon. Joan N. Feeney, Hon. Michael G. Williamson & Michael J. Stepan, Esq., Bankruptcy Law Manual, §14.9 (5th ed.2018).

A judgment held by two (2) creditors can constitute one single claim or two distinct claims depending on state law and the parties' intention and behavior are also considered. See Richard

Levin & Henry J. Sommer, 2 <u>Collier on Bankruptcy</u> ¶303.14[7] (16th ed. 2018). "If there were distinct and independent obligations giving rise to the judgment, each holder may be separate for qualifying as a petitioning creditor under section 303(b)." Id. at ¶303.14[7].

The Debtors pose two main arguments regarding the numerosity requirement of the Petitioning Creditors. The first argument is that the Syndicate Lenders' claims are subject to a *bona fide* dispute and subject to state court adjudication of the alleged debtors' counterclaims. Moreover, the simultaneous filing of the various state court actions reveals that all of these entities behave as one. However, this particular argument is moot given that the Lenders and Petitioning Creditors contend and have shown that they have the necessary three petitioning (3) creditors with claims that are not contingent or the subject of a bona fide dispute as to liability or amount for each bankruptcy petition.

The second argument is that the alleged Debtors are cognizant that the Petitioning Creditors' claims were adjudicated by a state court. However, the alleged Debtors argue that these petitioners should not be considered independent petitioners because they consolidated their interests prior to filing these involuntary petitions in exchange for payment in preference of those creditors with the same unsecured classification. The consolidation of the Lenders and the Petitioning Creditors' interests was executed through various Carve Out and Settlement Agreements by which the Lenders and each creditor agreed that the former "… [u]pon the occurrence of a Carve-Out Recovery Event, from the gross cash proceeds recovered therefrom (and, for the avoidance of doubt, actually received by the Lenders in cash, free and clear of any claims, counterclaims, liens, or encumbrances, pursuant to order of the Bankruptcy Court) (the 'Carve-Out Recovery Event Cash Proceeds')" either a certain amount or a certain percentage of the Allowed Creditor Unsecured Claim, whichever is lower, shall be delivered by the Lenders to the creditor on account of the Allowed Creditor Unsecured Claim (Lead Case No. 17-04156,

Docket No. 230, Lead Case no. 17-04157, Docket No. 186).  The Lenders executed Carve Out and Settlement Agreements with the following Petitioning Creditors: (i) Champion Petroleum, Inc. (Betterecycling); (ii) St. James Security Services, LLC. (Betteroads); (iii) Facsimil Paper Connection Corp. (Betteroads); (iv) Control Force, Corp. (Betterecycling); (v) Sargeant Marine Inc. and Sargent Trading, LLC (Betteroads; and (vi) St. James Security Services, LLC (Betterecycling). Therefore, the Debtors' contend that these petitioning creditors in exchange for their assistance in achieving the liquidation of the corporations' assets obligated themselves to do the following: (i) litigate in unison; (ii) not to deviate from their common interest and strategy; (iii) they have settled to participate from the same distribution upon the sale and liquidation of the alleged debtor's assets and (iv) all in preference of those creditors with the same unsecured classification.

The alleged Debtors argue that the petitioning creditors have become so entangled with the Syndicate Lenders that they should not be considered different and/or independent entities for purposes of the numerosity requirement of 11 U.S.C. §303(b). The alleged Debtors base their argument in the case of In re Iowa Coal Min. Co., Inc., 242 B.R. 661 (Bankr. S.D. Iowa 1999). The court finds that the alleged Debtors' reliance in In re Iowa Coal Min. Co., Inc. is misplaced because in this particular case the bonding companies presented themselves to the court as one creditor with one claim based on the reclamation agreement. Moreover, the court concluded that for purposes of 11 U.S.C. §303(b) the bonding companies constituted one creditor with one claim because the relationships of the bonding companies and the coal companies were so intertwined and the petitioning creditors had been dealing with the debtors as one entity for an extended period of time. The court stated that the following factors taken together persuaded that the court that the bonding companies was basically one creditor with one claim: (i) all of the petitions for each of the coal mining companies filed by the bonding companies were virtually identical. The creditors'

-36-

claims were evinced by the same documentary evidence. Nowhere in the petitions or exhibits do the bonding companies allocate the amount of debt owed to each one of them by the coal companies; (ii) in their petitions the bonding companies refer to the reclamation agreement and modifications to the same as the basis of their claim; (iii) the bonding companies alleged that certain indemnity agreements and subrogation rights serve as an added basis for their claims but they did not itemize the payments, or identify for which bond or company's benefit the payments were made; (iv) the coal companies executed a mortgage and security interest based upon the reclamation agreement jointly to the three bonding companies. The court noted that based upon this particular fact; "[i]t would appear that through the reclamation agreement and the subsequent mortgage and security agreement, the bonding companies have subordinated their individual rights to security for that group;" and (v) as evidenced from the reclamation agreement, mortgage, correspondence and testimony, the bonding companies made a concerted effort to come together to protect the bonds. In re Iowa Coal Min. Co.,Inc., 242 B.R. at 669-670. The court in this case determined that the bond companies' claims were based on a joint obligation which constituted a single claim and a single creditor entity for purposes of section 303(b).

In the instant case, each of the petitioning creditors' claims is based on a different and independent obligation which stems from a state court judgment. Therefore, the court finds that all of the petitioning creditors' claims do not constitute a single claim and thus a single creditor entity for purposes of section 303(b). The court clarifies that a different issue is whether these Carve-Out and Settlement Agreements between the Lenders and the Petitioning Creditors constitute bad faith and therefore "cause" to dismiss the involuntary petitions.

The issue of joint claims may be a determining factor under section 303(b) because it may have a direct effect on the number of petitioning creditors. However, the court concludes that it need not adjudicate the issue of whether two creditors; namely Sargeant Marine and Sargeant

Trading's judgment constitutes a single claim or two independent (separate) claims. The court finds that that the Petitioning Creditors for involuntary petitions (Betteroads and Betterecycling) have met the threshold test of three (3) holders of claims against each Debtor whose claims are not contingent as to liability or the subject of a bona fide dispute, whose claims aggregate at least $15,775 of unsecured claims. The petitioning creditors that meet this standing requirement in the Betteroads involuntary petition are the following: (i) St. James Security Services, Inc.'s unsecured claim is based on a final and unappealable Judgment rendered by the Puerto Rico Court of First Instance, San Juan Part on December 8, 2016 in St. James Security Services, Inc. v. Betteroads Asphalt LLC & Betterecycling Corporation- civil case no.KCD 2016-0453 (604). The claim is in the amount of $184,242.84; (ii) Facsimil Paper Connection Corp.'s unsecured claim is based upon a final and unappealable Judgment rendered by the Puerto Rico Court of First Instance, San Juan Part on January 11, 2017, Facsimil Paper Connection Corp. vs. Betteroads Asphalt Corp./Betteroads Asphalt LLC, civil case no. KCM 2016-3675 (905). The claim is in the amount of $9,874.80; and (iii) Sargent Marine and Sargeant Trading's claims are based on a final and unappealable Judgment confirming an arbitration award rendered by the U.S. District Court for the Southern District of New York on September 3, 2015 in Sargeant Trading Ltd. & Sargeant Marine, Inc. vs. Betteroads Asphalt Corp., --1:15 cv 04879-Civil 4879 (JPO) in which Sargeant Marine's unsecured claim is in the amount of $165,074.84. Sargeant Trading's unsecured claim is based on the same Judgment in the amount of $104,335.38.[3] (Lead Case No. 17-04156, Docket No. 121, Exhibits B, C, D, & E).

