O9IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| IN RE: | CASE NO. 17-04156 (ESL) |
|---|---|
| BETTEROADS ASPHALT, LLC | CHAPTER 11 |
| IN RE: | CASE NO. 17-04157 (ESL) |
| BETTERECYCLING CORPORATION | CHAPTER 11 |
| Involuntary Debtors | |

OPINION AND ORDER

This case is before the court upon Betteroads Asphalt, LLC and Betterecycling Corporation (hereinafter referred to as "Involuntary Debtors" or "Betteroads" and "Betterecycling") *Motion for Stay Pending Appeal* (Case No. 17-04156, Docket no. 569; Case No. 17-04157, Docket No. 392) filed on November 4, 2019. The Involuntary Debtors request that the Chapter 11 proceedings be stayed until the resolution of the pending appeals based upon the following arguments: (i) the notice of appeal deprives the bankruptcy court of jurisdiction to entertain matters of a Chapter 11 case; (ii) in the alternative, there is a "substantial possibility" of the Involuntary Debtors' success on the merits because, absent such relief, irreparable harm will occur; and (iii) the Involuntary Debtors have proffered a reasonable bond and sufficient for the requested relief in the event the Court fails to dispense the Involuntary Debtors from such condition for granting the stay remedy. Firstbank Puerto Rico ("Firstbank"), Banco Santander de Puerto Rico ("Banco Santander"), the Economic Development Bank for Puerto Rico ("EDB") and Banco

-1-

Popular de Puerto Rico ("Banco Popular or the Administrative Agent," and collectively with First Bank, Banco Santander and EDB, the "Lenders"), Sargeant Marine, Inc. and Sargeant Trading LTD (collectively "Sargeant"), Facsimil Paper Connection, Inc. ("Facsimil"), Champion Petroleum, Inc. ("Champion"), Control Force, Corp., ("Control Force") and St. James Security, Inc. ("St. James") and together with the Lenders, the Petitioning Creditors filed a *Joint Opposition to Debtors' Motion for Stay Pending Appeal* on November 11, 2019 (Case No. 17-04156, Docket no. 586; Case No. 17-04157, Docket No. 406). The Petitioning Creditors argue the following: (i) the Involuntary Debtors are not requesting relief to preserve the issues on appeal. The Involuntary Debtors request that the bankruptcy court suspend all of the Chapter 11 proceedings and preclude the court from administering these cases and parties from enforcing any rights available under chapter 11; (ii) the divestiture doctrine applies to prevent a trial court from amending and modifying the issues on appeal while they are on appeal. It does not provide for a stay of proceedings; (ii) Fed. R. Civ. P. 62(b) expressly excludes appeals from injunctions or receiverships and courts have consistently interpreted order for relief as injunctions; (iii) under Fed. R. Civ. P. 62(b) stays are only available for money judgments and the appeals do not involve any money judgments; and (iv) the Involuntary Debtors fail to satisfy any of the factors required under Fed. R. Bankr. P. 8007. On November 15, 2019, the Involuntary Debtors filed their *Reply to Petitioning Creditors' Joint Opposition to Motion for Stay Pending Appeal* (Case No. 17-04156, Docket no. 600; Case No. 17-04157, Docket No. 420). For the reasons set forth the Involuntary Debtors' *Motions for Stay Pending Appeal* are hereby denied.

BACKGROUND

On June 9, 2017, the Petitioning Creditors filed involuntary bankruptcy petitions against Betteroads Asphalt, LLC and against Betterecycling Corporation. On June 30, 2017, the

Involuntary Debtors and the Lenders filed a *Joint Motion on Discovery Schedule* pursuant to which the parties informed the court on the agreed discovery schedule relating to contested matters regarding the involuntary petitions (Case No. 17-04156, Docket No. 58; Case No. 17-04157, Docket No. 36). On August 3, 2017, the Lenders filed a *Motion for Protective Order Limiting Scope of Discovery for the Contested Matters Relating to the Motion to Appoint a Trustee and the Involuntary Petitions* to exclude broad and disproportionate discovery on allegations of bad faith by the Lenders and other petitioning creditors who commenced the involuntary proceedings and on certain counter claims filed against the Debtors in pending local court litigation (Case 17-04156, Docket No. 73; Case No. 17-04157, Docket No. 51). On August 30, 2017, the parties filed an *Amended Joint Motion on Discovery Schedule* (Case 17-04156, Docket No. 86; Case 17-04157, Docket No. 66). On November 7, 2017, the Lenders and the Involuntary Debtors filed the *Second Amended Joint Motion on Discovery Schedule and Request for Status Conference Hearing* (Case No. 17-04156, Docket No. 114; Case 17-04157, Docket No. 83)

Thereafter, on November 30, 2018, the court in its *Opinion and Order* held the following: (i) the Petitioning Creditors have satisfied the three prong requirement for filing an involuntary petition; (ii) bad faith is an independent cause for dismissal of an involuntary petition under 11 U.S.C. §303(b); and (iii) the alleged Debtors have failed to show that dismissal pursuant to section 305(a)(1) abstention is in the best interest of both the creditors and the debtor. The court also determined that an evidentiary hearing would be scheduled to consider whether the involuntary petitions were filed in bad faith, that is, for an improper purpose that constitutes an abuse of the bankruptcy process (Case no. 17-04156, Docket No. 271; Case No. 17-04157, Docket No. 206).

On January 3, 2019, an *Order and Notice* was docketed scheduling the evidentiary hearing regarding the motions to dismiss of the Involuntary Debtors and the oppositions thereto for May

-3-

23, 2019. The court ordered the parties to file proposed findings and conclusions of law seven (7) days prior to the hearing. Moreover, the court advised that it would not hold an evidentiary hearing without timely filed proposed findings of fact and conclusions of law (Case No. 17-04156, Docket No. 273; Case No. 17-04157, Docket No. 208). On March 7, 2019, the Lenders and the Alleged Debtors filed a *Joint Motion on Discovery Schedule in Connection with May 23, 2019 Hearing* (Case No. 17-04156, Docket No. 291; Case No. 17-04157, Docket No. 227). On March 26, 2019, the Lenders and the Alleged Debtors filed a *Joint Motion on Amended Discovery Schedule and to Reschedule Evidentiary Hearing to June 27 and 28, 2019* (Case 17-04156, Docket No. 302; Case 17-04157, Docket No.233). On April 1, 2019, the court granted the joint motion requesting continuance of the evidentiary hearing and rescheduled the same for June 27, 2019 (Case 17-04156, Docket No. 312; Case 17-04157, Docket No. 243). On April 9, 2019, the Lenders and the Alleged Debtors filed a *Joint Motion on Second Amended Discovery Schedule* (Case 17-04156, Docket No. 325; Case 17-04157, Docket No. 248).

Subsequently, on May 13, 2019, the Alleged Debtors filed a *Motion to Extend Discovery Schedule and Convert Evidentiary Hearing into Status Hearing or Hearing to Address Remaining Discovery Disputes with Reduced Objection Language of Seven (7) Days* and the opposition thereto filed by Sargeant and the Lenders (Case No. 17-04156, Docket Nos. 375, 390, 393; Case No. 17-04157, Docket No. 259, 267). On June 18, 2019, the Lenders and Sargeant filed an *Urgent Motion Requesting Expedited Determination Regarding June 27, 2019 Evidentiary Hearing* (Case 17-04156, Docket No. 412; Case 17-04157, Docket No. 282).

On June 20, 2019, the Petitioning Creditors filed their *Joint Pretrial Report of the Petitioning Creditors in Connection with the June 27, 2019 Hearing* (Case 17-04156, Docket No.

413; Case 17-04157, Docket No. 283). On June 21, 2019, the Alleged Debtors filed their *Preliminary Pretrial Report* (Case 17-04156, Docket No. 414; Case 17-04157, Docket No. 284).