---

[3] The court clarifies that the Judgment entered on September 3, 2015 regarding the arbitral award against Betteroads and in favor of Sargeant was for the total amount of $392,642.23 plus attorneys' fees and costs in the amount of $14,496.23 (Lead Case 17-04156, Docket No. 105, Exhibit II). On December 1, 2016, Sargeant collected $142,026.72 on the Judgment and applied the same pro rata to decrease the indebtedness amount owed by Betteroads to Sargeant Marine and Sargeant Trading.

The petitioning creditors that meet this standing requirement in the Betterecycling involuntary petition are the following: (i) St. James Security Services, Inc.'s unsecured claim is based on a final and unappealable Judgment rendered by the Puerto Rico Court of First Instance, San Juan Part on December 8, 2016 in St. James Security Services, Inc. v. Betteroads Asphalt LLC & Betterecycling Corporation- civil case no.KCD 2016-0453 (604). The claim is in the amount of $60,020.48; (ii) Champion Petroleum Inc.'s unsecured claim is based upon a final and unappealble Judgment rendered by the Puerto Rico Court of First Instance, San Juan Part on March 20, 2017, Champion Petroleum, Inc. vs. Betterecycling Corp., civil case no. KCM 2017-0361 (902). The claim is in the amount of $5,204.88; and (iii) Control Force, Corp.'s unsecured claim is based upon a final and unappealable Judgment rendered by the Puerto Rico Court of First Instance, San Juan Part on March 7, 2017, Control Force, Corp. vs. Betterecycling Corp., civil case no. KCD 2016-2093 (503). The claim is in the amount of $56,872.14 (Lead Case No. 17-04157, Docket No. 88, Exhibits B, I & J).

Therefore, the court finds that the Petitioning Creditors for both Betteroads and Betterrecycling (involuntary Debtors) have satisfied the requirements of 11 U.S.C. §303(b). However, an order for relief can only be entered if "the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." 1 U.S.C. §303(h)(1). Thus, the court's next step is to determine whether the Petitioning Creditors have satisfied their burden under 11 U.S.C. §303(h)(1).

*Requirements under 11 U.S.C. §303(h)(1)*

The Petitioning Creditors must also establish that the alleged involuntary Debtors were not generally paying their debts as they became due. Section 303(h) provides:

> "[i]f the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed.

Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed only if—

(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." 11 U.S.C. §303(h)(1).

The "generally not paying" test is determined as of the date of the involuntary petition. The petitioning creditors have the burden of demonstrating that the alleged involuntary debtor is not generally paying the debts as they beccome due, excluding debts that are subject to bona fide disputes as to liability or amount. 11 U.S.C. 303(h)(1); In re Brooklyn Res. Recovery, Inc., 216 B.R. 470, 482 (Bankr. E.D.N.Y. 1997). To satisfy the burden it, "… requires a more general showing of the debtor's financial condition and debt structure than merely establishing the existence of a few unpaid debts." Liberty Tool & Mfg., Inc. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.), 277 F. 3d 1057, 1072 (9th Cir. 2002) (quoting Gen. Trading Inc. v. Yale Materials Handling Corp., 119 F. 3d 1485, 1504 n. 41 (11th Cir. 1997)). It is important for the court to consider the evidence bearing in mind that the filing of an involuntary petition is an extreme remedy with very serious consequences to the involuntary debtor. In re Bates, 545 B.R. 183, 186 (Bankr. W.D. Texas 2016), quoting In re Reid, 773 F. 2d 945, 946 (7th Cir. 1985).

Once they satisfy their burden, the burden shifts to the involuntary debtor to evince that the debts are subject to a bona fide dispute as to liability or amount. See Richard Levin & Henry J. Sommer, 2 Collier on Bankruptcy ¶303.31[5] (16th ed. 2018). The "generally not paying" standard is not defined in the Bankruptcy Code and; therefore, application of the same has led to a wide range of definitions and interpretations amongst courts of this particular standard. Id. at ¶303.31. Moreover, it is important to note that the "generally not paying standard" is not a balance-sheet insolvency test or an "equity-insolvency" standard that considers whether the debtor can pay its debts, not whether it is paying its debts. Id. at ¶303.31. However, there is a

-40-

general consensus amongst the courts that have been faced with this dilemma that the determination of the "generally not paying" standard is a multifactor test that cannot be employed in a rigid mechanical manner. "It is a factual, as distinguished from legal, determination. There is no single mathematical formula that can be used to determine whether the standard has or has not been met." Id. at ¶330.31.

The "generally not paying" standard begins with the analysis of the concept of "generally" which is a comparative one. "The question is how many debts are being paid in proportion to the total number of debts. Not paying one debt out of a sizable number of debts. Not paying one debt out of a sizable number of debts does not satisfy the 'generally' in the 'generally not paying' standard. Failing to pay one significant creditor can satisfy the standard." Id. at ¶330.31[1].  There is no fixed standard for determining whether a debtor is generally not paying its debts. Moreover, the First Circuit has not established a specific standard. Courts have adopted several different approaches to the "generally not paying standard." However, "[m]ost courts have adopted a flexible 'totality of the circumstances' test for determining whether a debtor is generally not paying debts as they become due."  See Hon. Joan N. Feeney, Hon. Michael G. Williamson & Michael J. Stepan, Esq., Bankruptcy Law Manual, §14.15 (5th ed.2018).  There are several common factors that courts have consistently applied to determine whether the "generally not paying standard" is satisfied such as: (i) the number and amount of unpaid debts in default compared to current debts; (ii) the amount of delinquency of debt; (iii) the length of time of delinquencies; (iv) the materiality of nonpayment; (v) the nature of the debtor's conduct of its financial affairs; and (vi) the number and dollar amount of debts in default. Id. at §14.15; See also; Crown Heights Jewish Cmty. Council Inc. v. Fischer (In re Fischer), 202 B.R. 341, 350 (E.D.N.Y. 1996); Perez v. Feinberg (In re Feinberg), 238 B.R. 781, 783 (B.A.P. 8th Cir. 1999) (vacated Dec. 16, 1999); Murrin v. Hanson (In re Murrin), 477 B.R. 99, 106-107 (Bankr. D. Minn.

2012); In re Mikkelson, 499 B.R. 683, 689 (Bankr. D.N.D. 2013). "Although the test is one of the totality of the circumstances and there is no strict requirement for a court to address each and every factor, most courts addressing this question rely heavily on the number and amount of the unpaid claims and compare those values with the debts the debtor is paying. In re Murrin, 477 B.R. at 107.

Additional factors that may be considered in determining whether the "generally not paying standard is satisfied are the following: (i) the debtor's ability to satisfy only small periodic payments, not long-term obligations; (ii) the debtor's making regular payments only on small, recurring obligations, not on larger debts; (iii) the rapid decline in the value of the debtor's assets resulting from asset sales rather than profit generating activity; (iv) the amount of the debtor's debts compared to the debtor's yearly income; (v) the debtor's voluntary shutdown of operations; (vi) insiders' deferred payments on account of loans payable to them; (vii) payments made by third parties or a waiver of claims by a third party; (viii) the debtor's liquidation of its assets; (ix) the fact that debtor's defaults are only on extraordinary debts; and (x) the fact that the due and unpaid debts are made up entirely of the claims of the petitioning creditors while other nonpetitioning creditors are all paid. Richard Levin & Henry J. Sommer, 2 Collier on Bankruptcy ¶303.31[2] (16th ed. 2018).