On June 25, 2019, the court ordered as follows:

"[a]fter a thorough review of the alleged *Debtors' Motion to Extend Discovery Schedule and Convert Evidentiary Hearing into Status Hearing or Hearing to Address Remaining Discovery Disputes with Reduced Objection Language of Seven (7) Days* (Docket No. 375), the court finds that the record is clear as to the extent of the discovery in the instant case. The parties submitted jointly, six Discovery Schedules (See Dockets Nos. 58, 86, 114, 291, 302 and 325) and had ample time to comply.

Therefore, the evidentiary hearing to address the *Motion of the Alleged Debtor Betteroads Asphalt LLC to Dismiss Involuntary Petition* (Case No. 17-04156, Docket No. 46) and the *Motion of the Alleged Debtor Betterecycling Corporation to Dismiss the Involuntary Petition* (Case No. 17-04157, Docket No. 27) and the Opposition thereto, will proceed as scheduled on June 27, 2019 at 9:30am (*sic*). The evidentiary hearing will continue on July 15, 2019; July 17, 2019; July 18, 2019; July 19, 2019 and July 24, 2019. The court allows additional discovery to the extent it is directed to an individual that has knowledge to the events leading to the filing of the involuntary petition for each of the petitioning creditors, without altering the evidentiary hearing's schedule. Furthermore, the petitioning creditors must comply with Fed. R. Civ. P. 26(b)(5), applicable to bankruptcy through Fed. R. Bankr. P. 7026, as to any information withheld during discovery under the claim of privilege and/or trial-preparation material." (Case 17-04156, Docket No. 426; Case 17-04157, Docket No. 295).

On June 26, 2019, the court entered an *Amended Order* in which it addressed several of the motions regarding the discovery disputes between Betteroads and Sargeant (Case 17-04156, Docket No. 432). In its Order, the court concluded that:

"[a]t this juncture, the court finds that the improper purpose has not been clearly defined and as such is unable to extend the scope of the alleged Debtor's discovery requests to other affiliates and/or related entities.

The court hereby grants Sargeant's *Omnibus Reply to Alleged Debtor's "Motion Regarding Discovery Disputes Requesting Order to Compel Discovery and Examination and Answer to Comply with Order Opposing Motion to Quash" or Otherwise Plead and for Extension of Time* (Docket No. 370). However, the court will only allow for one (1) deposition to be taken from an officer of Sargeant that is knowledgeable regarding the events leading to the filing of the involuntary petition."

-5-

Thereafter, the evidentiary hearings were held on June 27, 2019; July 15, 2019, July 17, 2019, and July 18, 2019. Detailed minutes of the hearings and the Involuntary Debtors witnesses' testimony were drafted and form part of the record (Case No. 17-04156, Docket Nos. 480, 493, 494 & 497; Case 17-04157, Docket Nos. 339, 351, 352 & 356). After the Involuntary Debtors presented their case in chief, the Petitioning Creditors moved for the denial of the Involuntary Debtors' request to dismiss the petition pursuant to Fed. R. Bankr. P. 7052 because the Involuntary Debtors failed to meet their burden of proving that the involuntary petitions were filed in bad faith.

On October 11, 2019, the Court rendered its *Opinion and Order* and concluded the following:

> "[a]fter a careful review of the evidence presented by the involuntary debtors, the court finds that the same does not establish that the petitions were filed for an improper bankruptcy purpose. Seeking that other creditors join in filing an involuntary petition in order to pursue debt collection in the bankruptcy court is not an improper bankruptcy purpose. In re Basil Street Partners, 477 B.R. 853. The evidence presented showed that the involuntary debtors had defaulted on their loan payments and, that the lenders had engaged in active collection actions. The discussions by and between the lenders, including the syndicate lenders, and the advice provided by their legal counsel show that the decision to file the involuntary petitions was more in the nature of a studied business decision that an action to harass or merely seek an alternate collection forum" (Case 17-04156, Docket No. 520, pg. 9-10; Case 17-04157, Docket No. 362, pg. 9-10).

Consequently, the court determined that the involuntary petitions were not filed in bad faith and an order for relief under chapter 11 was entered subsequently.

On October 24, 2019, Betteroads and Betterecycling filed their *Notice of Appeal and Statement of Election* by which they appeal the Opinion and Order entered on October 11, 2019 denying the alleged debtors' motion to dismiss and concluding that the involuntary petitions were not filed in bad faith. The Involuntary Debtors also appeal the *Order for Relief in an Involuntary Case* entered on October 11, 2019 commencing and scheduling the case (Case 17-04156, Docket No. 530; Case 17-04157, Docket No. 363). In addition, the Involuntary Debtors also appeal the

following interlocutory orders and rulings which have become final upon the entry of the *Opinion and Order* and *Order for Relief in an Involuntary Case*: (i) *Opinion and Order* of November 30, 2018 in which the court determined that the Petitioning Creditors satisfied the three prong requirement for filing an involuntary petition pursuant to 11 U.S.C. §303(b) (Case 17-04156, Docket No. 271; Case 17-04157, Docket No. 206); (ii) Order denying the extension of discovery schedule and converting evidentiary hearing into status hearing or hearing to address remaining discovery disputes and only allow limited factual discovery to the alleged debtor which was to be conducted parallel to the evidentiary hearing (Case 17-04156, Docket No. 426; Case 17-04157, Docket No. 295); (iii) Amended Order limiting the Involuntary Debtor's discovery request to affiliates and/or related entities of Sargeant Marine and Sargeant Trading and only allowing limited factual discovery parallel to evidentiary hearing (Case No. 17-04156, Docket No. 432); (iv) Order denying the Involuntary Debtor's Reconsideration to extend discovery schedule and convert evidentiary hearing into a status hearing to address remaining discovery disputes (Case 17-04156, Docket No. 434; Case 17-04157, Docket No. 300); (v) Order denying the Involuntary Debtor's Reconsideration to discovery request to affiliates and/or related entities of Sargeant Marine and Sargeant Trading (Case 17-04156, Docket No. 435); (vi) Bench Order determining that the *Motion for Protective Order* limiting the scope of discovery filed by the Petitioning Creditors was mooted by the Court's Opinion and Order of November 30, 2018 (Case 17-04156, Docket No. 480; Case 17-04157, Docket No. 339); and (vii) The entry of scheduling order regarding the meeting of creditors pursuant to 11 U.S.C. §341 (Case 17-04156, Docket No. 523; Case 17-04157, Docket No. 364).

On November 8, 2019, the Lenders filed their *Notice of Cross Appeal* in which they seek revision of the legal determination made in the November 30, 2018 *Opinion and Order*, that bad

faith is an independent cause of dismissal of an involuntary petition under section 303(b) (Case No. 17-04156, Docket No. 586; Case 17-04157, Docket No. 402).

On November 4, 2019, the Involuntary Debtors filed a *Motion for Stay Pending Appeal* (Case No. 17-04156, Docket No. 569; Case 17-04157; Docket No. 392). On November 11, 2019, the Petitioning Creditors filed their *Joint Opposition to Debtors' Motion for Stay Pending Appeal* (Case 17-04156, Docket No. 586; Case 17-04157, Docket No. 406). On November 15, 2019, the Involuntary Debtors filed their *Reply to Petitioning Creditors' Joint Opposition to Motion for Stay Pending Appeal* (Case No. 17-04156, Docket No. 600; Case No. 17-04157, Docket No. 420).

The Involuntary Debtors' motion to stay pending appeal has three (3) main arguments. The court will first address whether the divestiture doctrine is applicable; namely whether the notice of appeal deprives this court of jurisdiction to proceed and entertain matters in a Chapter 11 case.