In the instant case, the Petitioning Creditors contend that Betteroads is not generally paying the debts as such debts become due excluding debts that are subject to bona fide disputes as to liability or amount based upon the following: (i) Betteroads' Aging Report of accounts payables as of June 30, 2017 discloses that there were a total of $11,139,712.94 of which $826,333.96 were current; $168,594.99 were 31-60 days old; $6,732.30 were 61-90 days old; and $10,073,646.65 of its accounts payables were over 90 days old. Therefore, 90.4% of Betteroads' accounts payables have been outstanding for more than sixty-seven (67) days given that the date

-42-

of the bankruptcy petition was June 7, 2017 and the report is as of June 30, 2017. Moreover, the percentage of accounts payables as of June 7, 2017 would probably be higher because the current accounts payables amount to $826,333.96 and these were incurred from June 1- June 30, 2017. It is important to consider that the Accounts Payable Aging Report as of June 30, 2017 is divided into four main categories. The first category are the Trade Vendors accounts payables that as of June 30, 2017 the report reflects that there were a total of $6,163,679.44 of which $755,729.47 were current; $8,534.29 were 31-60 days old; $6,732.30 were 61-90 days old; and $5,389,117.64 were over 90 days old, meaning that approximately 87.43% of the trade vendors accounts payables were in the range of being over 90 days old. It is important to note that there was only $6,732.30 of accounts payables in the category of 61-90 days old. The following trade vendors are included in the current aging accounts payable category: (i) $500,647.71 to the law firm Nolla Palou & Casellas LLC; (ii) $3,215.78 to Corretjer LLC; and (iii) $252,420.98 to Puerto Rico Asphalt LLC. The next category of accounts payables are the Utilities, Withholdings, Bank Cards and Taxes that as of June 30, 2017, the aging report discloses that there were a total of $1,970,304.52 of which $70,604.49 were current; $160,060.70 were 31-60 days old; $0 were 61-90 days old; and $1,739,639.33 were over 90 days old, meaning that approximately 88.29% of the utilities, withholdings, bank cards and taxes accounts payables were in the range of being over 90 days old. The third category of accounts payables are the Petty Cash & Other Refunds accounts payables that as of June 30, 2017 the report details that its entire balance of $40,922.09 was over 90 days old for this particular category. Lastly, the Subcontract Payable category as of June 30, 2017, the aging report discloses that there were a total of $2,964,806.89 of which $2,903,967.59 were over 90 days old and $60,839.30 are in the hold/retn column, meaning that 97.95% of the subcontract accounts payables were in the range of being over 90 days old (Lead Case 17-04156, Docket No. 121, Exhibit F).

The Lenders also argue that in the involuntary petition for Betteroads since the petition date, proof of claims have been filed that amount to over $2,736,010.45 for unpaid utilities, taxes and suppliers, among others. The court notes that pursuant to the claims register nineteen[4] claims have been filed and the total amount claimed for all the claims is $18,828,296.21 of which $13,781,226.85 is listed as secured; $503,419.43 is disclosed as being priority and the remaining $4,543,649.93 is disclosed as unassigned (unsecured) claims. The Lenders have not analyzed whether the proof of claims that were filed by the unsecured claimants match the accounts payables that are listed in the Aging Repot as of June 30, 2017 or whether the same are in addition to those accounts payables listed in the Aging Report or whether there are discrepancies. For example, under the Trade Vendors category in the Aging Report, Betteroads lists Total Petroleum as a vendor with a total accounts payable of $27,470.55 (over 90 days). However, Total Petroleum Puerto Rico, Corp. filed an amended unsecured proof of claim #8-2 in the amount of $339,476.80 for goods sold. Another example, under the Trade Vendors category in the Aging Report, Betteroads disclosed that it has an account payable balance of $0 with Puma Energy Caribe LLC. However, Puma Energy Caribe, LLC filed an unsecured proof of claim #13-1 in the amount of $2,566,884.21 for unpaid product. Puma Energy Caribe, LLC filed the same proof of claim (proof of claim #10-1) in the case of Betterecycling.

The Lenders further argue that as of the petition date, a considerable number of lawsuits have been commenced against Betteroads before the Puerto Rico Court of First Instance as well as before the United States District Court for the District of Puerto Rico collection actions against Betteroads (Lead Case 17-04156, Docket No. 121, Exhibit G). The Lenders did not attach a list of the cases that have been filed against Betteroads before the United States District Court for the

---

[4] The court notes that claim #1-1 filed by Popular Auto was withdrawn on 06/26/2017. Thus, there are eighteen (18) claims remaining in total (Lead Case 17-04156, Docket No, 43).

District of Puerto Rico. Moreover, the court notes that from the list submitted of the state court cases that have been filed there appears (3) different types of entities; namely Betteroads Asphalt Corporation; Betteroads Asphalt, Inc.; and Betteroads Asphalt LLC. The court also notes that in the Involuntary Petition filed against Betteroads Asphalt, LLC, on line item #3, the petitioning creditors stated that the involuntary debtor has used for the last eight (8) years the following names: Betteroads Asphalt Corporation and Betteroads Asphalt II, LLC. The court notes that the majority of lawsuits that have been filed against Betteroads from the years 2015 and 2017 are collection of monies actions. Creditors' actions in the collection of debts through lawsuits and unsatisfied judgements are indicators that the debtor is not paying its debts as they become due.

Moreover, in the instant case, the Internal Revenue Center filed proof of claim #4-1 in the amount of $668,599.40 and disclosed that the claim was secured in the amount of $439,324.59 and the unsecured portion of its claim was in the amount of $229,274.81. The municipal revenue collection center or CRIM (Centro de Recaudaciones de Ingresos Municipales) filed proof of claim 14-1 in the amount of $24,849.32 and listed the same as unsecured. CRIM also filed proof of claim #15-1 in the amount of $446,587.28 of which $409,637.81 is secured by a statutory lien and the remaining $36,949.47 is unsecured. The Puerto Rico Department of Treasury filed proof of claim #16-1 in the amount of $377,118.96 of which it listed the amount of $277,417.77 as a priority pursuant to 11 U.S.C. §507(a)(8).

Betteroads denies all of the Petitioning Creditors' allegations regarding the issue of whether the debtor is paying its debts as they become due. The alleged involuntary Debtor contends that: (i) "…the lender's intervened, controlled, authorized or deauthorized payments to creditors of the alleged debtor. Further, lender unwarrantedly extrajudicial foreclosure of over $45 million in accounts receivables and all cash equivalents of the alleged debtor provoking a default on certain debts. It is [the] Lender['s] unwarranted and illegal actions which are subject

to the State Court's adjudication which restitution may provide for the payments of the creditors' claims, which they themselves hindered;" and (ii) "Lenders took possession of funds destined for suppliers, taxing authorities, ongoing projects and employees' salaries, etc." (Lead Case 17-04156, Docket No. 168). The Debtor's defense is in essence that they have defaulted on their debts because the Lenders' seized $45 million of its accounts receivables and also foreclosed on its bank account that had a balance of $2 million. The Debtor did not offer evidence that it was paying its debts as they became due such as its track record in paying debts, the records of its financial accounts, its ordinary course of business as to payment of its debts.

Petitioning Creditors also contend that Betterecycling is not generally paying the debts as such debts become due excluding debts that are subject to bona fide disputes as to liability or amount based upon the following: (i) Betterecycling' Aging Report of accounts payables as of June 30, 2017 discloses that there were a total of $17,186,901.39 of which $118,942.73 were current; $171,691.36 were 31-60 days old; $4,178.27 were 61-90 days old; and $16,957,259.71 of its accounts payables were over 90 days old. Therefore, 98.66% of Betterecycling' accounts payables have been outstanding for more than sixty-seven (67) days given that the date of the bankruptcy petition was June 7, 2017 and the report is as of June 30, 2017. The percentage of accounts payables as of June 7, 2017 would probably be higher because the current accounts payables amount to $118,942.73 and these were incurred from June 1- June 30, 2017. It is important to consider that the Accounts Payable Aging Report as of June 30, 2017 is divided into three main categories.