*The Divestiture Doctrine and Bankruptcy*

The First Circuit Bankruptcy Appellate Panel in <u>Mission Prod. Holdings. v. Schleicher & Stebbins Hotels, L.L.C.</u> (<u>In re Old, Cold, LLC</u>), 602 B.R. 798, 822-823 (B.A.P. First Circuit 2019) thoroughly discussed the divesture doctrine and its applicability to bankruptcy court orders. The First Circuit B.A.P.'s discussion of the divestiture doctrine is as follows:

> "Generally, a notice of appeal divests the lower court of jurisdiction over those matters on appeal. <u>See</u> <u>Griggs v. Provident Consumer Discount Co.</u>, 459 U.S. 56, 58, 103 S. Ct. 400, 74 L. Ed. 2d 225 (1982). 'The filing of a notice of appeal is an event of jurisdictional significance- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.' <u>Id</u>. (citations omitted); <u>see also</u> <u>Watson v. Boyajian</u> (<u>In re Watson</u>), 403 F. 3d 1, 6 (1st Cir. 2005) (<u>citing Griggs</u>). This principle, known as the 'divestiture rule,' is a judge-made doctrine designed to promote judicial economy and prevent the confusion that would result from two courts addressing the same issue. 20 James Wm. Moore, <u>Moore's Federal Practice: Civil</u> ¶ 303.32[1] (3d ed. 2009); <u>see also</u> <u>Neary v. Padilla</u> (<u>In re Padilla</u>), 222 F. 3d 1184, 1190 (9th Cir. 2000) (citations omitted); <u>In re Whispering Pines</u>, 369 B.R. at 759 (citations omitted). 'The divestiture of jurisdiction rule is, however, not a per se rule.' <u>United States v. Rodgers</u>, 101 F. 3d 247, 251 (2d Cir. 1996). '[I]ts application is guided by concerns of efficiency and is

not automatic.' Id. (citations omitted). 'Whatever the superficial attractiveness of a per se rule that filing of a notice of appeal automatically divests the district court of jurisdiction as to matters covered by the notice, such a rule is subject to abuse, and [the court's] application of the divestiture rule must be faithful to the principle of judicial economy from which it springs.' Id.

The divestiture rule is applicable to an appeal from a bankruptcy court order. In re G-I Holdings, Inc. 568 B.R. 731, 763 (Bankr. D. N.J. 2017) (citation omitted) see also In re Whispering Pines, 369 B.R. at 759 (concluding that bankruptcy court did not have jurisdiction to enter order granting relief from stay while appeal of order confirming plan, which provided for the sale of the subject property, was pending). 'Courts have recognized, however, that due to the inherent nature of bankruptcy cases, 'discrete controversies within the overall case framework may often deserve separate appellate consideration' ....' In re G-I Holdings, Inc., 568 B.R. at 763 (citation omitted). They have cautioned, therefore, 'against a 'broad rule that a bankruptcy court may not consider any request which either directly or indirectly touches upon the issues involved in a pending appeal and may not do anything which has any impact on the order on appeal.' Id. (citation omitted); see also In re Whispering Pines, 369 B.R. at 758 ('The application of a broad rule that a bankruptcy court may not consider any request filed while an appeal is pending has the potential to severely hamper a bankruptcy court's ability to administer its cases in a timely manner.'). 'Instead, the test is a functional one: 'once an appeal is pending, it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process.' In re G-I Holdings, Inc., 568 B.R. at 763 (quoting In re Whispering Pines, 369 B.R. at 759). Thus, the test for determining if a pending appeal divests a lower of jurisdiction is whether the subject matter presented in the appeal is so 'closely related' to the issues raised in the motion that the entry of the order 'impermissibly interfere[s] with the appellant's rights in its appeal. In re Whispering Pines, 369 B.R. at 759." In re Old, Cold, LLC, 602 B.R. at 822-823.

*The Involuntary Debtors' position*

The Involuntary Debtors contend that the bankruptcy court does not have jurisdiction to proceed with a Chapter 11 case when those aspects of the case are deeply related to the appeal based upon the following: (i) "…it is precisely whether the door to a Chapter 11 will be opened or should remain closed what is explicitly at stake and under review at the district court;" (ii) "… any execution and/or scheduling of Chapter 11 tasks and reliefs grounded in an Order for Relief issued as a result of an Opinion and Order, when both are under review, will be intimately related to the matters specifically defined in the appeal and will certainly interfere with and effectively

-9-

circumvent the alleged debtor's right to the appeal process;" (ii) "[t]he Order for Relief, by its very terms is intimately related to the appeal of this District Court's *Opinion and Order* denying the dismissal of the involuntary petition. The *Order for Relief* activates all provisions of a Chapter 11 debtor;" (iii) "[t]here would be no greater inconsistency, of a debtor submitted to the provision[s] of a Chapter 11 while an appellate forum evaluates and ultimately may provide that it should not;" and (iv) "…the Chapter 11 proceeding should be stayed as a matter of right while the pendency of the appeal for lack of jurisdiction, without the imposition of any other requirement." (Case 17-04156, Docket No. 569, pgs. 8-9; Case 17-04157, Docket No., pgs. 7-9). Moreover, the Involuntary Debtors in their *Reply to Petitioning Creditors' Joint Opposition to Motion for Stay Pending Appeal* further argue that: (i) "… the bankruptcy court's ruling that a petitioner filed the involuntary petitions in good faith has bearing on array of decisions, including to confirm the Plan;" (ii) "[a]ll issues on appeal are closely related to the management of the Chapter 11 proceedings. That is, the determination of a bad faith bankruptcy filing is closely related to all aspects of a bankruptcy proceeding. It is unquestionable that the taint of a petition filed in bad faith naturally extends to any subsequent reorganization proposal;" and (iii) "… The First Circuit has not interpreted the divestiture rule as narrowly as the Petitioners argue. That is why the Court stated that even those issues not expressly on appeal may divest the court from jurisdiction ("Once an appeal is pending, it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process." Whispering Pines Estates, Inv. v. Flash Island Inc., 369 B.R. 75, 758 (B.A.P. 1st Cir. 2007)" (Case 17-04156, Docket No. 600, pgs. 4-5; Case 17-04157, Docket No. 420, pgs. 4-5).

*The Petitioning Creditors' position*

The Petitioning Creditors contend that the Involuntary Debtors' jurisdictional argument is unfounded based upon the following: (i) the Involuntary Debtors are not requesting relief to preserve the issues on appeal, rather they are requesting that the court suspend all proceedings that may arise in these chapter 11 cases and preclude the court from administering the same and the parties from enjoining any rights available under chapter 11; (ii) the divestiture doctrine prevents a trial court from amending or modifying the issues on appeal while they are on appeal. It does not provide for a stay of proceedings as requested by the Involuntary Debtors; (iii) "... proceeding with the administration and continuation of the chapter 11 proceedings is, at most, an 'enforcement' or 'implementation' of the entry of the order for relief that would not implicate the Divestiture Doctrine, as the Court would be doing nothing to modify the Discovery Orders, the 2018 Opinion and Order, or the 2019 Opinion and Order;" and (iv) ".... this would constitute, simply, enforcement or implementation of the 2019 Opinion and Order, which is clearly and unequivocally supported by the case law. The Debtors' argument that this Court is divested of jurisdiction to continue with the chapter 11 cases must be rejected" (Case No. 17-04156, Docket No. 586; Case No. 17-04157, Docket No. 406).

*Analysis*

The issues included in the notice of appeal by the Involuntary Debtors all revolve around the core issue, which is that the court determined that the involuntary petitions were not filed in bad faith and, thus, denied the Involuntary Debtors' motions to dismiss. Therefore, the court proceeded to enter the Order for relief in both of the involuntary cases. Some of the interlocutory discovery orders are related to the court's finding that the improper purpose had not been clearly defined and as such did not extend the scope of Betteroads' discovery requests to other affiliates and/or related entities of Sargeant. Consequently, the court allowed only one (1) deposition to be

taken from an officer of Sargeant. The Involuntary Debtors' also appealed the court's *Opinion and Order* of November 30, 2018 in which one of the court's holding was that the Petitioning Creditors complied with the three-prong requirement for filing an involuntary petition pursuant to section 303. The Petitioning Creditors' cross appeal of this court's Opinion and Order of November 30, 2018 focuses solely on this court's determination that bad faith is an independent cause for dismissal of an involuntary petition under 11 U.S.C. §303(b).