The first category are the Trade Vendors accounts payables that as of June 30, 2017 the report reflects that there were a total of $14,236,152.28 of which $101,38.08 were current; ($775.29) were 31-60 days old; ($425.52) were 61-90 days old; $14,123,447.48 were over 90 days old, and $12,587.53 were classified as hold/retn, meaning that approximately 99.21% of the

trade vendors accounts payables were in the range of being over 90 days old. It is important to note that there was a negative ($425.52) of accounts payables in the category of 61-90 days old. The following trade vendors are included in the current aging accounts payable category: (i) $1,994,503.81 to Puerto Rico Asphalt LLC; and (ii) $94,244.97 to the law firm of Nolla Palou & Casellas LLC. The next category of accounts payables are the Utilities, Withholdings, Bank Cards and Taxes that as of June 30, 2017, the aging report discloses that there were a total of $1,726,532.48 of which $17,624.65 were current; $72,466.65 were 31-60 days old; $4,603.79 were 61-90 days old; and $1,631,837.39 were over 90 days old, meaning that approximately 94.52% of the utilities, withholdings, bank cards and taxes accounts payables were in the range of being over 90 days old. The third category of accounts payables are the Subcontract Payable category as of June 30, 2017, the aging report discloses that there were a total of $1,224,216.63 of which $1,201,974.84 were over 90 days old and $22,241.79 are in the hold/retn column, meaning that 98.18% of the subcontract accounts payables were in the range of being over 90 days old (Lead Case 17-04157, Docket No. 121, Exhibit K).

The Lenders allege that in the involuntary petition for Betterecycling since the petition date, proof of claims have been filed that amount to $1,528,370.40 for unpaid utilities, taxes and suppliers, among others.

The court notes that pursuant to the claims register fifteen (15) claims have been filed and the total amount claimed for all the claims is $17,321,397.75 of which $13,169,308.44 is listed as secured; $355,121.76 is disclosed as being priority and the remaining $3,796,967.55 is disclosed as unassigned (unsecured) claims. The Lenders have not analyzed whether the proof of claims that were filed by the unsecured claimants match the accounts payables that are listed in the Aging Report as of June 30, 2017 or whether the same are in addition to those accounts

payables listed in the Aging Report or whether there are discrepancies amongst the accounts payables in the Aging Report and the proof of claims that have been filed.

For example, under the Trade Vendors category in the Aging Report, Betterecycling lists Multiventas y Servicios Inc. as a vendor with a total accounts payable of $18,494.19 (over 90 days). However, Multiventas y Servicios PR, Inc. filed an amended unsecured proof of claim #15-1 in the amount of $21,088.69 for goods sold. Another example, under the Trade Vendors category in the Aging Report is the vendor S & S Import, Inc. which Betterecycling lists as a vendor with a total accounts payable of $8,589.85 (over 90 days old). However, S & S Import Inc. filed an unsecured claim #9-1 in the amount of $11,454.36 for goods sold.

The Lenders allege that as of the petition date, a considerable number of lawsuits have been commenced against Betterecycling before the Puerto Rico Court of First Instance as well as before the United States District Court for the District of Puerto Rico collection actions against Betterecycling (Lead Case 17-04157, Docket No. 88, Exhibit L). The Lenders did not attach a list of the cases that have been filed against Betterecycling before the United States District Court for the District of Puerto Rico. The court notes that the lawsuits that have been filed against Betterecycling from the years 2016 and 2017 are collection of monies actions. Creditors' actions in the collection of debts through lawsuits and unsatisfied judgements are indicators that the debtor is not paying its debts as they become due.

Moreover, in the instant case, the Internal Revenue Center filed proof of claim #1-1 in the amount of $4,168.77 and disclosed that the claim was secured in the amount of $4,076.87 and the unsecured portion of its claim was in the amount of $91.90. The municipal revenue collection center or CRIM filed proof of claim 11-1 in the amount of $24,849.32 and listed the same as unsecured. CRIM also filed proof of claim #12-1 in the amount of $215,054.09. CRIM disclosed that the claim was unsecured in its entirety. The Puerto Rico Department of Treasury filed proof

-48-

of claim #13-1 in the amount of $1,995,627.57 of which it listed the amount of $1,145,939.41 as a priority pursuant to 11 U.S.C. §507(a)(8).

Betterecycling denies all of the Petitioning Creditors' allegations regarding the issue of whether the debtor is paying its debts as they become due. The alleged involuntary Debtor contends that: (i) "…the lender's intervened, controlled, authorized or deauthorized payments to creditors of the alleged debtor. Further, lender unwarrantedly extrajudicial foreclosure of over $45 million in accounts receivables and all cash equivalents of the alleged debtor provoking a default on certain debts. It is [the] Lender['s] unwarranted and illegal actions which are subject to the State Court's adjudication which restitution may provide for the payments of the creditors' claims, which they themselves hindered;" and (ii) "Lenders took possession of funds destined for suppliers, taxing authorities, ongoing projects and employees' salaries, etc." (Lead Case 17-04157, Docket No. 124).  The Debtor's defense is in essence that they have defaulted on their debts because the Lenders' seized $45 million of its accounts receivables and also foreclosed on its bank account that had a balance of $2 million. The Debtor did not offer evidence that it was paying its debts as they became due such as its track record in paying debts, the records of its financial accounts, its ordinary course of business as to payment of its debts.

The court finds that Betteroads' Aging Report as of June 30, 2017, the proof of claims that have been filed as of the petition date, and the collection of monies legal actions all evince that the alleged Debtor is not paying its debts as they become due regardless of whether the debts or accounts payable were for trade vendors, utilities, withholdings, bank cards, taxes and subcontractors. Moreover, overdue taxes, tax liens, collection actions, commencement of lawsuits, unsatisfied judgments are indicators that the debtor is not paying its debts as they become due.

The court finds that Betterecycling' Aging Report as of June 30, 2017, the proof of claims that have been filed as of the petition date, and the collection of monies legal actions all evince that the alleged Debtor is not paying a substantial percentage of its debts as they become due regardless of whether the debts or accounts payable were for trade vendors, utilities, withholdings, bank cards, taxes and subcontractors. Moreover, overdue taxes, tax liens, collection actions, commencement of lawsuits, unsatisfied judgments are indicators that the debtor is not paying its debts as they become due.

Therefore, the court concludes that Petitioning Creditors have established that Betteroads and Betterecycling have not been paying their debts as they come due, thus they have established the required elements under 11 U.S.C. §303(h).

Accordingly, the court finds and concludes that the petitioning creditors have satisfied the three prong requirement for filing an involuntary petition, that is, there are three creditors whose claims are not contingent as to liability, or the subject of a bona fide dispute, the claims exceed $15,775, and the alleged debtors are not paying their debts as they become due.

Notwithstanding the above, the court must address if "bad faith," is grounds for the dismissal of an involuntary petition and, if so, if the facts demonstrate that the involuntary petition was filed in bad faith. In other words, does bad faith defeat invoking bankruptcy jurisdiction?

Is Bad Faith an Independent "cause" for Dismissal under 11 U.S.C. §303(b)

*Debtors' arguments*

The alleged Debtors argue that Law v. Siegel does not prohibit this court to grant a dismissal under both statutory and equitable principles. The Debtors contend that the holding of Law v. Siegel should be read with a limited scope, mainly that a bankruptcy court in exercising those statutory and inherent powers, "may not contravene specific statutory provisions" in "exercising its inherent equitable power." [citing 2 Collier on Bankruptcy ¶105.0[2], p. 105-106].