The court finds that the key legal issue before the appellate forum (District Court of Puerto Rico) is whether bad faith is an independent cause for dismissal regarding involuntary bankruptcy petitions. The remainder of the issues/controversies stem from this core legal question. This court has already determined that the Petitioning Creditors' complied with the three-prong requirement for filing the involuntary petitions. These controversies/legal issues are not currently before the court. After a careful review of the evidence presented by the Involuntary Debtors, the court found that the same did not establish that the petitions were filed for an improper purpose or in bad faith. The court proceeded to enter an order for relief in each of the involuntary cases.

At this juncture, there is no underlying motion or legal remedy being requested that parallels the legal issues before the appellate forum. Therefore, there is no subsequent opinion and order or legal issue that is before the court that would modify or be inconsistent with the Opinions and Orders that are currently pending on appeal. The bankruptcy court is simply following the process for the involuntary petitions which were filed over two years ago, in conformity with the Opinions and Orders that have been rendered up to this point, which constitute acts undertaken to enforce the court's opinions and orders. See In re Sabine Oil & Gas Corp., 548 B.R. 674, 678-79 (Bankr. S.D.N.Y. 2016) ("Courts have accordingly recognized a distinction in the divestment of jurisdiction between acts undertaken to enforce the judgment and acts which expand upon or alter

-12-

it; the former being permissible, and the latter prohibited. The application of the distinction in the case law between acts of enforcement and acts of alteration is most germane in the context of a Chapter 11 bankruptcy case which involves the court's issuance of innumerable orders involving a myriad of issues, one or more of which may be on appeal at any given moment."

It is important to note that, "… the divestiture doctrine is not intended to 'cede control of the conduct of a chapter 11 case to disappointed litigants. This cannot be, and is not, the law.' Sabine, 548 B.R. at 680. And such a decision would be contrary to Fifth Circuit precedent indicating that 'a narrow interpretation [of divestiture doctrine] is normally appropriate.' See Weingarten, 661 F. 3d at 908.'" Neutra, Ltd. v. Terry (In re Acis Capital Mgmt., L.P., 604 B.R. 484, 524 (Northern District of Texas, 2019). The court concludes that the Opinions and Orders and legal issues therein do not divest this court of jurisdiction from carrying forward with the administering of the involuntary cases.

Thus, the court now turns to analyzing the Involuntary Debtors' motions for stay pending appeal pursuant to Fed. R. Bankr P. 8007 and the Petitioning Creditors' opposition.

<u>Standard Governing Motions for Stay Pending Appeal</u>

Fed. R. Bankr. P. 8007 governs requests for a stay pending appeal. Fed. R. Bankr. P. 8007(a)(1)(A) provides that, " [o]rdinarily a party must move first in the bankruptcy court for the following relief: (A) a stay of a judgment, order, or decree of the bankruptcy court pending appeal." Fed. R. Bankr. P. 8007(a)(1)(A). If the motion for stay pending appeal is denied by the bankruptcy court, then the movant may seek a stay from the court whether the appeal is pending. Fed. R. Bankr. P. 8007(b)(1).

-13-

A motion for stay pending appeal is an extraordinary remedy and requires a substantial showing on the part of the movant. In re Lickman, 301 B.R. 739 (Bankr. M.D. Fla. 2003). In the First Circuit, in a motion for a stay pending appeal, the movant bears the burden of demonstrating: (i) a likelihood of success on the merits; (2) the potential for irreparable harm in the absence of a stay; (3) whether issuing a stay will burden the opposing party less than denying a stay will burden the movant; and (4) the effect, if any, on the public interest. See Sindicato Puertorriqueño de Trabajadores v. Fortuño, 699 F. 3d 1, 10 (1st Cir. 2012); Esso Standard Oil Co. v. Monroig-Zayas, 445 F. 3d 13, 18 (1st Cir. 2006) (citations omitted). It is well settled law that a court should only grant a stay of the order subject to appeal if all elements are present. See Access Cardiosystems, Inc. v. Fincke (In re Access Cardiosystems, Inc.), 340 B.R. 656, 659-660 (Bankr. D. Mass. 2006); In re Handel, 242 B.R. 789, 791 (Bankr. D. Mass. 1999); Great Barrington Fair & Amusement, Inc., 53 B.R. 237, 239 (Bankr. D. Mass. 1985). Failure to satisfy all four prongs dooms the motion. See Eck v. Dodge Chem. Co. (In re Power Recovery Sys., Inc.), 950 F. 2d 798, 804 n. 31 (1st Cir. 1991) (citations omitted).

Even though each factor is important, "[t]he sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." Sindicato Puertorriqueño de Trabajadores v. Fortuño, 699 F. 3d at 10 (quoting New Comm Wireless Servs., Inc. v. Sprint Com, Inc., 287 F. 3d 1, 9 (1st Cir. 2002)); See also: Acevedo Garcia v. Vera-Monroig, 296 F. 3d 13 (1st Cir. 2002).

In Acevedo-Garcia, the First Circuit added: "In essence, the issuance of a stay depends on 'whether the harm caused [movant] without the [stay], in light of the [movant's] likelihood of eventual success on the merits, outweighs the harm the [stay] will cause [the non-moving party]'"

Id. at 16-17 (citing United Steelworkers of Am. v. Textron, Inc., 836 F. 2d 6, 7 (1st Cir. 1987)). See also; In re Morgan, No. 10-40497-JNF, 2011 Bankr. Lexis 5788 (Bankr. D. Mass. 2011) (citing In re Medsci Diagnostics, Inc., 2011 Bankr. Lexis 283 (Bankr. D.P.R. 2011).

Discussion

*Likelihood of success on the merits*

The first factor the court must consider in a motion for stay pending appeal is whether the movant has a likelihood of success on the merits of the appeal. To satisfy this requirement, the movant must show, "more than mere possibility" of success – rather, they must establish a 'strong likelihood' that they will ultimately prevail." Sindicato Puertorriqueño de Trabajadores v. Fortuño, 699 F. 3d at 10 (quoting Respect Mr. PAC v. McKee, 622 F. 3d 13, 15 (1st Cir. 2010)); see also In re Access Cardiosystems, Inc., 340 B.R. at 660 (citation omitted).

The Involuntary Debtors' arguments as to likelihood to success on the merits are the following: (i) "…the Opinion and Order at 362 reflects no[..] weighing of the factors or conclusion of law that show the totality of the circumstances test to be applied. The Opinion and Order is mainly sustained by one witnesses' testimony transcript copied by the Court and a four-sentence long analysis. The Court concludes that there is a presumption of good faith, however it says nothing as to the standard that the alleged debtors had to provide to revert such presumption. The applicable standard is the preponderance of the evidence;" (ii) "[e]ven more, when among the mayor particularities within this case entail the execution of so called Carveout Agreements between petitioners while there is abundant case law proscribing and ruling them as invalid within Chapter 11 scenarios and even dicta and indications within the First Circuit which equally reject their nature;" (iii) "[e]vidently, it is Betteroads' position that this Court erred in the ruling, content, analysis and form within its Opinion and Order in not carefully weighing all the factors that must