The Debtors argue that 11 U.S.C. §303(b)(1) only provides the minimum hurdle for petitioning creditors to plead their allegations before the bankruptcy court, but that they are not entitled per se, mandatorily to an order for relief. The Debtors reference the decision of the Third Circuit in In re Forever Green Athletic Fields, Inc., 804 F. 3d 328 (2015) to support their position that the ruling and findings in said opinion that resulted in the dismissal of an involuntary petition on bad faith grounds were based not only on equity but on a sound interpretation of the bankruptcy code provisions. The Debtors' argument, based on In re Forever Green Athletic Fields, Inc., is that the better view is that by including an express reference to bad faith in §303, Congress intended for bad faith to serve as a basis for both dismissal and damages.

The Debtors contend that In re Forever Green Athletic Fields, Inc., is in harmony even with the most conservative reading of Law v. Siegel, which they reject, as its ruling is based on a sound interpretation of the code's provisions that support a court's statutory authority to dismiss a case for bad faith. In tune with the limited scope of Law v. Siegel, nothing in section 303, or elsewhere in the Bankruptcy Code, prohibits courts from using its equity power to dismiss an involuntary bankruptcy case due to the petitioning creditors' bad faith. Courts have a clear mandate to deter improper conduct as sections 303(e), (i), and (k) prohibit courts from using its equity powers to dismiss an involuntary bankruptcy case due to the petitioning creditors' bad faith.

Debtors allege that, a court may dismiss an involuntary case for bad faith using its equitable powers pursuant to section 105(a) if it is not expressly prohibited or in contradiction with other provisions of the Bankruptcy Code. The Debtors argue that the petitioning creditors' reasoning will lead to inconsistent results and threatens the integrity of the judicial system because the court cannot engage in bad faith inquiry under section 303 regarding the creditor's motivations

for filing involuntary bankruptcies because they are irrelevant and, thus have no place in the analysis under section 303 as to whether an order of relief should be entered.

The alleged Debtors contend that as to the good faith requirement there is no difference between filing a voluntary petition and an involuntary petition. It is the Debtors' contention that the good faith requirement provided by the code and case law are applicable to any party that invokes the jurisdiction of the bankruptcy courts, not just the debtors.  A good faith requirement protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e. avoidance of liens; discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with "clean hands." In re Little Creek Dev. Co., 779 F. 2d 1068, 1072, 1986 U.S. App. Lexis 21644, *8. The Debtors argue that the rulings of Law v. Siegel and Marrama in which it has been upheld that debtor's bad faith conduct constitutes a "cause" for dismissal further support the legal position that section 303 should be statutorily read as allowing for the dismissal of an involuntary petition upon the founding of bad faith from creditors. "Section 303(b) does not require that an involuntary petition be filed in good faith, any more than section 301 requires that a voluntary petition be filed in good faith. Nevertheless, in the former situation (as well as in the latter), the courts have developed a requirement of good faith." 2 Collier on Bankruptcy ¶303.16 (16th ed. 2017). The Debtors citing Collier on Bankruptcy, further argue that Judge Markell's dissenting opinion in Marciano v. Fahs (In re Marciano), 459 B.R. 27 (B.A.P. 9th Cir. 2011) is more aligned with bankruptcy theory and precedent than the majority opinion. Judge Markell's dissenting opinion is based on the bankruptcy courts' broad discretion to analyze the equity of the bankruptcy filing. "[B]ankruptcy courts have broad discretion to examine the equity of the bankruptcy filing and to compare the motivation underlying the subject bankruptcy filing with the purposes behind the enactment of chapter 11." He pointed to the "broad discretion"

-52-

that bankruptcy courts have to dismiss petitions under section 1112, which he believed was applicable to the case before the panel." 2 <u>Collier on Bankruptcy</u> ¶303.16 (16th ed. 2017).

*Petitioning Creditors' arguments*

Petitioning creditors argue that bad faith is not an independent cause of dismissal (or defense) for involuntary bankruptcy proceedings under 11 U.S.C. §303(b) and that the court should not apply principles of equity under 11 U.S.C. §105(a) to create exceptions that do not exist according to the Bankruptcy Code. The Supreme Court in <u>Law v. Siegel</u>, 134 S. Ct. 1188 (2014) restricted the use of equity in bankruptcy to expand the text of the Bankruptcy Code and this court adhered to this principle in the case of <u>In re Reyes Colón</u>, 558 B.R. 563 (Bankr. D.P.R. 2016) in which this court refused to create an exception to the requirements to commence an involuntary petition pursuant to 11 U.S.C. §303(b) based on equity principles. Contrary to the directive of <u>Law v. Siegel</u>, the Third Circuit in <u>In re Forever Green Athletic Fields, Inc.</u>, 804 F.3d 328 (3rd Cir. 2015) equated voluntary and involuntary petitions and their requirements and considered bad faith as an independent basis for dismissal relying on the Court's equitable powers pursuant to 11 U.S.C. §105(a). The Lenders argue that the court should not incorporate to the Bankruptcy Code additional provisions that were purposely excluded by Congress because equitable powers under section 105(a) do "not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." <u>United States v. Sutton</u>, 786 F. 2d 1305, 1308 (5th Cir. 1986).

Moreover, for involuntary relief to be granted pursuant to section 303(b) the following requirements must be satisfied: (i) the involuntary petition must be filed by at least three (3) petitioning creditors; (ii) with claims that are not contingent as to liability or that are not the subject of a bona fide dispute as to liability or amount; and (iii) whose unsecured, noncontingent, undisputed claims are at least in the aggregate amount of $15,775. <u>See</u> 11 U.S.C. §303(b). Section 303(b) does not provide for the inclusion of additional requirements to granting an involuntary petition given that it does not include a non-exhaustive list of additional requirements anteceded by the word "including." Contrariwise, section 303 contains a limited and exhaustive list of

requirements for granting or denying an order for relief in relation to an involuntary petition. The term "bad faith" is not included in 11 U.S.C. §303(b), (h) as a defense to be raised by the debtor upon the petitioning creditors' filing of an involuntary petition. Therefore, there is no statutory requirement that the petitioning creditors commence an involuntary petition in good faith.

Only section 303(i)(2) includes the term "bad faith" on the basis of awarding damages if the court dismisses an involuntary petition. Section 303(i)(2) provides in pertinent part:

> "(i) [i]f the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>   (1) against the petitioners and in favor of the debtor for—
>       (A) costs; or
>       (B) a reasonable attorney's fee; or
>   (2) against any petitioners that filed the petition in bad faith, for—
>       (A) any damages proximately cause by such filing; or
>       (B) punitive damages." 11 U.S.C. §303(i)(2).

Bad faith is only mentioned in section 303(i)(2) in which bad faith is a requirement for the recovery of actual or punitive damages after the involuntary petition is dismissed.  Thus, if the petitioning creditors meet the requirements pursuant to 11 U.S.C. §303 a finding of bad faith is inappropriate. See In re Kennedy, 504 B.R. 815-823-24 (Bankr. S.D. Miss. 2014).

The Petitioning Creditors also argue that the court should limit its analysis of section 303 to the clear and unequivocal language of the statute as "it is also where the inquiry should end, for where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989) citing Caminetti v. United States, 242 U.S. 470, 485 (1917) (other internal citations omitted). The language of section 303 is clear because the terms "bad faith," "good faith," and the term "cause" as a non-exhaustive basis for dismissal are not included in this section, but have been explicitly included in other sections of the Code such as 11 U.S.C. §§1112(b)(1); 921(c); 930(a); 707(a); 1208(c); and 1307(c).