-15-

be considered under the totality of circumstances test;" (iv) "[n]otwithstanding, this motion seeks to portrait to this Court, that regardless the rulings issue; (1) pursuant to the nature of the legal contentions entertained and under review; (2) the particular and unique facts; (3) the substantial documental evidence in record in addition to testimony; (4) unsettled and first impression nature of most legal controversies within the case and; (5) the complexity of the application of an all-around and adaptable standard, it is required to conclude that Betteroads [/Betterecycling Corp.] have a substantial possibility of success on [the] merits by exercising its right to appeal;" (v) the court's ruling that the Petitioning Creditors complied with the numerical requirement of having at least three (3) petitioning creditors pursuant to section 303(b)(1) is erred because these petitioning creditors should not be accounted as independent unsecured creditors because they have only joined because they have been promised to participate in a common distribution in preference of those creditors with the same unsecured classification. See In re Iowa Coal Min. Co., Inc., 242 B.R. 661 (1999); (vi) "[i]n the case at bar, although these petitioners held independent claims prior to the filing of the petition, it is the alleged debtors than against this potential estate and parties in interest, they do not;" (vii) "[t]hese petitioners (1) have obligated themselves to litigate in unison; (2) none is permitted to deviate from their common interest and strategy with no freedom to settle; (3) they have agreed to participate from the same distribution upon the sale and liquidation of the alleged debtor's assets; (4) all their attorneys' fees and financing of the case come from the same source which is an unqualified contested creditor which crafted the petition; (5) all in preference of those creditors with the same unsecured classification;" (viii) "Th[is] raises flags as to whether th[ese] involuntary petitions w[ere] filed in fact seeking an equitable relief or a monetary and litigation strategy, even in detriment of other potential creditors, which is more evident upon their adherence and posture of keeping these agreements confidential. The alleged debtors assert that

-16-

these confidential agreements, reveal the inten[t] of petitioners to seek a liquidation and transfer of assets, opposed to an organized reorganization proceeding. Th[is] is evidenced even by additional facts. Regarding this particular legal contention under review, we have again to outline that there is no precedent within our circuit and no clear indication that Betteroads [/Betterecycling] will not succeed on the merits;" (ix) "[the] bankruptcy court's impairment of due process regarding discovery and management of the case" which focuses primarily on the June 25, 2019 Order in which this court "… denied Betteroads to perform discovery on certain subsidiary and related parties with and through which it was [e]stablished that two of the petitioners to wit, Sargeant Marine & Sargeant Trading, had a direct interest in the same asphalt industry in which Betteroads endeavored, thereby being easily identifiable that th[ese] parties were direct competitors which required a more detail scrutiny and discovery;" (x) "[o]n the part of Betteroads, it was repeatedly asserted that the petition[ing] banks were attempting to bypass loan prohibitions which precluded them to dispose and s[ell] the loans to any competitor, and by Betteroads being successful pre-petition on blocking such intent, now the bankruptcy forum provided the perfect tools and weapons to gain this disproportional advantage, which was to be supported during the case in chief by the banks including and promising payment to Sargeant Marine & Sargeant Trading, which were direct competitors through their subsidiary;" (xi) since August 3, 2017, petitioners had filed a request for protective order at Docket No. 73 [Docket No. 51-Betterecycling] raising objections to most of the production of documents requested by the alleged debtors; (xii) during the pendency of one year while the court was entertaining bad faith as an independent cause of dismissal up to the November 30, 2018 Opinion and Order, the discovery between the parties was stayed until an adjudication by the Court was issued on these matters (Case 17-04156, Docket No. 375; Case No. 17-04157, Docket No. 259); (xiii) It was not until the actual

-17-

evidentiary hearing on June 27, 2019 that the court for the first time and from the bench stated that: "The court states that it believed that the motions were mooted by the court's determination that the petitioning creditors had complied with the requirements to file the petition and that the issue remaining was if the involuntary petition was filed in bad faith or for an improper purpose, order entered on November 30, 2018 at Docket No. 271);" (xiv) "[t]hese unresolved protective order which remained pending for over two (2) years hindered the alleged debtors' ability to make a diligent and effective discovery of the petitioning creditors' allegations. Further, being pending most of the factual documental discovery up to the eve of the discovery deadline also impaired the ability to move forward with expert discovery. As the law determines, the discovery disputes as well as all discovery is to be finished prior to trial but this not necessarily two (2) days before as here on the 25th or on the same date from the bench; and (xv) on July 14, 2019, the alleged debtors filed the *Alleged Debtors' Informative Motion on Particular Procedural Facts* (Case 17-04156, Docket No. 460; Case 17-04157, Docket No. 319). In said motion the alleged debtors did not request the recusal of the Judge but informed him about certain facts relating to USIC as the bonding company and that the direct relation it would have on the evidentiary hearing, because the petitioning creditors based the involuntary petitions in arguments of depletion of assets that were allegedly transferred (Case 17-04156, Docket No. 569, pgs. 18-23; Case 17-04157, Docket No. 392, pg. 18-23).

The Involuntary Debtors' arguments fall into four separate categories; namely; arguments (i)- (iv) and (viii) regard the October 11, 2019 Opinion and Order; arguments (v)- (vii) regard the November 30, 2018 Opinion and Order; arguments (ix)- (xiv) relate to the Orders regarding the discovery issues; and lastly argument (xv) has to do with the Involuntary Debtors'

-18-

*Informative Motion on Procedural Facts*, in particular, USIC's role as a bonding company for the Involuntary Debtors and the Judge's recusal from any contested matter that pertains to USIC.

The court will first address the Involuntary Debtors' arguments (v) - (viii) as the same relate to the November 30, 2018 *Opinion and Order*. The Involuntary Debtors' argue that the court erred in finding that the Petitioning Creditors complied with the numerical requirement of having at least three (3) petitioning creditors pursuant to section 303(b)(1) because these petitioning creditors should not be counted as independent unsecured creditors because they joined the petitions "… because they have been promised to participate in a common distribution in preference of those creditors with the same unsecured classification" and they cite the case of In re Iowa Coal Min. Co., Inc., 242 B.R. 661 (1999). However, the Involuntary Debtors state that, "[i]n the case at bar, although these petitioners held independent claims prior to the filing of the petition, it is the alleged debtors' [position] tha[t] against this potential estate and parties in interest, they do not" (Case 17-04156, Docket No. 569, pg. 22, par. 105; case 17-04157, Docket No. 392, par. 105). The Involuntary Debtors solely rely on In re Iowa Coal Min. Co., Inc. to sustain their position. In the instant case, the court concluded that the Involuntary Debtors' reliance in In re Iowa Coal Min. Co., Inc. was misplaced and provided a thorough analysis of its legal reasoning in the *November 30, 2018 Opinion and Order* which the Involuntary Debtors have been unable to refute adequately. The court's analysis was the following:

> "The alleged Debtors argue that the petitioning creditors have become so entangled with the Syndicate Lenders that they should not be considered different and/or independent entities for purposes of the numerosity requirement of 11 U.S.C. §303(b). The alleged Debtors base their argument in the case of In re Iowa Coal Min. Co., Inc., 242 B.R. 661 (Bankr. S.D. Iowa 1999). The court finds that the alleged Debtors' reliance in In re Iowa Coal Min. Co., Inc. is misplaced because in this particular case the bonding companies presented themselves to the court as one creditor with one claim based on the reclamation agreement. Moreover, the court concluded that for purposes of 11 U.S.C. §303(b) the bonding companies constituted one creditor with one claim because the relationships of

the bonding companies and the coal companies were so intertwined and the petitioning creditors had been dealing with the debtors as one entity for an extended period of time. The court stated that the following factors taken together persuaded that the court that the bonding companies was basically one creditor with one claim: (i) all of the petitions for each of the coal mining companies filed by the bonding companies were virtually identical. The creditors' claims were evinced by the same documentary evidence. Nowhere in the petitions or exhibits do the bonding companies allocate the amount of debt owed to each one of them by the coal companies; (ii) in their petitions the bonding companies refer to the reclamation agreement and modifications to the same as the basis of their claim; (iii) the bonding companies alleged that certain indemnity agreements and subrogation rights serve as an added basis for their claims but they did not itemize the payments, or identify for which bond or company's benefit the payments were made; (iv) the coal companies executed a mortgage and security interest based upon the reclamation agreement jointly to the three bonding companies. The court noted that based upon this particular fact; "[i]t would appear that through the reclamation agreement and the subsequent mortgage and security agreement, the bonding companies have subordinated their individual rights to security for that group;" and (v) as evidenced from the reclamation agreement, mortgage, correspondence and testimony, the bonding companies made a concerted effort to come together to protect the bonds. In re Iowa Coal Min. Co.,Inc., 242 B.R. at 669-670. The court in this case determined that the bond companies' claims were based on a joint obligation which constituted a single claim and a single creditor entity for purposes of section 303(b).