Therefore, under section 303(b) it is irrelevant whether any involuntary bankruptcy petitions are filed in good or bad faith because such requirement is lacking in this particular statute. The Petitioning Creditors further argue that, "… since bad faith was explicitly included in section 303(i)(2) but explicitly excluded from the rest of section 303, this Court should find that if Congress had intended to include 'bad faith' as a defense or as an independent basis for dismissal of an involuntary petition, it would have included the term in that particular section of the Code or it would have created a non-exhaustive list of bases for dismissal for 'cause.' Applying equity under section 105 following the Law determination would equate erroneously and unfoundedly with assuming 'that Congress has omitted from its adopted text requirements that it nonetheless intends to apply,' particularly, 'when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest.'" Watt v. GMAC Mortg. Corp., 457 F. 3d 781, 783 (8th Cir. 2006). Moreover, this court in In re Reyes Colón followed the directive of Law v. Siegel and refused to apply equity to create an exception to the three (3) petitioning creditor requirement when a debtor has twelve or more creditors pursuant to 11 U.S.C. §303(b)(1) Thus, based upon case law regarding statutory interpretation of the Code as applied by Law and In re Reyes Colón, the explicit exclusion of a good faith requirement in the filing of an involuntary petition was not the result of inadvertence, given that, "[u]nder normal statutory construction, we would not assume that the failure to include some item in a statute is an oversight that the court may correct." United States v. Neal, 249 F. 3d 1251, 1255 (10th Cir. 2001).

*Analysis*

After carefully pondering this particular legal issue, this court concludes that bad faith is a cause for dismissal in involuntary bankruptcy petitions and that such holding is not contrary to Law v. Siegel or this court's decision in In re Reyes Colón. This court finds that good faith is a fundamental tenet of the Bankruptcy Code, and we should adhere to the same whether the filing

-55-

of a bankruptcy petition is voluntary or involuntary. A filing debtor in a voluntary petition and petitioning creditors in an involuntary petition should both be required to file the bankruptcy petitions, be it voluntary or involuntary in good faith, and if not, bad faith is a cause for dismissal in both scenarios. To hold otherwise, would allow for involuntary bankruptcies to be filed for improper purposes and be tantamount to an abuse of the bankruptcy process.

Our analysis starts with 11 U.S.C. §301 and §303. Section 301 states:

"(a) [a] voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter.
(b) The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter." 11 U.S.C. §301.

Section 303 provides in pertinent part:

"(a) [a]n involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person, except a farmer, family farmer, or a corporation that is not a moneyed, business, or commercial corporation, that may be a debtor under the chapter under which such case is commenced.

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $15,775 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $15,775 of such claims." 11 U.S.C. §303(a), (b)(1), (2).

There is no requirement under section 301 or 303(b) that a voluntary or an involuntary petition be filed in good faith. However, under both sections the courts have developed a requirement of good faith. See Richard Levin & Henry J. Sommer, 2 Collier on Bankruptcy

¶303.16 (16th ed. 2018) ("Nevertheless in the former situation (as well as in the latter), the courts have developed a requirement of good faith. The standard is high"). "There is a presumption in favor of good faith filing, and the burden is on the debtor to show by a preponderance of the evidence that the filing is in bad faith." Id. at ¶303.16.

Section 303(i)(2) is the only reference to bad faith. Said section provides in pertinent part:

"[i]f the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

(1) against the petitioners and in favor of the debtor for—
(A) costs; or
(B) a reasonable attorney's fee; or

(2) against any petitioner that filed the petition in bad faith, for—
(A) any damages proximately caused by such filing; or
(B) punitive damages." 11 U.S.C. §303(i)(2).

The majority of the litigation that is generated in involuntary bankruptcies in which section 303(i)(2) is triggered is when the involuntary petition is dismissed because it fails to satisfy the requirements of section 303(b), (h) and thus, the involuntary debtor argues that the same was filed in bad faith because it fell short of the statutory requirements and thus, requests damages due to the "bad faith" filing. "Most of the courts, determining whether to award fees and costs under 303(i)(1) and damages under 303(i)(2) to the debtor have adopted a 'totality of the circumstances' test, in which certain factors are to be considered. These include: (i) the merits of the involuntary petition; (2) the role of any improper conduct on the part of the alleged debtor; (3) the reasonableness of the actions taken by the petitioning creditors; and (4) the motivation and objectives behind the filing of the petition." Richard Levin & Henry J. Sommer, 2 Collier on Bankruptcy ¶303.33[1] (16th ed. 2018). "The determination of bad faith for purposes of section

-57-

303(i)(2) is the same as determining bad faith more generally under section 303." Id. at ¶303.33[5][a].

The issue before the court which has not been litigated as much as bad faith under section 303(i)(2) is simply whether bad faith is an independent cause for dismissal under section 303(b) even if petitioning creditors have satisfied the statutory requirements of 11 U.S.C. §303(b), (h). This court aligns itself with the holding of In re Forever Green Ath. Fields, Inc., 804 F. 3d at 334, in which the Third Circuit held that bad faith serves as a basis for both dismissal and damages and supported its position on the good faith filing requirements in bankruptcy which are intertwined with the equitable nature of bankruptcy. Equitable remedies are not granted to a party that fails to act in an equitable manner. See Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.07[3] (16th ed. 2018) ("As a general matter, bankruptcy relief is equitable in nature, and, as a general rule, equitable remedies are not available to any party who fails to act in an equitable fashion. As the Fifth Circuit noted, 'a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshaling and turnover of assets) available only to those debtors and creditors with 'clean hands.'") (quoting Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.), 779 F. 2d 1068, 1072 (5th Cir. 1986).

If the contrary were held, petitioning creditors that meet the statutory requirements of 11 U.S.C. §303(b), (h), but that filed the petition in bad faith would have no impediment in proceeding with the involuntary petition. This court agrees with bankruptcy Judge Coleman' statement in In re Forever Green Ath. Fields, Inc., 500 B.R. 413, 425 (Bankr, E.D. Pa. 2013), that: "[t]o invoke this Court's jurisdiction, a petitioner must possess a valid bankruptcy purpose. In re Integrated Telecom Express, Inc., 384 F. 3d at 119-20." The "good faith" principle is not a statutory requirement for the filing of either a voluntary or an involuntary bankruptcy petition.

However, the filing of a bankruptcy petition for an improper bankruptcy purpose constitutes cause for the dismissal of the petition; be it voluntary or involuntary. In the case of an involuntary petition, lack of good faith, is also a factor to consider in awarding damages.

The court notes that Judge Markell in his dissent in In re Marciano, 459 B.R. at 63[5], reasoned that if bankruptcy courts have broad equitable powers to dismiss bankruptcy petitions under section 1112(b), it should follow that bankruptcy courts' equitable powers should be extensive to dismiss involuntary bankruptcy petitions in which the petitioning creditors abused the bankruptcy process and that good faith filing should be an implicit prerequisite for filing a petition for both a debtor and a petitioning creditor. "In addition to granting relief for one of the reasons enumerated in section 1112(b), the court may also dismiss a chapter 11 case for lack of good faith. No provision of the Code expressly authorizes a court to dismiss a case on this ground. Nevertheless, even in the absence of express statutory authorization, the requirement of good faith has been held to be an implicit condition to the filing and maintenance of a bankruptcy case for over a century. As the Court of Appeals for the Fifth Circuit maintained: 'Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings.'" See Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.07 (16th ed. 2018).