In the instant case, each of the petitioning creditors' claims is based on a different and independent obligation which stems from a state court judgment. Therefore, the court finds that all of the petitioning creditors' claims do not constitute a single claim and thus a single creditor entity for purposes of section 303(b). The court clarifies that a different issue is whether these Carve-Out and Settlement Agreements between the Lenders and the Petitioning Creditors constitute bad faith and therefore "cause" to dismiss the involuntary petitions." In re Betteroads Asphalt, LLC, 594 B.R. 516, 545-546 (Bankr. D.P.R. 2018).

The court finds that the Involuntary Debtors' rehashing of the same argument is unpersuasive, given that it solely relies on one case in which the court ultimately treated the bonding companies as having a joint obligation and which constituted a single claim. Moreover, the court finds the Involuntary Debtors' analysis is specifically tailored for their specific situation and devoid of any legal support. The Involuntary Debtors' argument is in essence that the Carve-Out and Settlement Agreements between the Lenders and the Petitioning creditors metamorphosized (changed the nature) their independent claims into a single claim. The court

-20-

reinstates its conclusion that In re Iowa Coal Min. Co., Inc. has marked differences from the instant case which this court explained in the November 30, 2018 *Opinion and Order*. The court concludes that it did not err in its holding that the Petitioning Creditors for both Betteroads and Betterecycling have satisfied the requirements of 11 U.S.C. §303(b).

The court will discuss next the arguments pertinent to the *October 11, 2019 Opinion and Order;* namely arguments (i)- (iv). The first argument pertains to the applicable standard of evidence that is applicable in the instant case. There is a distinction between the standard of evidence required in a civil suit or, as in this case a bankruptcy contested matter which the court identified in the November 30, 2018 *Opinion and Order* as the preponderance of the evidence standard, and the different tests employed to determine whether an involuntary petition was filed in bad faith, such as the totality of circumstances test. See In re Betteroads Asphalt, LLC, 594 B.R. at 557-558 ("There is a presumption in favor of good faith filing, and the burden is on the debtor to show by a preponderance of the evidence that the filing is in bad faith") (citations omitted).

The totality of circumstances test is a method of factual analysis that is used to reach a conclusion. Preponderance of the evidence is the standard of proof. A party demonstrates by a preponderance of the evidence standard under the totality of the circumstances test or analysis a factual conclusion. Determinations concerning bad faith are fact intensive and are conceptual in nature. Thus, analyzing the totality of the circumstances, as opposed to mechanical checklists, is the preferred analytical approach. In re Costa Bonita Beach Resort, Inc., 479 B.R. 14, 40 (Bankr. D.P.R. 2012). Preponderance of the evidence is the legal standard to meet the burden of proof. Totality of the circumstances is the analytical tool. See Bronsdon v. Educ. Credit Mgmt. Corp. (In re Bronsdon), 435 B.R. 79 (1st Cir. B.A.P.. 2010); Schatz v. Access Grp., Inc., 602 B.R. 411 (1st Cir. B.A.P. 2019).

-21-

The court, in its November 30, 2018 *Opinion and Order,* after thoroughly analyzing the parties' position aligned itself with the holding of In re Forever Green Athletic Fields, Inc. 804 F. 3d 328 (3ʳᵈ Cir. 2015), in which the Third Circuit held that bad faith serves as a basis for both dismissal and damages and supported its position on the good faith filing requirements. This was the Involuntary Debtors' argument and they used extensively In re Forever Green Athletic Fields, Inc. to support their position. See In re Betteroads Asphalt, LLC, 594 B.R. at 558. In In re Forever Green Athletic Fields, Inc., the Third Circuit employed a "totality of circumstances" standard for determining bad faith pursuant to section 303. This court also employed the totality of circumstances test which is the same standard used when there are allegations that a debtor filed a voluntary petition in bad faith. The Third Circuit in In re Forever Green Athletic Fields, Inc., explained the reasoning for employing the totality of the circumstances test as follows:

> "[w]e adopt the "totality of circumstances test" standard for determining bad faith under §303. This standard is most suitable for evaluating the myriad ways in which creditors filing an involuntary petition could act in bad faith. It also is the same standard we apply when reviewing allegations that a debtor filed a voluntary petition in bad faith. See In re Myers, 491 F. 3d at 125; In re Lilley, 91 F. 3d at 496. In conducting this fact-intensive review, courts may consider a number of factors, including, but not limited to, whether: the creditors satisfied the statutory criteria for filing the petition; the involuntary petition was meritorious; the creditors made a reasonable inquiry into the relevant facts and pertinent law before filing; there was evidence of preferential payments to certain creditors or of dissipation of the debtor's assets; the filing was motivated by ill will or a desire to harass; the petitioning creditors used the filing to obtain a disproportionate advantage for themselves rather than to protect against other creditors doing the same; the filing was used as a tactical advantage in pending actions; the filing was used as a substitute for customary debt-collection procedures; and the filing had suspicious timing" In re Forever Green Fields, Inc., 804 F. 3d at 336.

Moreover, this court in its *Amended Order* dated June 26, 2019 (Case 17-04156, Docket No. 427) reiterated the criteria it would use and cited the same quote from the case of In re Forever Green Fields, Inc. In addition, the first conclusion of law in the Involuntary Debtors' pre-trial

report is the following, "[f]iling of the involuntary bankruptcy petition for improper purpose, under a totality of circumstances standard" (Case 17-04156, Docket No. 414, pg. 5, 66-67; Case 17-04157, Docket No. 284, pgs. 5, 66-67). The court finds that the Involuntary Debtors' allegation that, "[t]he Court concludes that that there is a presumption of good faith, however it says nothing as to the standard that the alleged debtors had to provide to revert such presumption. The applicable standard is the preponderance of the evidence" … is simply unfounded.

The court's October 11, 2019 *Opinion and Order* includes approximately eighty (80) pages of detailed minutes regarding the testimonies of the different witnesses, arguments before the court and bench rulings that had transpired during the evidentiary hearings (Case 17-04156, Docket No. 520; case 17-04157, Docket No. 362). The purpose of the same is to provide transparency as to what transpired during the hearing and the evidence that was presented without having to listen to many hours on the audio file. The Opinion and Order provides a synopsis of what occurred during the evidentiary hearings and commences by stating that, "[d]uring the evidentiary hearing the court emphasized that key to the alleged debtors prevailing in their allegations of bad faith was to establish pursuant to the totality of the circumstances that the involuntary petitions were filed for an improper bankruptcy purpose" (case 17-04156, Docket No. 520; case 17-04157, Docket No. 362). The Opinion and Order provides a synopsis of some of the testimonies of the Involuntary Debtors' witnesses: Mr. Jorge L. Díaz, president of the Involuntary Debtorrs; Ms. Marisel Rivera Torres, former Vice President of Finance of the Involuntary Debtors; and Mr. Francisco J. Pericás Alfaro, director and vice president of BPPR's corporate banking division. The court included in its *Opinion and Order* a more detailed account of Mr. Pericas' testimony because he was able to provide a very detailed narrative of BPPR's history with the Involuntary Debtors and most importantly provide the reasons that triggered the filing of the involuntary petitions; namely; (i)

-23-

after a year (365) days of the bank not receiving payment for the principal or interest on the laons, under local banking law, banks have to charge the fill amount of the loan, regardless of the value of the collateral; (ii) there was a lack of financial transparency regarding the actions of the involuntary debtors with the Lenders' collateral; (iii) Banco Popular was not aware that the assets that constituted the banks' collateral were being leased to third parties. The banks learned through a syndicate member that some plants were being leased to third parties; (iv) there was an attempt to transfer two (2) contracts with (2) different municipalities that were awarded to Betteroads and Betterecycling to Puerto Rico Asphalt; (v) a license under the nuclear regulatory commission that was under Betteroads' name was transferred to Puerto Rico Asphalt; (vi) overstatement of account receivables balance (overstatement of current assets), given that once the accounts receivables were foreclosed, they attempted to collect payments and the information that was provided by the clients of Betteroads to the banks was significantly different from the amount that Betteroads had previously reported; and (vii) they also learned from a third party as to the Judgment received from Sargeant. They did not know if there could be more cases with writ of attachments such as Sargeant Marine.