In In re Reyes Colón, this court analyzed the purpose of equity in bankruptcy in the following manner:

> "Equity in bankruptcy has been generally related to the 'fresh start' principles. Grogan v. Garner, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). Section 105(a) of the Bankruptcy Code, which allows bankruptcy judges to issue orders

---

[5] "As stated in Van Owen Car Wash, '[t]he legislative history of §1112(b) indicates Congress' intent that the bankruptcy court retain broad equitable powers to dismiss petitions; '[t]he court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases.'' Id. (quoting H.R. Rep. No. 95-595, at 405-06 (1977) and S. Rep. No. 95-989, at 117-18 (1978)). Van Owen Car Wash further emphasized that good faith should be 'viewed as an implicit prerequisite to the filing or continuation of a proceeding under Chapter 11 of the Code.'' Id. at 674 (quoting In re Victory Constr. Co., Inc., 9 B.R. 549, 558 (Bankr. C.D. Cal. 1981))."

that are necessary or appropriate to carry out the provisions of the Code, has been used as the basis to claim equitable powers in bankruptcy. Marrama v. Citizens Bank of Massachussetts, 549 U.S. 365, 127 S. Ct. 1105, 166 L. Ed.2d 956 (2007). This was the rule in the First Circuit after Marrama. See Malley v. Agin, 693 F. 3d 28 (1st Cir. 2012). The rule has been admittedly limited to exercising equitable powers to facilitate other code provisions and not a roving commission to do equity. In re Ludlow Hospital Society, Inc., 124 F. 3d 22 (1st Cir. 1997). See also In re Nosek, 544 F. 3d 34 (1st Cir. 2008). However, the legal scenario changed in 2014. Change in bankruptcy is not a strange concept. As stated by the Supreme Court in Wright v. Union Central Life Ins. Co., 304 U.S. 502, 513, 58 S. Ct. 1025, 82 L. ed. 1490 (1938): '[t]he subject of bankruptcies is incapable of final definition. The concept changes.'" In re Reyes Colón, 558 B.R. at 566.

The court concludes that its application of the Supreme Court's decision in Law vs. Siegel to the case of In re Reyes Colón is distinguishable from the issue of whether bad faith is an independent cause of dismissal under section 303(b).  In the case of In re Reyes Colón one of the controversies was whether a bankruptcy court could apply the judicially created "special circumstances" exception to the numerosity requirement of 11 U.S.C. §303(b).  Section 303(b)(1) specifically requires that if an alleged debtor has twelve or more creditors, then the involuntary petition is commenced by three or more entities. This court concluded that The Supreme Court's decision in Law v. Siegel had limited its ability to exercise its equitable powers and held as follows: "[i]n this case there is a specific statutory requirement for the filing of an involuntary petition against a debtor who has more than twelve creditors. The involuntary petition must be filed by three or more creditors. A fraudulent scheme, after Law v. Siegel, is not a basis for a bankruptcy court to obviate the statutory requirement that there be three or more creditors joining the involuntary petition when there are twelve or more creditors." In re Reyes Colón, 558 B.R. at 568.  In Law v. Siegel, the Supreme Court held that equitable considerations do not allow a bankruptcy court to contravene express provisions of the Bankruptcy Code. "A bankruptcy court has the statutory authority to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of' the Bankruptcy Code. 11 U.S.C. §105(a). And it may

-60-

also possess 'inherent power… to sanction 'abusive litigation practices.' <u>Marrama v. Citizens Bank of Mass.</u>, 549 U.S. 365, 375-376, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007). But in exercising those statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions." <u>Law v. Siegel</u>, 571 U.S. 415, 420-424, 134 S. Ct. 1188, 1194, 188 L. Ed. 2d 146 (2014). The court finds that the controversy of whether bad faith is a cause for dismissal under section 303(b) is distinguishable from <u>Law v. Siegel</u> and from its analysis in <u>In re Reyes Colón</u> because the court's analysis based on the requirement of good faith as an implicit condition for filing a bankruptcy petition which is intertwined with equitable considerations is not contrary to the specific requirements of a particular statute as in the case of <u>Law v. Siegel</u> and <u>In re Reyes Colón</u>.

Therefore, this court concludes that there is a good faith filing requirement for both voluntary and involuntary petitions.[6]

*Abstention pursuant to 11 U.S.C. §305(a)(1)*

Section 305(a)(1) provides in pertinent part:

> "[t]he court, after notice and a hearing, may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if—
>
> > (1) the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. §305(a)(1).

---

[6] The Third Circuit reasoned as follows:

"[t]he bigger flaw in the Dawsons' argument is that it overlooks the equitable nature of bankruptcy. Time and again, we have emphasized that 'good faith' filing requirements have 'strong roots in equity.' <u>In re SGL Carbon</u>, 200 F. 3d at 161; <u>see also</u> <u>In re Tamecki</u>, 229 F. 3d at 207. 'At its most fundamental level, the good faith requirement ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purposes of bankruptcy.' <u>In re Integrated Telecom Express, Inc.</u>, 384 F. 3d 108, 119 (3d Cir. 2004). As courts of equity, bankruptcy courts are equipped with the doctrine of good faith so that they can patrol the border between good- and bad-faith filings. <u>See</u> <u>In re SGL Carbon</u>, 200 F. 3d at 161; <u>In re Little Creek Dev. Co.</u>, 779 F. 2d 1068, 1072 (5th Cir. 1986) (explaining that the 'good faith' requirement protects the 'integrity of the bankruptcy courts by rendering their powerful equitable weapons … available only to those debtors and creditors with 'clean hands''). We will not depart from this general 'good faith' filing requirement in the context of involuntary petitions for bankruptcy. The majority of courts agree." <u>In re Forever Green Ath. Fields, Inc</u>. 804 F. 3d at 334.

The movant bears the burden to prove that dismissal or suspension benefits both the debtor and its creditors. Dismissing a case pursuant to 11 U.S.C. §305(a)(1) is a discretionary remedy determined by the courts on a case by case basis. See In re Monitor Single Lift I, ltd., 381 B.R. 455, 464 (Bankr. S.D.N.Y. 2008); In re ELRS Loss Mitigation, LLC, 325 B.R. 604, 634 (Bankr. N.D. Okla. 2005). This particular remedy should not be used as a substitute for a motion to dismiss under other applicable sections of the Bankruptcy Code. See Richard Levin & Henry J. Sommer, 2 Collier on Bankruptcy ¶305.02 (16th ed. 2018). "Accordingly, parties who wish to seek dismissal of a case based primarily on the debtor's misconduct or bad faith should invoke, in most instances, the dismissal provisions contained in the relevant chapter under which the case was filed." Id. at ¶305.02[1].  Moreover, "section 305 is reserved for those rare occasions when both the creditors and generally and the debtor itself are better served by dismissal or suspension." Richard Levin & Henry J. Sommer, 2 Collier on Bankruptcy ¶305.01[1] (16th ed. 2018); See also; In re Monitor Single Lift I, ltd., 381 B.R. at 462. ("Granting an abstention motion pursuant to §305(a)(1) requires more than a simple balancing of harm to the debtor and to the creditors; rather, the interests of both the debtor and its creditors must be served by granting the requested relief."). "The Court is not required to hold a separate hearing on the issue of abstention if the Court has conducted a hearing which allowed for the garnering of facts necessary to support the decision to abstain."  In re ELRS Loss Mitigation, LLC, 325 B.R. at 634 (citing Hurley v. Kujawa (In re Kujawa), 224 B.R. 104, 107 08 (e.D. Mo. 1998)); see also; Efron v. Candelario (In re Efron), 529 B.R. 396, 408 (B.A.P. 1st Cir. 2015).

The factors some courts consider to dismiss an involuntary case under section 305(a)(1) include: (i) the motivation of the parties in seeking bankruptcy jurisdiction; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (iii) economy and efficiency of administration; and (iv) the prejudice to the parties. See Hon. Joan N. Feeney, Hon. Michael G. Williamson & Michael J. Stepan, Esq., Bankruptcy Law Manual, §14.21 (5th ed.2018); See also; In re Seff Enters. & Holdings, LLC, 2010 Bankr. Lexis 862, **4 (Bankr. D.N.H. 2010) citing In re Deacon Plastics Machine, Inc., 49 B.R. 982,

982 (Bankr. D. Mass. 1985); In re Nesenkeag, Inc., 131 B.R. 246, 247 (Bankr. D.N.H. 1991). Some courts for involuntary bankruptcies apply a three-part test for abstention under section 305(a)(1) which consists of the following factors: (i) the petition was filed by a few disgruntled creditors and most creditors oppose the bankruptcy proceeding; (ii) there is an out-of-court restructuring in progress; and (iii) the debtor's interests are furthered by dismissal. See Richard Levin & Henry J. Sommer, 2 Collier on Bankruptcy ¶305.02[2][a] (16th ed. 2018).