After the Involuntary Debtors presented the evidence regarding their case in chief, the court did not find any improper purpose or bad faith in the filing of the involuntary petitions. As to the carveout agreements regarding this particular purpose in an involuntary petition, the court concluded that, "[s]eeking that other creditors join in filing an involuntary petition in order to pursue debt collection in the bankruptcy court is not an improper bankruptcy purpose. In re Basil Street Partners, LLC, 477 B.R. 853." (Case 17-04156, Docket No. 520, pg. 9-10; case 17-04157, Docket No. 362, pg. 9-10). The court's reasoning in In re Basil Street Partners, LLC, for concluding that requesting other creditors to join the involuntary petition does not constitute bad

faith is based upon the following, "[w]ith respect to Basil Street's charge that APL orchestrated this case, the court notes that merely seeking out other creditors to join in the petition does not give rise to a finding of bad faith, unless such solicitation involved the use of fraudulent statements, harassive conduct, or the exertion of undue pressure. U.S. Fidelity & Guar. Co. v. DJF Realty & Suppliers, Inc., 58 B.R. 1008, 1012 (N.D.N.Y. 1986)" Id. at 853.

The Involuntary Debtors have been unable to clearly define what constitutes the improper purpose or the bad faith of the Petitioning Creditors in the filing of the Involuntary petitions. The court in its *Opinion and Order* concluded that, "[t]he evidence presented showed that the involuntary debtors had defaulted on their loan payments and, that the lenders had engaged on active collection actions. The discussions by and between the lenders, including the syndicate lenders, and the advice provided by their legal counsel show that the decision to file the involuntary petitions was more in the nature of a studied business decision tha[n] an action to harass or merely seek an alternate collection forum." Thus, the court finds that given the evidence presented, it did not err in its holding that the involuntary petitions were not filed in bad faith and an order for relief was entered accordingly.

The court will next delve into the Involuntary Debtors' allegations regarding discovery disputes and the alleged impairment of due process as to the discovery process and management of the case. The first discovery controversy involves the June 25th 2019 *Amended Order* in which the court denied Betteroads to perform discovery on certain subsidiaries and related entities of Sargeant Marine and Sargeant Trading which were direct competitors of Betteroads in the asphalt industry. The court in its Amended Order explained the reasoning for granting Sargeant's *Omnibus Reply to Alleged Debtor's Motion Regarding Discovery Disputes Requesting Order to Compel*

*Discovery and Examination and Answer to Comply with Order Opposing Motion to Quash or Otherwise Plead and for Extension of Time,* in the following manner:

> "The scope of discovery hinges on determining what is the improper purpose of the involuntary filing. The alleged Debtor's improper purpose position (theory) consists of the following: (i) '[i]n the case at bar, it appears that it was the Syndicate Lenders which instigated the involuntary filing and contracted potential petitioning creditors, not suggesting, but promising that in the involuntary case they would ensure a better recovery for them, even over other unsecured creditors' (Docket No. 353, pg. 24); and (ii) '[i]t is the alleged Debtor's position that other than the claims that these petitioners have used as their entry ticket for these involuntary petitions, their competitive interest, economic motivations significantly and actual intent to collude with the Syndicate Lenders to take the alleged debtors out of business following or acquire their assets, fits squarely and is in fact the exten[t] and scope of the evidentiary hearing (Docket No. 353, pgs. 30-31).

> At this juncture, the court finds that the improper purpose has not been clearly defined and as such is unable to extend the scope of the alleged Debtors' discovery requests to other affiliates and/or related entities" (Case 17-04156, Docket No. 432).

The court reiterates its position that Betteroads has not clearly defined the improper purpose and thus, did not permit for Betteroads to conduct discovery regarding Sargeant's affiliates. Sargeant's affiliates may be Betteroads' competitors in the asphalt industry. However, that does not establish that there was collusion[1] amongst Sargeant's affiliates and the Syndicate Lenders to take the Involuntary Debtors out of business or acquire their assets. The Involuntary Debtors have not brought forth with particular/specific allegations of collusion, meaning the specific agreement and/or acts that are forbidden by law and/or meant to defraud the Involuntary Debtors. Contrariwise, the Petitioning Creditors filed involuntary petitions for the debtors seeking financial transparency from the debtors and wherein all transactions must be disclosed to the court. Mr. Pericas testified that he thought it would be beneficial and could not be obtained through the local courts to attain some type of orderly liquidation and equitable distribution of assets in a

---

[1] The definition of collusion is the following: "an agreement to defraud another or to do or obtain something forbidden by law." Black's Law Dictionary (8th ed. 2004).

transparent process and allow for either a refinancing or restructuring of the syndicate credit facilities or the liquidation of assets under the existing credit facilities. Mr. Pericas' testimony also disclosed that around September 2016, it was approximately a year (365 days) that the bank did not receive any payment for the principal or interest on the loans from the Involuntary Debtors. Mr. Pericas also clarified that section 9.11(c) of the Amended and Restated Credit Agreement provided some conditions on who could acquire participation under the loan agreement. Moreover, this court in its November 30, 2018 Opinion and Order, after having analyzed the involuntary Debtors' June 30, 2017 Aging Report, the proof of claims that had been filed as of the petition date and the collection of monies actions in state court determined that the Involuntary Debtors were not paying their debts as they became due regardless of whether the debts or accounts payables were for trade vendors, utilities, withholdings, bank cards, taxes and subcontractors. In addition, overdue taxes, tax liens, collection actions, commencement of lawsuits, unsatisfied judgments are all indicators that the debtors were not paying their debts as they became due.

As to the motion for protective order filed by the Lenders, the court adjudicated the same on the first day of the evidentiary hearings, namely on June 27, 2019. The court stated that it believed that the motions were mooted by the court's determinations that the petitioning creditors complied with the requirements to file the petition and that the issue remaining was if the involuntary petitions were filed in bad faith or for an improper purpose, given that the court had determined that bad faith was a cause for dismissal under section 303. The Involuntary Debtors argue that, "[t]h[e]se unresolved protective order[s] which remained pending for over two (2) years hindered the alleged debtors' ability to make a diligent and effective discovery of the petitioning creditors' allegations." The Involuntary Debtors have the burden to show by a preponderance of the evidence that the filing is in bad faith employing the totality of the circumstances test. The

Involuntary Debtors do not have the burden on making a diligent and effective discovery of the Petitioning Creditors' allegations, given that they are the ones that carry the burden to prove their allegation that the involuntary petitions were filed in bad faith. For the reasons herein, the court concludes that it did not err in its discovery orders.

The court will proceed to delve into the *Alleged Debtors' Informative Motion on Particular Procedural Facts* in which the Involuntary Debtors argue that they, "… did not request the recusal of the Judge but informed him about certain facts relating to USIC as the bonding company and the direct relation it would have on the evidentiary hearing, because the petitioning creditors based the involuntary petitions on arguments of depletion of assets that were allegedly transferred" (Case 17-04156, Docket No. 460; Case 17-04157, Docket No. 319). The minutes of July 15, 2019 disclose the following as to the recusal issue regarding USIC:

> "Judge Lamoutte state[d] that the recusal hinges [o]n how and to what extent will USIC be affected favorably or adversely by a holding of the court that the petitions should not be dismissed on the grounds of bad faith. The Judge notes that this issue should be addressed as promptly as possible, and therefore, allow the parties to state their arguments." (Case 17-04156, Docket 493, pgs. 1-2; case 17-04157, Docket No. 351, pgs 1-2).