The alleged Debtors argue that the court should dismiss this involuntary proceeding based on the doctrine of abstention pursuant to section 305(a)(1) due to the following reasons: (i) "[b]ringing this case into the bankruptcy court would only add an additional layer of expense to the resolution of the principal contested issue which is the litigation with the financial institutions and it would be inefficient and excessively costly to process this debt through this [c]ourt. None of the costs that will be incurred here are necessary, since there is no legitimate bankruptcy purpose to be served by this filing. Therefore, economy and efficiency favor dismissal; (ii) the Puerto Rico Court of First Instance is available for both parties to protect their interests and proceedings are pending before state court. Federal proceedings are not necessary because the primary claims are based on state law and the claims can be adequately determined in state court; (iii) Federal bankruptcy proceedings are unnecessary and improper because there is no legitimate bankruptcy purpose; (iv) "[i]f there is no bankruptcy proceeding, the Company will be able to continue its ongoing litigation with the Petitioning financial institutions and move forward with its business plan, benefitting all other creditors and eventually the stockholders;" (v) "[t]his action was not filed in [the] best interests of creditors or stockholders, but rather in the interest of a narrow few who seek to facilitate the forced sale of the business assets so they or their allies can snap it up at a distressed price. The Company has had good relationships with the majority of its creditors, and is able to work with them is allowed without issue;" and (vi) "[c]urrently there is no non-federal insolvency proceeding, as the Company has maintained good working relationships with the majority of its creditors" (Lead case 17-04156, Docket No. 46, pgs. 18-20, Lead case 17-04157, Docket No. 27, pgs. 16-18).

The Debtors further argue that the court should dismiss this involuntary case based on the doctrine of abstention pursuant to section 305(a)(1) based upon the following: (i) "[f]irst of all, in terms of what is the nature of this potential bankruptcy estate. It could be fairly stated that as it is relevant to all other potential creditors of the alleged Debtor in the event the Syndicate Lender succeed[s] on dismantling the alleged debtor's defenses/counterclaims in the [s]tate [c]ourt complaint or through the appointment of a trustee, the result will be that we will then be dealing with fully over encumbered estate in which the Syndicate Lender will control and resolve in their exclusive factor all assets of the company; (ii) the alleged debtor's assertion is that in the event that if the case is dismissed, the Syndicated Lenders will not suffer as they would retain their lien unaffected on the state court proceedings, which they themselves commenced and which retains the proper jurisdiction even to provide them with any ultimate or provisional remedy to which they may be entitled; (iii) "…if they are allowed to continue with their ill-founded intent to seize Debtor's assets and remove the existing management through this unwarranted bankruptcy process, no benefit would be received by the debtor nor other parties in interest, aside from these secured lenders and the other petitioners which now participate with them in their winnings;" (iv) "… if the alleged debtor were allowed to pursue their counterclaims and prevail in [s]tate [c]ourt, they would be in a position even to satisfy other creditors in 100%;" and (v) "l]enders have to their avail a [c]ourt with jurisdiction to grant any remedy to which they are entitled. However, alleged debtors, parties in interest and other creditor are undoubtedly to be affected if an order for relief was granted at this point as the lenders which, together with its competitors, will seek to transfer and liquidate the entities assets in a transaction controlled by them" (Lead case 17-04156, Docket No. 169, pgs. 25-26, Lead case 17-04157, Docket No. 125, pgs. 25-26).

The Lenders argue that the Debtors' request for abstention should be denied based upon the following: (i) the Debtors fail to establish or even argue that the interests of their creditors would be better served by abstention rather than by allowing these involuntary proceedings to continue; (ii) the ongoing litigation in these involuntary cases, the number of petitioning creditors joining in the involuntary petitions, and the record of lawsuits that have been commenced against

the Debtors during the past two (2) years clearly evince that abstention and dismissal of these involuntary proceedings would not be in the best interest of creditors; (iii) "…the Debtors have been transferring their assets as described in the Motion to Appoint a Trustee, and creditor remedies to avoid these transfers are available only in bankruptcy;" (iv) the involuntary petitions do not involve a two party dispute that the pending state court litigation could resolve. The involuntary petitions were filed by at least seven (7) creditors with different claims; (v) the Debtors have numerous creditors, some of which have filed collection actions against the Debtors. Numerous creditors have filed multimillion dollar proofs of claims; and (vi) the state court litigation would not resolve or avoid the substantial transfers that the Debtors have undertaken prior to the bankruptcy filing or provide an orderly process for all creditors to assert their claims (Lead case 17-04156, Docket No. 74, pgs. 18-20, Docket No. 182, pgs. 14-15; Lead case 17-04157, Docket No. 52, pgs. 18-20, Docket No. 137, pgs. 14-15).

The Debtors argue that if the case is dismissed, the Syndicate Lenders will not suffer because they would retain their lien unaffected in the state court proceedings. They also argue that the only ones that would benefit from the involuntary bankruptcies would be the secured lenders and the other petitioning creditors and that no benefit would be derived by the Debtors or other parties in interest. The Debtors further allege that if they are allowed to pursue their counterclaims and prevail in the state court litigation, they would be in a position even to satisfy other creditors in 100%.

This court finds that the Debtors' arguments are based upon unsupported and contradictory allegations that fail to establish how dismissal will benefit both the Debtors and its creditors. The secured lenders' liens will not suffer and will remain secured whether the Debtors are in bankruptcy or not. The only ones that would benefit from the state court litigation are the plaintiffs (syndicate lenders) that have commenced state court proceedings and have secured claims. Moreover, the court notes that the state court litigation in which the Syndicate Lenders were the plaintiffs was barely commencing, meaning a complaint, an answer to the complaint, a counter- claim were filed and the court's resolution by which it denied a motion for preventive

garnishment filed by Banco Popular. To the court's knowledge no discovery had begun. The court notes that the other creditors that could benefit are the ones that already have Judgments and would need to race to the Property Registry in order for the Judgments to be secured by collateral. However, if the Debtors are in bankruptcy, piecemeal litigation would be halted and other unsecured creditors could potentially receive dividends from the bankruptcy estate. The Debtors' argument that if they are allowed to pursue their counterclaims and prevail in state court litigation, they would be in a position to satisfy other creditors in 100% of their claims is unfounded and speculative.

The court finds that the Debtors have failed to show how dismissal would serve its interest and those of its creditors. Therefore, this court concludes that the Debtors' request for dismissal pursuant to section 305(a)(1) is unfounded and thus, should not be used as an alternative remedy for a motion to dismiss. Moreover, this court has held that bad faith in the filing of an involuntary petition are a "cause" for dismissal of the same. Thus, this court finds that the Debtors have failed to satisfy their burden of proof on this particular issue.

<u>Conclusion</u>

In view of the foregoing, the court finds and concludes as follows:

(1) The Petitioning Creditors have satisfied the three-prong requirement for filing an involuntary petition.

(2) Bad faith is an independent cause for dismissal of an involuntary petition under section 303(b).

(3) The alleged Debtors have failed to show that dismissal pursuant to section 305(a)(1) abstention is in the best interest of both the creditors and the debtor.

An evidentiary hearing will be scheduled to consider whether or not the involuntary petitions were filed in bad faith, that is, for an improper purpose that constitutes an abuse of the bankruptcy process.

SO ORDERED.

In San Juan, Puerto Rico, this 30th day of November, 2018.

Enrique S. Lamoutte
United States Bankruptcy Judge