> "The court acknowledges that the parties have different perspectives of the role of USIC at this stage of the proceedings. One thing is clear, the Judge will not entertain any action in which USIC is a party or may be adversely affected. In any contested matter, as stated in the order on the adversary proceeding, if the contested matter is relevant or key to the disposition of a case in chief, the judge will recuse himself. However, the court is concerned on timing and ethical issues. These cases were filed in June 2017, over two years ago. At least, one year ago in the Adv. Proc. 18-54 the court entered an order recusing itself from the adversary proceeding due to the intervention of USIC and the relevance of USIC to the proceeding. As a matter of ethical responsibility if there are grounds to recuse, the Judge will do it, not only if there is an actual conflict but to avoid the appearance of impropriety. But the fact that this issue is presented to the court after two years, after substantial litigation and discovery, concerns the court in regards of the delay of the proceedings. The Judge has the ethical responsibility and integrity to recuse himself but also has the responsibility to dispose of the cases that are assigned to him. In involuntary petitions the court must balance the discovery and other matters with the statutory requirement of an expedited resolution. Two years have gone by. Although the court has reviewed certain documents attached to the motion, which are signed by the individuals that may warrant

-28-

the judge to recuse himself, the court still does not know what USIC's role is as to the contested matter, which is whether the petition should be dismissed on the grounds of bad faith. The court already entered an order that states that the petitioning creditors complied with the statutory provisions, but the court included a requirement that the petition must be filed in good faith, and therefore, dismissal may be warranted before entering the order for relief. The court is not clear as to the role of USIC in relation to the motion to dismiss. If the court hears testimonial evidence that shows that USIC has such a direct relation with the pending issue before the court that warrants the recusal of the judge, the court will do so. At this time, the judge is not recusing but after hearing the evidence, he may" (Case 17-04156, Docket 493, pg. 4; case 17-04157, Docket No. 351, pg. 4).

At this juncture in the proceedings, the court clarifies that the Judge did not recuse himself from the case because the exhibits presented, and Mr. Diaz's testimony did not indicate that USIC has any role on the contested matter before the court, which is whether the petition should be dismissed on the grounds of bad faith. Thus far, on October 4, 2019, USIC filed proof of claim #22-1 in the amount of $2,812,999.90, as a contingent claim in the Betterecycling involuntary case. The court notes that if there is any contested matter or adversary proceeding regarding USIC in the involuntary cases, then he will recuse himself should this be the case. The court further notes that the only sureties recently moving the court are CNA Surety, Western Surety Company and Continental Casualty Company, that requested time to file an objection to the "Lenders" motion to prohibit the use of cash collateral in the Betterecycling Corporation case.

The court finds that the Involuntary Debtors have failed to satisfy the first prong of the stay pending appeal requirements which is likelihood to succeed on the merits.

*Irreparable Harm*

Irreparable harm most often exists where a party has no adequate remedy at law. Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F. 3d 151, 162 (1st Cir. 2004) (referencing Rosario-Urdaz v. Rivera- Hernandez, 350 F. 3d 219, 221 (1st Cir. 2003). "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated

-29-

fears of what the future may have in store." Id. To establish irreparable harm, a stay movant, "must demonstrate an injury that is neither remote or speculative, but actual and imminent." Revel AC, Inc. v. IDEA Boardwalk, LLC, 802 F. 3d 558, 571 (3d Cir. 2015) (citing Tucker Anthony Realty Corp. v. Schlesinger, 888 F. 2d 969, 975 (2d Cir. 1989)); see also In re Bora Bora Inc., 424 B.R. 17, 26 (Bankr. D. P.R. 2010) (citations omitted). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Revel AC, Inc. v. IDEA Boardwalk, LLC, 802 F. 3d at 571 (citing Sampson v. Murray, 415 U.S. 61, 90, 94 S. Ct. 937, 39 L. Ed 2d 166 (1974)).

As to the second prong of the test for a motion for a stay pending appeal, the Involuntary Debtors allege that, (i) "[b]y continuing th[ese] proceedings the Court also opens the door to timeframes and additional remedies that may be exercised against which are provided by the Bankruptcy Code which may entail the parallel expiration of the exclusivity period which protects the debtor; the unwarranted liquidation of assets, the opportunity to contested banks and speculators to overtake and file competing plans, all while an appeal which contests the proceeding itself is pending;" (ii) "[a]n order for relief, being a conclusive determination of the debtor's status as bankrupt, carries with it great potential for irreparable if immediate appeal is not allowed. An order for relief effectively divests the debtor of his assets, creating an estate controlled by the bankruptcy court. During the administration of the estate, the debtor's rights are limited. On entry of the order for relief he loses control of his assets, which may include a business;" (citations omitted); and (iii) "... as a practical matter, it may be beyond the power of either the appellate or bankruptcy court to undo certain actions even if the judgment is reversed. In such case, seeking a stay becomes mandatory. Otherwise, the appeal may be dismissed as moot. Although there are cases on both sides of the issue, some courts hold that, if other factors are present, the potential

loss of appellate rights as a consequence of mootness may furnish grounds for granting a stay" (citations omitted) (Case 17-04156, Docket No. 569, pg. 34-35; case 17-04157, Docket No. 392, pgs. 31-33).

The court finds that the Involuntary Debtors' arguments as to the alleged irreparable harm it will suffer are speculative and premature, given that at this stage in the proceedings there are no motions and or legal issues regarding: exclusivity periods to file a chapter 11 plan or the filing of a competing plan; 363 sale of assets or the unwarranted liquidation of assets. As to the issue of irreparable harm caused by the risk that the appeal will moot the potential loss of appellate rights, the court concludes that this argument is also premature given that the Involuntary Debtors will have the opportunity to object to any motions and legal remedies when the same are before the court thus, safeguarding their due process and legal rights. "A majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm" ACC Bondholder Group v. Adelphia Communs. Corp. (In re Adelphia Communs. Corp.), 361 B.R. 337, 347 (Bankr. S.D.N.Y. 2007); see also; In re Calpine Corp., 2008 Bankr. Lexis 217, *13-14 (Bankr. S.D.N.Y. 2008) ("[t]here is substantial authority, however, that the risk of an appeal being rendered moot does not in and of itself constitute irreparable harm, even if it may be a relevant factor.") citing In re Bd. Of Directors of Muticanal S.A., 2005 Bankr. Lexis 1865, at *6 (Bankr. S.D.N.Y. 2005)); In re Int'l Home Prods., 2012 Bankr. Lexis 5396, *23-24 (Bankr. D.P.R. 2012) ("The court finds that invoking that an appeal will turn moot by the denial of a stay, is not sufficient by itself to demonstrate irreparable harm, even if it may be a relevant factor")).

The court concludes that the Involuntary Debtors have failed to satisfy the first two (2) prongs of the test regarding the motion for stay pending appeal; thus, it need not go any further with its analysis.

## Conclusion

In view of the foregoing, the court holds that the divestiture doctrine does not apply to the involuntary bankruptcy proceedings. Accordingly, for the reasons explained herein and in the exercise of its discretion pursuant to Fed. R. Bankr. P. 8007, the Involuntary Debtors *Motions for Stay Pending Appeal* are denied. Therefore, the court declines to address the issue of whether the Involuntary Debtors should be required to post a bond at this stage in the proceedings.

SO ORDERED.

In San Juan, Puerto Rico, this 6th day of December, 2019.

Enrique S. Lamoutte
United States Bankruptcy Judge

-32-